C. Darryl Cordero, Bar No. 126689
cdc@paynefears.com
Scott O. Luskin, Bar No. 238082
sol@paynefears.com
PAYNE & FEARS LLP
1100 Glendon Avenue, Suite 1250
Los Angeles, California 90024
Telephone: (310) 689-1750
Facsimile: (310) 689-1755

Attorneys for Plaintiff Craftwood II, Inc., dba Bay Hardware, individually and as representative of all others similarly situated

Livia M. Kiser
lkiser@sidley.com
Tom Kayes
tkayes@sidley.com
Sidley Austin LLP
One South Dearborn
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

Michael L. Mallow
mmallow@sidley.com
Sidley Austin LLP
555 West Fifth Street, Suite 4000
Los Angeles, California 90013
Telephone: (213) 896-6666
Facsimile: (213) 986-6600

Attorneys for Defendant
WURTH LOUIS AND COMPANY

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION**

| | |
|---|---|
| Craftwood II, Inc., *et al.*,<br>Plaintiff,<br>v.<br>Wurth Louis & Company, *et al.*,<br>Defendant. | Case No. 8:17-cv-00606 (DOC) (KES)<br>Hon. David O. Carter<br>**Joint Stipulation of Parties Filed Pursuant to Local Rule 37-2 Re: Plaintiffs' Motion to Compel Supplemental Responses to Interrogatories, Requests for Production, and Supplemental Documents** |

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

Discovery Document: Referred to Magistrate Judge Karen E. Scott

Judge: Hon. Karen E. Scott
Date: April 10, 2018
Time: 10:00 a.m.
Courtroom: 6D

Action Filed: March 7, 2017
Discovery Cut-off: June 4, 2018
Pretrial Conference: Nov. 13, 2018
Trial Date: Dec. 4, 2018

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

## TABLE OF CONTENTS

**Page**

I. Craftwood's Introductory Statement .......... 1

II. Wurth's Introductory Statement .......... 4

III. Craftwood II's Interrogatories to Wurth .......... 4

A. Craftwood II's Position: The Court Should Compel Wurth's Responses to Interrogatory Nos. 1-14 .......... 4

B. Wurth's Position: .......... 5

IV. Wurth's Failure to Produce Documents and ESI .......... 5

A. Craftwood II's Position: The Court Should Compel Wurth to Produce All Responsive Documents and ESI, Without Redaction .......... 5

1. Wurth Should be Compelled to Produce More Than the 150 Pages Served So Far .......... 5

2. Wurth Is Improperly Withholding Documents Based on "Confidentiality" .......... 7

3. Wurth Has and Intends to Improperly Redact Relevant Information .......... 8

(a) Wurth's "customers" have no privacy interest .......... 9

(b) Craftwood II is entitled to this information immediately .......... 10

B. Wurth's Position: .......... 11

V. Wurth's Deficient Responses to Request for Production .......... 11

A. Craftwood II's Position: The Court Should Compel Wurth to Supplement Its Responses Without Objection and Produce All Documents Previously Withheld Based on Wurth's Objection to the term "Junk Fax", Arbitrary Time Limits, and General Objections .......... 11

1. Wurth's "Junk Fax" Objection Is Improper .......... 12

2. Wurth's Time Limitation Is Improper .......... 15

3. Wurth's General Objections Are Improper .......... 15

4. Wurth Must Produce a Privilege Log .......... 17

B. Wurth's Position: .......... 18

VI. Craftwood II Is Entitled to Monetary Sanctions for Wurth's Repeated

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

## TABLE OF CONTENTS
## (Continued)

**Page**

Failure to Comply with Its Discovery Obligations ........ 18
A. Craftwood II's Position: ........ 18
B. Wurth's Position: ........ 19
A. Craftwood II's Conclusion ........ 19
B. Wurth's Conclusion ........ 20

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

## INTRODUCTORY STATEMENT

### I. Craftwood's Introductory Statement

Although this junk fax class action is about to complete its first year, Defendant Wurth Louis and Company has provided virtually no discovery. Wurth has avoided answering the most basic interrogatories about its junk fax operations and the company has produced a grand total of 150 pages. Despite lengthy informal conferences between counsel and numerous letters, Wurth refuses to provide the most rudimentary information.

A few examples illustrate the problems. First, Wurth provided only boilerplate objections to Craftwood II's interrogatories. Wurth promised supplemental responses by December 11. But the deadline came and went. During a December 19 conference, Wurth stated the responses were complete, merely awaiting client approval. Two months later, Craftwood II is still waiting.

Second, the 150 pages of documents almost speak for themselves. Despite having months to prepare its production, Wurth has failed to comply with virtually all the Rule 34 requests. Among other things, Wurth has failed to produce any records relating to fax transmissions. It has produced no faxes, no reports, no logs, no printouts, no communications – *nothing*. These records are relevant, discoverable, and the most significant documents in any TCPA action.

Making matters worse, Wurth's original counsel, Baker Hostettler, asserted that it had gathered many of these documents in preparation for an early mediation last summer. There is no excuse for Wurth's delay. Wurth promised the documents on a rolling basis starting December 5. Yet after the initial 150 pages, no further documents have been produced.

Even those 150 pages highlight a bigger problem – they were redacted. For example, Wurth produced what appears to be a list of people opting out of receiving future faxes, but redacted the identifying information. Wurth has gone further by

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

now asserting that it does not have to divulge the *identities of any class members* before a class is certified. This is simply untrue. The Court established one period for merits and class discovery. Even if this weren't the case, California federal courts routinely find TCPA class member identities are crucial to ascertainability, numerosity, commonality, and typicality.

Wurth also appears to be obstructing by relying on a raft of junk, boilerplate and improper "conditional" objections. For example, Wurth agreed to produce documents in response to many of the requests after "an Agreed Confidentiality Order" has been entered by the Court. This self-help objection is nonsense. Wurth cannot withhold crucial discovery on this basis, especially since Craftwood II agreed to maintain confidentiality while the parties worked out a protective order. Wurth's true motive is simply delay. Despite mentioning a protective order in September, Wurth waited until mid-December to send a draft. Craftwood II suggested changes shortly thereafter, but Wurth has not agreed to the draft order or provided a revision.

Craftwood II has spent months attempting to obtain compliance. Last September, immediately following the Rule 26 conference, Craftwood II served interrogatories and Rule 34 requests. The interrogatories sought basic and relevant information about Wurth's fax transmissions and the company's defenses. Craftwood II asked Wurth to reveal the dates and times for each fax broadcast, the number of attempted transmissions, and the number of successful transmissions. Craftwood II also asked Wurth to identify the recipients, if any, from whom Wurth claims to have received prior express permission (a statutory defense) to send fax advertisements and the communications by which those recipients supposedly gave permission. The interrogatories also asked Wurth to disclose the fax recipients with whom it claimed to have an established business relationship (another defense) and to state how and when the relationship was formed. The Rule 34 requests sought production of documents within the same parameters, asking for copies of all fax advertisements at issue, telephone lists used to conduct the fax blasts, transmission

records of the broadcasts, and documents memorializing communications, if any, from fax recipients granting Wurth permission to send faxed ads.

Wurth responded with complete obstruction. Wurth asserted that Craftwood II's 15 interrogatories had too many subparts, so it served only boilerplate objections. Craftwood II quickly withdrew one possibly objectionable interrogatory, and the parties held a discovery conference where Wurth agreed to provide supplemental responses in early December. Wurth reaffirmed that commitment on several occasions, but has not lived up to its word.

Craftwood II has similarly sought a complete production of documents. After receiving the innumerable objections and paltry production on December 5, Craftwood II quickly identified the discovery improprieties and demanded a discovery conference. The conference was not fruitful. Despite discussing the parties' positions for an hour, with Wurth supposedly agreeing to consider changing its responses and producing more documents, Wurth has not supplemented. Craftwood II followed up with no less than 4 letters and numerous emails to obtain compliance.

When it became clear Wurth intended to continue to obstruct, Craftwood II requested Wirth participate in an informal conference with the Court. Wurth ignored several requests. Wurth then responded that it would agree to the discovery conference. Wurth just needed to figure out dates. But despite Craftwood II identifying numerous available dates, Wurth still will not commit to appear. So Craftwood II has been forced to file a formal motion to compel.

Craftwood II seeks an order for requiring (1) complete responses to Craftwood II's interrogatories without objection, (2) production of responsive documents without redactions, and (3) supplemental responses to the Rule 34 requests without improper objections. Wurth should also be sanctioned in an amount no less than $14,845 for its discovery abuse.

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

## II. Wurth's Introductory Statement

## WURTH'S DISCOVERY RESPONSES AT ISSUE

## III. Craftwood II's Interrogatories to Wurth

### A. Craftwood II's Position: The Court Should Compel Wurth's Responses to Interrogatory Nos. 1-14

Craftwood II's interrogatories to Wurth sought basic discovery about Wurth's fax program, asking for the people involved and the means by which Wurth sent its fax blasts. (Luskin Decl. ¶ 4, Ex. 2.) They also sought any information supporting the affirmative defenses that Wurth asserted in its Answer: prior express permission and established business relationship. (*Id.*)

After Craftwood II granted Wurth a generous extension to respond, Wurth's October 26 responses to Craftwood II's interrogatories contained only objections. (Luskin Decl. ¶¶ 5-6, Ex. 4.) Wurth's basic complaint was that Craftwood II's interrogatories contained too many subparts. (*Id.*) Craftwood II quickly initiated meet and confer efforts, agreeing to withdraw the one supposedly offending interrogatory. (*Id.*, Ex. 6.) Wurth only agreed to supplement after the parties held a telephonic conference on November 27. (*Id.* ¶ 12.) Wurth promised to provide substantive responses by December 11, which it confirmed in an email. (*Id.*, Ex. 7.) December 11 came and went; Wurth then continued to assure Craftwood II that the responses were drafted and merely awaiting client approval. (*Id.* ¶ 16.) Despite Craftwood II following up with two letters and several emails, Wurth has yet to respond with any reason for its delay—or even respond at all. (*Id.*, Exs. 12, 13, 14.)

Wurth has no grounds to refuse to serve actual responses as it already agreed to do. This Court should order Wurth to provide supplemental responses to Interrogatory Nos. 1-14.

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

**B. Wurth's Position:**

## IV. Wurth's Failure to Produce Documents and ESI

### A. Craftwood II's Position: The Court Should Compel Wurth to Produce All Responsive Documents and ESI, Without Redaction

Craftwood II made straightforward requests for documents from Wurth. (Luskin Decl. ¶ 4, Ex. 3.) Craftwood II sought documents, including Wurth's fax telephone lists, as well as the faxes it sent, transmission data, documents evidencing prior express permission or an established business relationship, and customer complaints. (*Id.*) Wurth responded with obstruction, and produced only 150 pages of what appears to be redacted information about some entities that opted out of receiving faxes, a few exemplar faxes, and documents related to Plaintiff that were included in Wurth's already-denied motion for summary judgment. (*Id.* ¶ 13.) Despite Craftwood II's effort over nearly two months, Wurth refuses to commit to a production date or un-redact discoverable information in the few documents it has turned over. Wurth's obstruction must stop.

#### 1. Wurth Should be Compelled to Produce More Than the 150 Pages Served So Far

Since this action incepted in March 2017, Wurth has produced a total of *150-pages*. (Luskin Decl. ¶ 13.) Craftwood II has not received any ESI, months after serving its September 28 document demands, and multiple promises by Wurth that a production is forthcoming. Wurth's December 4 production was a token in any case, let alone a TCPA case, where documents and ESI are the lynch-pins of the case. In fact, fax transmission records like fax lists or transmission logs are perhaps the *most* significant documents in this action. Wurth's failure to produce responsive documents or ESI is even more frustrating here because:

(1) Wurth has had almost a year since this lawsuit was filed to compile

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

responsive information;

(2) Immediately before a scheduled early mediation, Wurth's prior counsel, Baker Hostetler, informed Craftwood that the crucial transmission data had been collected (Cordero Decl. ¶ 3);

(3) After Craftwood II served its Rule 34 requests, it granted an extension for Wurth to provide responses and documents on November 17. Wurth didn't produce documents that day, only promising to "produce at a reasonable time beginning not later than December 4, 2017, non-privileged, responsive documents [and] WLC will conduct a reasonable search for responsive emails and other electronically stored information, to be produced at a reasonable time beginning not later than December 18, 2017." (Luskin Decl., Ex. 3);

(4) On December 5, Wurth gave itself a unilateral further extension to the end of December to produce items on a "rolling basis", including "ESI later this month" (Luskin Decl. ¶ 13, Ex. 8);

(5) At a December 19 discovery conference, Wurth requested that Craftwood II wait to seek an order compelling production until after Wurth provided a supplemental production very soon (Luskin Decl. ¶ 17);

(6) On December 21, Wurth provided an e-mail "update" which again promised to produce ESI, by the week of December 25 (Luskin Decl. ¶ 18, Ex. 11); and

(7) Wurth has still failed to produce the promised ESI or documents, despite follow-up letters from Craftwood II on December 27 and January 5 (Luskin Decl. ¶¶ 19-20, Exs. 12 and 13).

Documents are critical to any TCPA case, and this case only moves forward if Craftwood II can examine the universe of Wurth's fax campaign – including when it faxed, what it faxed, and who received those faxes. Wurth should have been

locating key documents like faxed advertisements, fax lists, and transmission records per its obligations under Rule 26 and in response to the March 2017 preservation letter. Wurth's delay is impermissible, and at this point, there is no excuse for Wurth's failure to provide relevant documents or ESI as promised.

The Court should order Wurth to produce all responsive documents, including ESI, not later than 5 days after issuing an order granting this motion to compel.

### 2. Wurth Is Improperly Withholding Documents Based on "Confidentiality"

| **Relevant Portion of Wurth's Responses** |
| --- |
| To the extent any such documents are confidential, WLC will produce such documents after an Agreed Confidentiality Order has been entered by the Court (or the parties have agreed to be bound by one that is pending for entry). |

Wurth contends that numerous documents[1] are confidential. (Luskin Decl. ¶ 7, Ex. 5.) Wurth asserts this objection sweepingly, to cover all documents related to or evidencing its fax telephone lists (and how Wurth obtained such lists), exemplar faxes, its fax broadcasting, other complaints, and its affirmative defenses of prior express permission and established business relationship. (*Id.*) Wurth also states it will only produce further responsive documents after "an Agreed Confidentiality Order" has been entered by the Court. The parties have discussed the exchange of confidential information on multiple occasions throughout December and January. Any delay to complete and enter such an order falls on Wurth's shoulders.

In September, the parties discussed what to do about potentially confidential information. (Luskin Decl. ¶ 14.) Craftwood II agreed that it would await Wurth's draft protective order, but in the meantime offered to treat information produced as confidential subject to actual designation under an entered protective order. (*Id.*)

[1] Wurth specifically asserts a confidentiality objection in response to Request Nos. 1.1-1.3, 1.6, 2.1, 2.3-2.5, 3.1-3.7, 4.2, 4.3, 5.1-5.3, 7.1-7.3, 8.1, and 8.2. [1] Wurth similarly asserts the same objection in its improper "General Objections" upon which each of its responses rely upon. (Luskin Decl., Ex. 5.)



PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

Craftwood II never saw a draft, so it was understandably surprised when Wurth served its November 17 RFP responses with extensive confidentiality objections. (Luskin Decl., Ex. 5.) Craftwood II sent Wurth a letter on December 5, indicating that as a threshold matter, Wurth's responses fails to establish a foundation for the confidentiality claim, and Wurth may not simply refuse to produce responsive information. (*Id.* ¶ 14, Ex. 9.) More importantly, Wurth had been sitting on a supposed draft protective order for months. (*Id.*)

On December 13, Wurth finally provided a draft order, which Craftwood II provided comments on and returned on December 26. (Luskin Decl. ¶ 15.) Despite two follow-up letters on December 27 and January 5, Wurth has failed to agree to the revisions or provide suggested changes. (*Id.* ¶¶ 19-20, Exs. 12 & 13.)

Wurth cannot stall and simultaneously assert this objection to withhold documents. Craftwood II requests that this Court order Wurth to produce any documents it is withholding on this basis.

**3. Wurth Has and Intends to Improperly Redact Relevant Information**

Wurth's December 4 production was rife with redactions. (Luskin Decl. ¶ 13.) The same day it received the production, Craftwood II's counsel inquired why Wurth had redacted fax numbers and customer information. (*Id.*, Ex. 8.) In a subsequent email on December 5, Wurth responded informed Craftwood II that: "We will be redacting identifying and financial information of our customers, as we indicated in the text our responses. They have privacy interests we are obligated to protect. Also, you are not entitled to such information unless and until a class is certified." (*Id.*)

But Wurth's intention to redact all identifying information prior to class certification is improper. Such information is directly relevant to numerosity, ascertainability, commonality, typicality, and superiority. It also provides information for particular witnesses and is relevant to Wurth's defenses (which

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

Wurth's counsel confirmed on December 19 when the parties discussed Wurth's potential "prior express permission" defense and Craftwood II's need to know the identity of those it applied to). (*Id.* ¶ 17.)

This Court should compel Wurth to produce unredacted versions of documents it already produced, as well as enter an order disallowing similar redactions in future productions, for two reasons:

**(a) Wurth's "customers" have no privacy interest**

As Craftwood II explained in its December 7 meet and confer letter (Luskin Decl. ¶ 16, Ex. 18) and at the December 19 conference (*id.* ¶ 17), even assuming each person listed in Wurth's documents is a "customer," those people have no privacy interest in their *identities* sufficient to warrant withholding them from discovery. The California Supreme Court has explained that the privacy right protects only an "individual's reasonable expectation of privacy against a serious invasion." *Pioneer Electronics (USA), Inc. v. Superior Court*, 40 Cal. 4th 360, 370 (2007). "Contact information regarding the identity of potential class members is generally discoverable, so that the lead plaintiff may learn the names of other persons who might assist in prosecuting the case." *Id.* at 373. Thus, "[s]uch disclosure involves no revelation of personal or business secrets, intimate activities, or similar private information, and threatens no undue intrusion into one's personal life, such as mass-marketing efforts or unsolicited sales pitches." *Id.*

Federal courts in California have repeatedly held that the disclosure of the names and telephone numbers in TCPA actions do not present a serious privacy invasion. *See, e.g., Thrasher v. CMRE Fin. Servs., Inc.*, Case No. 14-cv-1540-BEN, 2015 WL 1138469, at *3 (S.D. Cal. Mar. 13, 2015). "[C]onsumers may reasonably expect that businesses to which they have provided their names and contact information will not disseminate that information to third parties. However, *the disclosure of contact information during discovery in civil litigation generally does not constitute a serious invasion of that privacy interest, let alone an egregious*

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

*breach of social norms*." *McEwan v. OSP Group, L.P.*, Case No. 14-cv-2823-BEN, 2016 WL 1241530, at *4 (S.D. Cal. March 30, 2016) (emphasis added). Here, Craftwood II's need to establish class certification via the disclosure of these "customers" and their fax numbers is essential and outweighs what minimal privacy right these entities may have, if any.

**(b) Craftwood II is entitled to this information immediately**

Second, Wurth's claim that identifying information cannot be disclosed until a class is certified misstates the law. To the contrary, the identity of class members is routine in pre-certification discovery because Wurth's "customer" list is, among other things, reasonably calculated to identify the number and recipients of faxes made during the class period. *See* FED. R. CIV. P. 26(b)(1) (information sought is discoverable if it is "relevant to any party's claim or defense"); *Thrasher*, 2015 WL 1138469, at *2. In other words, a purported "class list" is discoverable if it bears relevance to issues of class certification. *See Webb v. Healthcare Revenue Recovery Group LLC*, Case No. C. 13-00737 RS, 2014 WL 325132, at **2-3 (N.D. Cal. Jan. 29, 2014) (affirming magistrate judge's order compelling defendant to produce outbound dial list, on the ground the list was relevant to commonality). That is absolutely the case in TCPA matters, and federal courts in California overwhelmingly agree. *See, e.g., True Health Chiropractic Inc. v. McKesson Corp.*, No. 13-cv-02219-HSG, 2015 WL 1502953, at **3, 7 (N.D. Cal. Apr. 1, 2015) (finding that defendants imposed artificial limitations on its production of transmission records [the identities of the recipients and fax numbers, and the dates and times they received the transmissions], and ordering defendants to produce additional transmission records); *Stemple v. QC Holdings, Inc.*, No. 12-cv-1997-CAB, 2013 WL 10870906, at *2 (S.D. Cal. June 17, 2013) (finding dial list, which included names and phone numbers, "relevant to Plaintiff's Complaint in ascertaining potential class members and substantiating class allegations.").

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

Despite the overwhelming authority supporting Craftwood II, Wurth has taken the position that *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978), supports Wurth's refusal to identify the class members before class certification. An examination of that case, however, does not reinforce Wurth's argument. *Oppenheimer* dealt with the identification for purposes of class notice and who would pay for such notice, not the discovery of the identification of class members necessary for class certification. *Oppenheimer*, 437 U.S. at 350 ("Although respondents' request resembles discovery in that it seeks to obtain information, we are convinced that it more properly is handled under Rule 23(d). The critical point is that the information is sought to facilitate the sending of notice rather than to define or clarify issues in the case.") The authorities that Craftwood II provided to Wurth deal directly with the issues raised in discovery in this case, and Wurth has failed to provide any authority refuting them.

At the December 19 conference, Craftwood II agreed to briefly table this issue until it received Wurth's supplemental production and Craftwood II could determine the total universe of *documents* that Wurth redacted. (Luskin Decl. ¶ 17; *see also* ¶ 19, Ex. 12.) With Wurth having failed to provide any supplemental production, Craftwood II cannot wait any longer to resolve this important issue.

Accordingly, Craftwood II respectfully requests the Court order Wurth to produce all responsive *documents*, that it has or will produce, without redacting identifying information of Wurth's customers.

**B. Wurth's Position:**

## V. Wurth's Deficient Responses to Request for Production

### A. Craftwood II's Position: The Court Should Compel Wurth to Supplement Its Responses Without Objection and Produce All Documents Previously Withheld Based on Wurth's Objection to

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

**the term "Junk Fax", Arbitrary Time Limits, and General Objections**

Craftwood II has also asked Wurth to provide supplemental responses that remove improper objections, and agree to produce whatever it was withholding on those bases. To date, Wurth refuses to do so. Wurth made at least three improper objections in its responses that are crucial, upon which it appears the company is withholding documents. (*See generally* Luskin Decl. Ex. 5.) First, Wurth refused to produce documents based on Craftwood II's definition of "Junk Fax," despite Craftwood II clarifying and limiting this defined term numerous times. Wurth also improperly set an arbitrary time range on what it would produce – only documents created after April 4, 2013, ignoring that relevant, responsive documents about Wurth's fax program and practices likely existed well before then. (*Id.*) Finally, Wurth asserted numerous "General Objections," which are *per se* improper and should be withdrawn. (*Id.*)

**1. Wurth's "Junk Fax" Objection Is Improper**

| **Craftwood II's Definition of "Junk Fax"** | |
|---|---|
| Craftwood II's Definition | "JUNK FAX" or "JUNK FAXES" mean any and all DOCUMENTS or materials sent or transmitted via facsimile transmission, from April 4, 2013, through the date You respond to these interrogatories that: (1) are identical or similar to the CRAFTWOOD FAXES; (2) discuss, describe, promote products or services offered by Wurth Louis & Company or under any Wurth Louis & Company brand; (3) discuss, describe, promote any website of Wurth Louis & Company or any Wurth Louis & Company brand; or (4) include any combination of the foregoing. |
| Wurth's Objections | Objections Based on Bay Hardware's Definition of Junk Fax. This Request is vague, ambiguous and overbroad, including because of Bay Hardware's definition of "junk fax." *First*, the definition of junk fax is vague because it seeks documents "similar to the Craftwood Faxes," without identifying the respect in |

| | |
|---|---|
| | which the requested documents should be similar. *Second,* the definition is vague and overbroad in seeking documents related to "any Wurth Louis [and] Company brand" because only WLC is a defendant here, and there is no other company besides WLC that has the WLC "brand." *Third*, the definition is overbroad in that it seeks documents that "discuss" or "describe" "products or services" "offered by" WLC. This aspect of the definition makes it grossly overbroad because it would include faxes, such as invoices, orders, customer questions, WLC's questions to suppliers, advertising by suppliers to WLC, etc.—none of which are relevant to the subject matter of this lawsuit but would be extremely burdensome to produce. *Fourth*, the term is overbroad in that it seeks information and documents related to faxes other than those sent to Bay Hardware. These faxes are not relevant to Bay Hardware's individual or class claims. They and documents related to them will not be produced.<br>Further WLC objects to the term "junk fax" as being unnecessarily pejorative. WLC has never sent a "junk" fax. WLC therefore objects to these Requests or responses thereto ever being shown to a jury under Rule 404 of the Federal Rules of Evidence because the phrase "junk fax" has no probative value and is highly prejudicial to WLC. |

Wurth's responses assert an objection based on Craftwood II's definition of "Junk Fax." (*See* Luskin Decl., Ex. 5.) Craftwood II highlighted this issue in its December 5 meet and confer letter. (*Id.* ¶ 14, Ex. 9.) During the parties December 19 telephonic conference, Craftwood II clarified that it sought fax advertisements like those sent to Craftwood II during the class period, not every fax ever sent by Wurth. (*Id.* ¶ 17) Wurth agreed to take Craftwood II's reasonable limitation under advisement. (*Id.*) But Wurth never responded or clarified its position, and appears

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

to still withholding relevant documents based on this objection.[2] This means Wurth is likely improperly withholding documents for each request for production containing the defined term "Junk Fax" (*i.e.*, Request Nos. 1.1-5.3 and 7.1-8.2). This represents 29 of the 37 requests (78%) that were propounded.[3]

Craftwood II need not have received every fax that Wurth sent during the relevant class period. Rather, Wurth's fax advertising as a whole bears directly on issues like numerosity, commonality, typicality, and ascertainability – all issues that go towards class certification. Craftwood II can represent class members receiving similar faxes even though Craftwood II did not receive that exact fax. This discovery is relevant to Wurth's pattern and practice of fax blasting and identification of the class. When discovery is plainly relevant (as it is here), Wurth – not Craftwood II – has the burden to establish facts justifying its objections. *See Guzman v. Irmadan, Inc.*, 249 F.R.D. 399, 400-01 (S.D. Fla. 2008) ("[A]n objection that a discovery request is irrelevant and not reasonably calculated to lead to admissible evidence must include a specific explanation describing why the request lacks relevance, and why the information sought will not reasonably lead to admissible evidence."). Wurth has provided no support for its limitation, and it cannot refuse to produce relevant documents based on this objection.

---

[2] On December 27 and January 5, Craftwood II sent follow-up meet and confer letters summarizing their meet and confer discussion and asked Wurth to provide a response to Craftwood II's proposal. (Luskin Decl., Exs. 12 & 13.)

[3] Some of Wurth's other issues related to the "Junk Fax" objection were resolved at the parties' November 27 meet and confer conference. First, Craftwood II explained – and Wurth understood – that the term "junk fax" is not vague. There is a chicken and egg problem, since Craftwood II cannot currently provide a more specific definition than similar to the faxed advertisements it received, without knowing the universe of faxes at issue. (Luskin Decl. ¶ 17.) Craftwood II and Wurth also agreed that an objection to the term being "pejorative, prejudicial, and objectionable" does not prevent Wurth from providing complete responses to the document demands. (*Id.*, Ex. 9) Indeed, it is a common term in all the relevant case law. Wurth informed Craftwood II that it was not withholding documents based on this objection, but included it so that its discovery responses could not be construed to be an admission that the faxes are, in fact, "junk faxes." (*Id.*)

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

**2. Wurth's Time Limitation Is Improper**

| **Wurth's "Time Limitation Objection"** |
|---|
| Time Limitation Objection. WLC objects that this Request is unduly burdensome and overbroad in that it lacks any time limitation. For purposes of the response, WLC construes these Requests to apply to documents and information created from and after April 4, 2013. |

In its responses, Wurth asserted an objection that it would only produce documents after April 4, 2013 in response to Request Nos. 1.1, 1.2, 1.4, 2.1-2.5, 3.1-3.4, 4.1- 4.3, 5.1, 5.2, 7.1, 7.3, and 8.1.[4] (Luskin Decl., Ex. 5.) Wurth's unilateral assertion of a "time limitation" objection is improper. Numerous documents predating this date are relevant, for example, communications about and Wurth's understanding of opt-out requirements and the TCPA. Although Craftwood II articulated this issue in its December 5 letter and during the December 19 call (Luskin Decl. ¶¶ 14, 17, Ex. 9), Wurth has refused to clarify the purpose or basis for its objection despite Craftwood II's repeated meet and confer efforts. The Court should compel Wurth to withdraw this objection and produce any documents previously withheld on this basis.

**3. Wurth's General Objections Are Improper**

| **Wurth's General Objections** |
|---|
| The following General Objections apply to the Requests, including the Definitions and Instructions in the Requests, and shall have the same effect as if set forth in full in response to each of the Requests.<br>1. WLC objects to the "Definitions" in the Requests and the Requests as a whole as seeking to impose requirements or obligations on WLC that are inconsistent with or broader than those imposed by Rules 26 and 34 of the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Central District of California (the "Local Rules"), or any other applicable law or rules. WLC will construe the Definitions and Instructions in accordance with the requirements of the Federal Rules of Civil Procedure, the Local Rules, and any other applicable rules or laws. |

[4] Wurth similarly asserts the same objection in its improper "General Objections" upon which each of its responses rely upon. (Luskin Decl., Ex. 5.)

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

2. WLC objects to the "Definitions" in the Requests to the extent they propose definitions of terms that are inflammatory and prejudicial.

3. WLC objects to the Requests to the extent that the documents sought are unreasonably cumulative or duplicative, and to the extent that the Requests impose an undue burden or expense in violation of Rule 26(b)(2)(C) of the Federal Rules of Civil Procedure.

4. WLC objects to the Requests to the extent that they seek information protected from disclosure by the attorney-client privilege, the work product doctrine, the joint defense or common interest privilege or doctrine, the confidential supervisory information privilege, or any other applicable privilege, immunity, or protection against discovery. Any document subject to privilege or protection, if inadvertently produced, shall be returned to WLC in accordance with the Agreed Confidentiality Order to be entered by the Court. WLC has not waived any applicable privilege or other doctrine against disclosure and states that it does not intend to do so through the production or inadvertent production of any documents in response to the Requests. WLC reserves its right to object to the use of any document inadvertently disclosed.

5. WLC objects to the Requests to the extent that they seek the production of confidential documents or information (including from or about third parties) that WLC is prohibited from disclosing under applicable federal and state laws.

6. WLC objects to the Requests to the extent they seek the production of documents that contain confidential or proprietary information of WLC. WLC will produce such documents, subject to any other applicable general or specific objections, subject to the Agreed Confidentiality Order entered by the Court.

7. WLC objects to the Requests to the extent that they seek information that is irrelevant to the claims or defenses at issue in the litigation. In responding to the Requests, WLC does not concede the relevance or materiality of any document or information requested or provided.

8. WLC objects to the Requests as being overbroad as they place no limitation on relevant time frame despite the subject matter of this litigation occurring from and after April 4, 2013, Plaintiff's relevant time period.

9. WLC objects to the Requests as not proportional to the needs of the case considering (1) the marginal importance of the materials to the claims and defenses in this litigation and (2) the substantial cost to identify responsive materials balanced against the amount in controversy.

10. WLC objects to the Requests to the extent that they are vague, ambiguous, or fail to describe the requested documents with reasonable particularity.

11. WLC objects to the Requests to the extent that they incorporate any of the definitions and abbreviations in Plaintiff's operative complaint on the grounds that those definitions and abbreviations are vague and ambiguous.

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

12. WLC further objects to the Requests as seeking documents and information in the public domain and/or readily available from publicly-available sources.

13. When WLC agrees to produce non-privileged documents in response to any of the Requests, WLC does not concede that the Requests seek information that is or could be admissible. Rather, WLC expressly reserves all further objections as to the admissibility of the information provided, as well as the right to object to further discovery relating to the subject matter of any information provided.

14. WLC's responses are based on its current knowledge. Further investigation may reveal additional facts or information that could lead to additions to, changes in, or variations from the responses herein. Without in any way obligating itself to do so, WLC expressly reserves the right to supplement, amend, correct, clarify, or modify the responses as further information becomes available to WLC. WLC also reserves the right to use or rely on, at any time, subsequently discovered information or information omitted from these objections and responses as a result of mistake, error, oversight, or inadvertence.

Wurth's responses to the RFPs also contained "General Objections" (*see* Luskin Decl. Ex. 5), which are "per se inappropriate." *Flava Works, Inc. v. Gunter*, 2013 WL 5770558, at *1 (N.D. Ill. Oct. 24, 2013). In fact, general objections are so disfavored that some federal courts have held that instead of preserving an objection, they actually waive them. *White v. Beloginis*, 53 F.R.D. 480, 481 (S.D.N.Y. 1971) ("general objections [] have been universally held to be impermissible"). The amended Federal Rules require Wurth to particularize objections by stating whether anything is being withheld and on what basis. *See* FED. R. CIV. P. 34(b)(2)(B) & (C). Wurth's boilerplate objections bar any informed discussion of each objection.

Wurth must withdraw these objections and serve amended responses, as well as produce any documents it has withheld on the basis of any "General Objection."

**4. Wurth Must Produce a Privilege Log**

Wurth's responses included a privilege objection to Request Nos. 4.1, 4.2, 4.3, 5.1, 5.2, 6.1, 6.3, 6.4, and 9.1. (Luskin Decl., Ex. 5.) If Wurth is withholding documents based on a recognized privilege, then it must "describe the nature of the documents, communications, or tangible things not produced or disclosed – and do

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." FED. R. CIV. P. 26(b)(5)(A)(ii). This is most often accomplished by means of a privilege log. *Friends of Hope Valley v. Frederick Co.*, 268 F.R.D. 643, 650-51 (E.D. Cal. 2010).

On December 19, Wurth informed Craftwood II that there were "almost" no documents that would need to be logged into a privilege log in accordance with the parties Rule 26(f) agreement. (Luskin Decl. ¶ 17.) Craftwood requested that Wurth amend the objection to clarify its responses and to provide a privilege log to the extent Wurth is withholding documents to any of Craftwood II's requests. (*Id.*) Despite multiple follow-up requests on this issue on December 27 and January 5, Wurth has failed to respond. (*Id.* ¶¶ 19-20, Exs. 12 and 13.) Accordingly, this Court should compel Wurth's production of a privilege log.

**B. Wurth's Position:**

## VI. Craftwood II Is Entitled to Monetary Sanctions for Wurth's Repeated Failure to Comply with Its Discovery Obligations

**A. Craftwood II's Position:**

Wurth's conduct is the exact type of situation where monetary sanctions are appropriate. Rule 37(c) provides this Court with the authority to impose monetary sanctions on a party that fails to disclose or supplement information in discovery. FED. R. CIV. P. 37(c)(1)(A). The Court also has inherent power to sanction parties or their attorneys for improper conduct. *Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001); *see also Lew v. Kona Hospital*, 754 F.2d 1420, 1425 (9th Cir. 1985) ("The district court has great latitude IN imposing sanctions under Fed. R. Civ. P. 37."). Instead of or in addition to the sanction orders provided for in Rule 37(b)(2)(A), "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure,

unless the failure was substantially justified or other circumstances make an award of expenses unjust." FED. R. CIV. P. 37(b)(2)(C). "Counsel are subject to monetary sanctions for unjustified nondisclosures when they certify a discovery response as complete and correct at the time it is made . . . ." *Sun River Energy, Inc. v. Nelson*, 800 F.3d 1219, 1227 (10th Cir. 2015). That is, pursuant to Rule 26(g)(1), an attorney who signs Initial Disclosures or discovery responses is certifying "to the best of the person's knowledge, information and belief formed after a reasonable inquiry . . . with respect to a disclosure, it is complete and correct at the time it is made . . . ." FED. R. CIV. P. 26(g)(1)(A). If the certification violates Rule 26(g)(1), and is incomplete or incorrect, "the court . . . must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both." FED. R. CIV. P. 26(g)(3). "The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation." *Id.*

Monetary sanctions against Wurth are warranted for Wurth discovery misconduct, including Craftwood II's attorneys' fees for bringing this motion, the fees for preparing the multiple meet and confer communications, and attending discovery conferences. As of the date of filing this Motion, Craftwood II has incurred attorneys' fees in excess of $11,380. (Luskin Decl. ¶ 30.) Craftwood II anticipates incurring an additional $3,465 in attorneys' fees by the date scheduled for the hearing on this motion. (*Id.*) Accordingly, Craftwood II seeks a total of $14,845 in monetary sanctions against Wurth. (*Id.*)

**B. Wurth's Position:**

## CONCLUSION

**A. Craftwood II's Conclusion**

As detailed herein, Wurth is not justified in its refusal to supplement its deficient, evasive discovery responses and in its persistence in withholding relevant and responsive information and documents. Craftwood II therefore asks that its

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

Motion to Compel be granted, and the Court issue an Order: (1) compelling Wurth's promised supplemental responses to Interrogatory Nos. 1-14; (2) compelling Wurth's promised production of ESI and supplemental documents, including any "confidential" documents currently withheld; (3) compelling Wurth's production of unredacted documents; (4) compelling Wurth's withdrawal of its objections based on Craftwood II's use of the term "junk fax"; (5) compelling Wurth's withdrawal of its "Time Limitations Objection" (6) compelling Wurth's withdrawal of its "General Objections;" (7) compelling production of a privilege log to the extent Wurth is withholding documents based on a valid privilege; (in response to Requests for Production Nos. 1.1 - 5.3 and 7.1 - 8.2; and (8) awarding monetary sanctions against Wurth and for Craftwood II in the amount of $14,845 for Wurth's ongoing discovery abuse.

**B. Wurth's Conclusion**

DATED: March 9, 2018

PAYNE & FEARS LLP
Attorneys at Law

By: */s/ Scott O. Luskin*
C. DARRYL CORDERO
SCOTT O. LUSKIN

Attorneys for Plaintiff Craftwood II, Inc., dba Bay Hardware, individually and as representative of all others similarly situated