Livia M. Kiser
lkiser@sidley.com
Courtney A. Hoffman
choffman@sidley.com
Raechel Bimmerle
rbimmerle@sidley.com
Tom Kayes
tkayes@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Tel: (312) 853-7000
Fax: (312) 853-7036

Michael L. Mallow
mmallow@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, California 90013
Tel: (213) 896-6666
Fax: (213) 896-6600

Attorneys for Defendant WURTH LOUIS
AND COMPANY

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| CRAFTWOOD II, INC. et al., <br><br> Plaintiff, <br><br> v. <br><br> WURTH LOUIS AND COMPANY et al., <br><br> Defendant. | Case No.: 8:17-cv-00606 (DOC) (KES) <br><br> **WURTH LOUIS AND COMPANY'S OPPOSITION TO PLAINTIFF CRAFTWOOD II, INC.'S MOTION TO COMPEL** <br><br> Discovery Document: Referred to Magistrate Judge Karen E. Scott |

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................. 1

RELEVANT FACTUAL AND PROCEDURAL HISTORY ................................ 3

    A.    WLC's Facsimile Practices ............................................................ 4

    B.    Craftwood's Discovery Requests ................................................... 5

    C.    WLC's Conduct Has Been Reasonable .......................................... 6

ARGUMENT ....................................................................................................... 8

    A.    The Proper Bounds Of Class Discovery ....................................... 8

    B.    Craftwood's Class Discovery Should Be Limited To A Proposed Class It Could Theoretically Represent .............................. 11

    C.    Craftwood's Requests Must Be Proportional To This Case's Needs .......................................................................................... 15

    D.    Craftwood Is Not Entitled To WLC's Customer Information ............ 16

    E.    WLC Is Fulfilling Its Discovery Obligations .................................. 18

    F.    Craftwood Is Not Entitled To Fees .................................................. 18

CONCLUSION .................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997) ...................................................................................... 13

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ........................................................................................ 9

*Buycks-Roberson v. Citibank Fed. Sav. Bank,*
162 F.R.D. 338 (N.D.Ill. 1995) ................................................................... 17

*Crabtree v. Hayden, Stone Inc.,*
43 F.R.D. 281 (S.D.N.Y. 1967) ..................................................................... 9

*DeMasi v. Weiss,*
669 F.2d 114 (3rd Cir. 1982) ...................................................................... 17

*Dziennik v. Sealift, Inc.,*
No. 05-CV-4659 (DLI)(MDG), 2006 WL 1455464 (E.D.N.Y. May
23, 2006) ...................................................................................................... 17

*Gannon v. Network Tel. Servs., Inc.,*
No. CV 12-9777-RGK, 2013 WL 2450199 (C.D. Cal. June 5,
2013), *aff'd*, 628 F. Appx 551 (9th Cir. 2016) .......................................... 14

*Harris v. Vector Mktg. Corp.,*
No. C-08-5198 EMC, 2010 WL 3743532 (N.D. Cal. Sept. 17,
2010) ............................................................................................................. 14

*Hatch v. Reliance Ins.,*
758 F.2d 409 (9th Cir. 1985) ...................................................................... 17

*Holak v. K Mart Corp.,*
No. 1:12-CV-00304-AWI-MJS, 2014 WL 4930762 (E.D. Cal.
Sept. 30, 2014) ......................................................................................... 9, 10

*Lierboe v. State Farm Mut. Auto. Ins. Co.,*
350 F.3d 1018 (9th Cir.2003) ..................................................................... 14

*Mahe v. Cont'l Tire The Ams., LLC*,
    No. EDCV 10-1744-DSF, 2012 WL 12873611 (C.D. Cal. Jan. 30,
    2012) ........................................................................................................ 15

*Manigo v. Time Warner Cable, Inc.*,
    No. CV-16672-2JFW, 2016 WL 9281314 (C.D. Cal. Dec. 29,
    2016) ............................................................................................... 9, 10, 17

*Mantolete v. Bolger*,
    767 F.2d 1416 (9th Cir. 1985) ................................................................ 9

*In re Mortgagors of Temple-Inland Mortg. Corp.*,
    No. Civ. A. 99-CV4633, 2001 WL 177181 (E.D. Pa. Jan. 24, 2001) ............... 17

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
    134 S. Ct. 1749 (2014) ........................................................................ 19

*Olney v. Job.com, Inc.*,
    No. 1:12-CV-01724-LJO-SKO, 2013 WL 5476813 (E.D. Cal.
    Sept. 30, 2013) ............................................................................... 11, 13

*Preston v. Clark Cty. Collection Serv.*,
    LLC, No. 2:14-CV-00021-APG-PAL, 2014 WL 2548093 (D. Nev.
    June 5, 2014)*, appeal dismissed by* No. 2:14-CV-00021-APG-
    PAL, 2014 WL 6882626 (D. Nev. Dec. 4, 2014) ................................ 8

*Risinger v. SOC LLC*,
    708 F. Appx 304 (9th Cir. 2017) ........................................................ 13

*Soto v. City of Concord*,
    162 F.R.D. 603 (N.D. Cal. 1995) ........................................................ 17

*U.S. v. Aventis Pharma S.A.*,
    No. EDCV 09-23-MJG, 2013 WL 12138605 (C.D. Cal. August 9,
    2013) ..................................................................................................... 19

*W. Loop Chiropractic & Sports Injury Ctr., Ltd. v. N. Am. Bancard,
LLC*,
    No. 16-CV-5856, 2017 WL 404896 (N.D. Ill. Jan. 30, 2017) ........................ 13

*Wahl v. Am. Sec. Ins.*,
    No. C 08-00555 RS, 2009 WL 3463211 (N.D. Cal. Oct. 23, 2009) .............. 9, 10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011) ...................................................................... 14

*Webb v. Healthcare Revenue Recovery Grp. LLC*,
   No. C. 13-00737 RS, 2014 WL 325132 (N.D. Cal. January 29,
   2014) ................................................................................................. 17

*Zewdu v. Citigroup Long Term Disability Plan*,
   264 F.R.D. 622 (N.D. Cal. 2010) ....................................................... 10

**Other Authorities**

Fed. R. Civ. P. 23(a)(3) ............................................................................ 13

Fed. R. Civ. P. 37(a)(5)(i-ii) .................................................................... 19

Nagareda, *Class Certification in the Age of Aggregate Proof*, 84
   N.Y.U.L.Rev. 97, 131-132 (2009) ..................................................... 14

**INTRODUCTION**

WLC is eager to move this case forward so that it can show the court that Craftwood cannot represent a class of WLC's other customers. Out of 25,000 active customers, Craftwood is among only *479* retailers (*i.e.*, resellers to consumers of products it purchased from WLC). Mcgraw Decl. ¶¶ 4, 11.[1] Of these, Craftwood is one of just *117* of the <u>lowest-volume</u> retailers, which means they do not have dedicated sales reps. *Id.* at ¶ 12.

WLC's business is not built around selling products to anyone who stumbles onto its website. Nearly every entity (including Craftwood d/b/a Bay Hardware) purchases on credit (after filling out a credit application in which the entity provides its facsimile number, as Craftwood did). WLC's primary business has always come from long-term, one-on-one relationships with woodworking wholesalers and manufacturers. *Id.* at ¶ 10. When one goes to WLC's website, at the top of the page customers do not just see a shopping cart, they see a "Who's my rep?" tab.[2] That is because WLC typically sells to customers via a specific sales representative that has been dedicated to the customer for years. *Id.* at ¶ 7.

Under the auspices of "class discovery," Craftwood seeks information about faxes that have nothing to do with it or any proposed class it could make a *prima facie* case for representing. Indeed, Craftwood originally requested *any* document that "relates" to any fax that mentions WLC's products (which would include virtually every fax it ever sent or received, including invoices). Months after serving these grossly-overbroad requests, Craftwood suggested in a meet and confer that it would dial that back and take discovery about all faxes "similar" to the ones it received (without defining what that means) relating to <u>every</u> WLC customer, no matter where located and what type. But the problem remains that

---

[1] Mr. McGraw was unavailable to sign his declaration but will do so within a day of this filing.

[2] Wurth Louis and Company, Storefront, https://www.wurthlac.com/storefront/index.ep (last visited April 10, 2018).

Craftwood has no basis to ask for discovery for proposed class members it could never represent.

The Ninth Circuit and courts in this district agree: a plaintiff should be allowed to burden a defendant with class discovery *only* as to a proposed class for which the plaintiff can make a *prima facie* case. And this makes sense. For the same reasons that plaintiffs may not generally seek discovery until they allege a plausible, non-speculative claim, plaintiffs cannot be allowed to inflict massive class-discovery burdens on companies when the existence or scope of the purported "class" is based entirely on (inaccurate) speculation.

Any suggestion that Craftwood could represent other types of customers as to faxes it did not receive is a nonstarter. For one, Craftwood would not have standing to bring claims about different faxes it never did and never would have received because of the type of customer it is and/or where it is located. For another, such a class could not be certifiable given the many individualized questions it would present. Whether a low-volume retailer without a sales representative consented to receive product faxes says little about whether WLC's longtime customers with one-on-one service relationships consented to receive product faxes. Because Craftwood could never make a *prima facie* showing as to other groups of customers or faxes other than the ones it received, it is Craftwood, not WLC, that has failed to meet its discovery burdens. Craftwood's discovery requests should thus be generally limited to information relevant to similar low-volume retail customers without assigned sales representatives who received the same faxes as Craftwood.

At the April 9, 2018 hearing, Judge Carter ordered all discovery disputes to be submitted to a special master (who will be appointed by no later than tomorrow). ECF No. 86.[3]

---

[3] Wurth Louis and Company ("WLC") advises this Court of Judge Carter's order only so that this Court does not divert time to matters Judge Carter wishes a special master to address. *See id.*

In that same order, Judge Carter denied WLC's motion to disqualify Craftwood II, Inc.'s ("Craftwood") counsel, Payne & Fears, because Payne & Fears swore that it did not receive any information about WLC during the *Senco* lawsuit (the lawsuit in which Payne & Fears represented WLC as an absent settlement class member). ECF No. 76 at ¶¶ 9-20. WLC is thus producing documents and information in response to Craftwood's discovery requests by no later than Friday April 13, 2018, largely mooting Craftwood's motion to compel.

## RELEVANT FACTUAL AND PROCEDURAL HISTORY

Craftwood filed a complaint alleging (but not definitively knowing) that WLC transmitted 10 facsimiles to it without its consent. ECF Nos. 1-1 ¶ 2; 25-1 at 3. At least part of each fax is attached to the Complaint. ECF Nos. 1-1.

Based on the dates on the facsimiles, the faxes were sent between the dates of April 27, 2015 and December 12, 2016. *Id*. The faxes sent to Craftwood concern:

- Products or brands that Craftwood sells (*e.g*., Amerock, Blum, Pro Series lighting components);
- Promotions specific to California that Craftwood sells (*e.g*., California compliant adhesives);
- Golf tournaments sponsored by brands that Craftwood sells (*e.g*., Amerock-sponsored golf tournament near Craftwood d/b/a Bay Hardware's Southern California location); and
- Tiered discounts based on total amounts purchased.

*See id*.[4]

---

After the hearing, the parties conferred, and Craftwood proposed both parties proceed with the briefing schedule set by this Court.

[4] Craftwood's sales of these products are advertised on its website. *See generally* Bay Hardware, Homepage, https://www.bay-hardware.com (last visited April 10, 2018).

## A. WLC's Facsimile Practices

WLC only sent facsimiles to its customers, never to anyone else.  WLC specifically selected the specific facsimiles attached to Plaintiff's Complaint *for Craftwood* based on the type of business it is and the products it sells.  McGraw Decl. at ¶ 15. Craftwood (which has only made a handful of purchases from WLC) is a WLC customer; a small retailer without a designated outside sales representative. *Id.* at ¶ 12. This puts Craftwood in a group of just 117 customers. *Id*. WLC has approximately 25,000 active (purchasing) customers. *Id.* at ¶ 4. Well over 23,000 of these customers have been active WLC customers for more than a year; and most of these customers have been active WLC customers for at least three years. *Id*.

WLC's primary business comes from long-term, one-on-one relationships with hardware wholesalers or manufacturers—not retailers like Craftwood. *Id.* at ¶ 10. Usually, WLC assigns dedicated sales representatives to its customers. *Id.* at ¶ 5. These sales representatives have delineated territories and visit their customers' businesses in person. *Id.* at ¶ 6. During those visits, they advise customers about what products might meet their needs, and consult about all sorts of woodworking issues. *Id.* ¶¶ 6-7. The relationships between WLC and its customers often extend for years, even decades. *Id.* at ¶ 7.

When WLC faxed promotional product information to typical customers, the customers not only consented as part of their close working relationships with WLC — it was often at a customer's specific request.[5] *Id.* at ¶ 14. When WLC faxed information about a product or promotion to more than one customer at a time, WLC's marketing manager specifically selected which customers should

---

[5] Most customers no longer use fax to communicate, although many do fax purchase orders and request their invoices be sent to them via fax. When they want product information, they usually request it electronically via e-mail (although some customers still utilize fax machines).

receive the information based on WLC's knowledge about those customers and how they use WLC's products. *Id.* at ¶ 15.[6]

The criteria the WLC marketing head used to determine to whom to send promotional information about products or promotions varied and included (among other things): (a) location of customer, (b) size of customer, (c) customer purchase history, (d) type of customer, and (e) products used by customer in its business. *Id.* at ¶ 17. Based on these and other criteria, the WLC marketing manager assembled a targeted group of potential recipients from a master list of customers who had provided consent to WLC to receive such information. *Id.* at ¶ 16.

## B. Craftwood's Discovery Requests

Craftwood's discovery requests are overbroad and improper. *First*, Craftwood seeks information about faxes that have nothing to do with it or any class it could make a *prima facie* case for representing. Indeed, Craftwood originally requested *any* document that "relates" to any fax that mentions WLC's products (which would include virtually every fax ever sent, including invoices). Months after serving its requests, Craftwood suggested in a meet and confer that it would dial that back and take discovery about all faxes "similar" to the ones it received (without defining what that means) related to every WLC customer. But the problem remains that Craftwood has no basis to ask for discovery for proposed class members it could never represent: namely, different types of customers who are differently situated from Craftwood.

*Second*, Craftwood asks for personal information about many of WLC's customers. Craftwood is not entitled to this information at this stage of the litigation. Moreover, Craftwood's demand flies in the face of its representation to Judge Carter on April 9, 2018 that it should not be disqualified from this case

---

[6] When WLC sent facsimiles to more than one customer containing promotional information, it relied on a third-party facsimile sender called WestFax to send the faxes. WLC has no transmission data for any of the faxes it sent.

because it never received (nor sought) any information about WLC during the *Senco* case (including its identity).[7] ECF No. 76 at ¶¶ 9-20.

*Third*, Craftwood seeks discovery dating back before its proposed class period. Such a request is completely burdensome. The time period for which it seeks information is already well prior to the date of the first facsimile it claims to have received without consent (April 2015). Craftwood offers no reasonable time limitations and no proper justification for this request (because none exists). Craftwood's requests should be confined to the relevant period it defined in its pleading.

## C. WLC's Conduct Has Been Reasonable

WLC will not waste this court's time by cherry-picking every email where Craftwood took weeks to reply. The short of it is that Craftwood waited until September 28, 2017 (three weeks after the Rule 26 conference) to serve its discovery requests. Ex. A, Plaintiff's First Set of Requests for Production. When WLC read through them and realized that many were facially improper (for example, Craftwood blew by the numerical limit on interrogatories), WLC reached out to Craftwood to resolve the deficiencies. Ex. B, 10/26/2017 T. Kayes Email. Over the following couple of months, the parties worked some things out, but Craftwood maintained some unreasonable positions that derailed production.

It was not until November 10, 2017 that Craftwood agreed to limit its interrogatories so that it at least came close to meeting the rules' numerical limit (Craftwood had included interrogatories with voluminous subparts, for example,

---

[7] As the Court can see from the attached chart, Craftwood is making its way through the hardware industry and its suppliers, bringing TCPA class actions against many of them. *See* Ex. F. All exhibits are attached to the Declaration of Livia Kiser. Putting aside the fact that WLC does not want to facilitate Craftwood's activities, there is no reason Craftwood needs this information now. It does not represent a certified class at this point, just an (overbroad) proposed class that cannot satisfy the rigorous requirements of Rule 23. Craftwood has articulated no reason for needing the identities of customers at this stage of the proceeding. And there are obviously good reasons to prevent needless disclosure of WLC's customer names, addresses, and other private information.

asking for "all facts" about every time WLC gave anything but an "unqualified admission"). *See* Ex. C, 11/10/2017 L. Livingston Letter. Likewise, it was not until December 27, 2017 that Craftwood finally agreed that its requests related to "Junk Faxes"—a term it inserted into the majority of its discovery requests—should be drastically narrowed. Ex. E, 12/27/2017 L. Livingston Letter. These requests asked for "any and all documents" that "discuss [or] describe" any of WLC's "products or services" or its own "website."[8] It's hard to imagine a document WLC could fax that would not "discuss or describe" one of its products—including every invoice, price quote, customer communication, and other document it faxes to its customers every day. WLC sending a fax to one of its suppliers to order some wood screws would be responsive.

Instead of rushing to this Court to seek a protective order against frivolous requests like these (and to compel Craftwood's own discovery responses, which were deficient for various reasons), WLC continued trying to work cooperatively with Craftwood. Aside from a few periods when WLC asked for a short extension,[9] WLC diligently produced documents and was collecting more to respond to Craftwood's newly-narrowed requests when WLC uncovered a snag—and not one of its own making. Come to find out, in waging its campaign of TCPA lawsuits across the woodworking industry, Plaintiff's counsel put some of their own clients (including WLC) into the crossfire. Craftwood had sued its own client, thus creating a potentially disqualifying conflict of interest.[10]

---

[8] *See* Craftwood's First Set of Requests for Production, attached as Exhibit A, at 4.

[9] WLC does not dispute that between October and January (when it brought the conflict of interest to Craftwood's attention), WLC asked for a couple of extensions for production or to respond to Craftwood's communications. One of WLC's counsel's infant children had a lengthy, serious illness requiring ongoing medical attention (including repeated trips to the Emergency Room, etc.), and WLC also experienced some technical difficulties with corrupted data files. Ex. D, 12/21/2017 T. Kayes Email. Moreover, both parties were unavailable during the holidays.

[10] WLC brought the conflict to the attention of Plaintiff's counsel as soon as possible after discovering the conflict (again, trying to avoid bringing these disputes to this court). But Plaintiff's counsel refused to even acknowledge that WLC was previously an absent class member represented by Craftwood's counsel at the time of the filing of the lawsuit, despite

It made no sense to bring the parties' discovery dispute to this court until the disqualification question has been resolved. WLC has legitimate concerns about sharing its confidential information to conflicted counsel who is suing the industry (including a couple of WLC's current customers). WLC thus proposed the parties table their discovery disputes pending the Court's disqualification decision. But Plaintiff's counsel, without further consultation with or notice to WLC, filed its half of a joint stipulation.

## ARGUMENT

### A. The Proper Bounds Of Class Discovery

The Federal Rules do not provide plaintiffs with a right to discovery for uncertified classes. *See* Fed. R. Civ. P. 26; *see also Preston v. Clark Cty. Collection Serv.*, LLC, No. 2:14-CV-00021-APG-PAL, 2014 WL 2548093, at *3 (D. Nev. June 5, 2014) (declining to burden defendant with class discovery and limiting discovery to named plaintiff's claims). Instead, the Ninth Circuit has counseled that trial-court judges should use their sound judgment to decide whether class discovery is needed in a particular case—and if so, how it should be limited. *See Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985).

Courts have emphasized that it is the plaintiff, not the defendant, who bears the burden of showing that any particular *class* discovery is warranted. *Manigo v. Time Warner Cable, Inc.*, No. CV166722JFWPLAX, 2016 WL 9281314, at *2 (C.D. Cal. Dec. 29, 2016). That is because "the purpose of the pre-trial discovery rules . . . is to enable the parties to prepare for trial with respect to their own bona fide existing claims, not to determine whether third parties may have similar claims." *Crabtree v. Hayden, Stone Inc.*, 43 F.R.D. 281, 283 (S.D.N.Y.1967). The

---

overwhelming evidence to the contrary (*i.e.*, a settlement check). ECF No. 68-16. The stonewalling of Craftwood's counsel on this issue further delayed the case.

doors to discovery about any possible class claim are not open merely because a plaintiff alleges a similar claim on its own behalf.

To meet its discovery burden, a plaintiff should "advance[e] a prima facie showing that the class action requirements of Rule 23 are satisfied, or that discovery is likely to produce substantiation of the class allegations." *Wahl v. Am. Sec. Ins. Co.*, No. C 08-00555 RS, 2009 WL 3463211, at *2 (N.D. Cal. Oct. 23, 2009) (emphasis omitted citation omitted). In other words, plaintiffs are entitled to class discovery only with respect to a class for which it has made a *prima facie* showing *actually is, or is likely to be, certifiable. See also Holak v. K Mart Corp.*, No. 1:12-CV-00304-AWI, 2014 WL 4930762, at *3 (E.D. Cal. Sept. 30, 2014).

This limitation makes sense. The U.S. Supreme Court recognizes the harms that flow from forcing burdensome discovery on companies absent a showing that alleged claims are plausible. *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 546 (2007) ("It is no answer to say that a claim just shy of plausible entitlement can be weeded out early in the discovery process . . ."). The same is true for a plaintiff seeking to certify an overbroad purported class. *Twombly* and other governing authority foreclose a plaintiff from unlocking discovery about every conceivable claim under the auspices of "class discovery" simply by virtue of bringing its own claim and expansively defining a proposed class.

Courts do not hesitate to limit discovery to ensure plaintiffs are not allowed to go fishing on behalf of a mystery class. *See Wahl*, 2009 WL 3463211, at *1–2 ("The recognized need for pre-certification discovery, however, is subject to court-imposed limitations, and any such limitations are within the sound discretion of the court."); *Zewdu v. Citigroup Long Term Disability Plan*, 264 F.R.D. 622, 626 (N.D. Cal. 2010) ("Discovery must be narrowly tailored . . . and must not be a fishing expedition.") (citation omitted). For example, a judge in the Eastern District limited class discovery to a single store in a class action case—rather than allowing statewide discovery for all *similar* stores. *Holak*, 2014 WL 4930762, at

*3. The court emphasized that a plaintiff is entitled to class discovery only if it makes "a prima facie showing," and (as here) it had not. *Id.*

In another recent case in this district, plaintiffs attempted to seek statewide class discovery in a case involving alleged violations at a particular facility. *Manigo*, 2016 WL 9281314, at *2. The plaintiffs argued that because they had plausibly alleged violations in one facility, they should be permitted to obtain discovery about similar violations in other facilities to support a bigger class. *Id.* The problem was that the plaintiffs failed to show that any other violations had in fact occurred. *Id.* In limiting class discovery to the single facility the court explained that "Plaintiffs' speculation as to what the broad discovery that they seek might show is insufficient to meet their burden of showing that additional discovery is 'likely to produce substantiation of the class allegations." *Id.* That is because "[q]uite simply, such speculation is not sufficient to make a prima facie showing as required by" courts in this district. *Id.*

The plaintiff always "bears the burden of advancing a prima facie showing" that its discovery related to a certifiable class or is "likely" to substantiate such a class. *Wahl*, 2009 WL 3463211, at *2. The question is thus not merely whether plaintiff has put forth a *prima facie* case for *some* class, but whether it has put forth a *prima facie* case for *the particular class* it seeks discovery about. "Absent such a showing, a trial court's refusal to allow class discovery is not an abuse of discretion." *Olney v. Job.com, Inc.,* No. 1:12-CV-01724-LJO, 2013 WL 5476813, at *4 (E.D. Cal. Sept. 30, 2013) (citation omitted).

**B. Craftwood's Class Discovery Should Be Limited To A Proposed Class It Could Theoretically Represent[11]**

Many of Craftwood's requests seek documents or information related to what it calls "Junk Faxes." *See* Ex. A at 4, Plaintiff's First Set of Requests for Production. Indeed, Request Nos. 1.1-5.3 and 7.1-8.2 (29 of the 37 document requests) use this term. There can be no serious dispute that the requests derived from this term are *per se* overbroad. According to Plaintiff, "Junk Faxes" include "any and all documents" that "discuss [or] describe" any of WLC's "products or services" or its own "website."[12] *Id*. Nearly every document WLC faxes "discuss[es] or describe[s]" one of its products (including invoices, instructions, product information, and the like). Although Craftwood has not served more limited requests, it has suggested in meet and confers and in its Joint Statement that it would agree to limit its discovery to faxes "similar" to the ones it received. Ex. E, 12/27/2017 L. Livingston Letter.

But Craftwood has not met its burden to show that is in entitled to class discovery for a theoretical class of different types of customers who received "similar" faxes either (whatever that means). The only proposed class for which Craftwood could possibly put forward a *prima facie* case would be a class of similarly-situated customers who received the same faxes that Craftwood did.

---

[11] Craftwood's argument that WLC should be compelled to produce more than "150 documents" merits no response. WLC has provided responsive, discoverable documents to Craftwood as it has collected them. That WLC has provided 150 documents in the handful of months since Craftwood served its discovery (amid disputes over the proper scope of discovery) cannot possibly be legitimate grounds for compelling. Moreover, Craftwood has only produced 362 documents.

[12] The entire request states: "'JUNK FAX' or 'JUNK FAXES' mean any and all documents or materials sent or transmitted via facsimile transmission, from April 4, 2013, through the date You respond to these interrogatories that: (1) are identical or similar to the CRAFTWOOD FAXES; (2) discuss, describe, promote products or services offered by Wurth Louis & Company or under any Wurth Louis & Company brand; (3) discuss, describe, promote any website of Wurth Louis & Company or any Wurth Louis & Company brand; or (4) include any combination of the foregoing." Ex. A at 4, Plaintiff's First Set of Requests for Production.

As a preliminary note, a subtle misapprehension runs through much of Craftwood's Motion to Compel. Craftwood repeatedly refers to "routine" TCPA cases and what courts do in "routine" TCPA cases. But this case could not be farther from "routine."  WLC understands Craftwood to define a "routine" TCPA case as being when a company purchases thousands of cell or fax numbers from a third party and blasts everyone with the same unsolicited spam message. Perhaps it makes sense in that sort of situation to allow discovery not only with respect to the single text the named representative received, but also the nearly-identical form texts the defendant blasted out to unsuspecting strangers from the same, purchased list.

Craftwood's hypothetical straw man bears no resemblance to this case. WLC has communicated for years (in some cases, decades) with many of its customers by fax, often at the customer's request.  Mcgraw Decl. at ¶¶ 7, 14.  Many of these customers have longstanding, intimate business relationships with WLC who purchase large volumes of product to make things out of wood, such as cabinetry and furniture, or to build buildings like schools. For most of these customers, any suggestion that they did not expressly consent to receive communications about products they constantly purchase from WLC would be farcical. The fact that another court allowed discovery in an "everyday" TCPA case about text blasts to random members of the public is in no sense probative of what discovery scope is proper in this case. Attempting to sweep WLC's entire business into this small TCPA case squarely violates the Federal Rules' limitations on proportionality and relevance.

And in any event, Craftwood cannot make a *prima facie* showing about any class related to "similar" faxes that entirely different categories of customers may have received. Setting aside numerosity and commonality, to certify a class, "the claims or defenses of the representative part[y] [must be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Typicality requires that a class

representative possess the same interest and suffer the same injury as the putative class." *Olney v. Job.com, Inc.,* 2013 WL 5476813, at *14 (citation omitted).

Craftwood's purported class must also meet the strictures of predominance. "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Questions common to the class must predominate over individual questions. *Id.* Individual questions are those requiring "members of the proposed class . . . to present varying evidence;" common questions are those that can be settled on "the same evidence" or "class-wide proof." *Risinger v. SOC LLC*, 708 F. App'x 304, 306 (9th Cir. 2017).

Craftwood cannot show that it could properly represent different categories of customers who may have received different faxes. *First*, any suggestion that other "similar" faxes exist is pure speculation. That one allegedly "improper fax message [was sent] to Plaintiff is, by itself, [not] a sufficient basis for a reasonable belief that Defendant has sent other improper faxes." *W. Loop Chiropractic & Sports Injury Ctr., Ltd. v. N. Am. Bancard, LLC*, No. 16-CV-5856, 2017 WL 404896, at *2 (N.D. Ill. Jan. 30, 2017).  Craftwood has been deliberately vague as to what it means by "similar," but the only faxes Craftwood would have received are faxes that were sent to customers according to specific criteria. As noted, the facsimiles that WLC sent were curated specifically for Craftwood.

*Second*, WLC is not (and never has been) in the spam business. There is simply no basis for Craftwood to suggest that it could represent any class related to the myriad of unique faxes that WLC sends to its other customers. The individualized inquires would be legion:

1. The extent of WLC's business relationship with each differently-situated customer: WLC's customers with which it has an intimate business relationship and one-on-one sales representatives would present an entirely different consent case than Craftwood's;

2. Whether each customer received the fax (or was put on a recipient list of faxes) because of a particular inquiry or request;

3. Whether each customer expressly consented to receive each individual fax;

4. How many and what type of faxes were received;

5. Whether each fax qualifies as an advertisement (the TCPA only prohibits advertisements); and,

6. Assuming any given fax was not sent with prior express consent, whether it contains a sufficient opt-out notice.

*See Gannon v. Network Tel. Servs., Inc.,* No. CV 12-9777-RGK PJWX, 2013 WL 2450199, at *3 (C.D. Cal. June 5, 2013), *aff'd*, 628 F. App'x 551 (9th Cir. 2016) (declining to certify a TCPA class because individual issues predominated).

*Third*, Craftwood would not even have standing to litigate claims about faxes it never received. "There is clear Ninth Circuit authority stating that a plaintiff who lacks standing to pursue a claim cannot be a class representative for that claim." *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2010 WL 3743532, at *4 (N.D. Cal. Sept. 17, 2010); *see also Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir.2003) ("if Lierboe has no stacking claim, she cannot represent others who may have such a claim, and her bid to serve as a class representative must fail"). At its most fundamental level, class certification demands that the trial of the plaintiff's claims would necessarily resolve the factual issues necessary to decide the putative class members' claims. After all, "[w]hat matters to class certification [] is … the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (quoting Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U.L.Rev. 97, 131-132 (2009)). But a trial on whether the faxes received by

Craftwood are "advertisements," were sent with consent, or contained proper opt-out language generates no *answers about faxes they never got.*

Craftwood's argument on these points is nearly nonexistent and in no sense persuasive. It merely contends that "Wurth's fax advertising as a whole bears directly on issues like numerosity, commonality, typicality, and ascertainability—all issues that go towards class certification." But that presumes that Craftwood has put forth a *prima facie* case of a class related to WLC's entire "fax advertising as a whole" when it clearly has not. Craftwood offers no evidence or allegation to suggest that this line of discovery is "likely" to substantiate any particular class Craftwood could actually represent. The Court should thus, at the least, limit the scope of class discovery to customers like Craftwood who received the same faxes it received.

### C. Craftwood's Requests Must Be Proportional To This Case's Needs

Discovery must be limited to a *relevant* time period. *See Mahe v. Cont'l Tire The Americas, LLC,* No. EDCV101744DSFOPX, 2012 WL 12873611, at *6 (C.D. Cal. Jan. 30, 2012) (limiting discovery to time period relevant to claims). That is, discovery requests must be limited to a time period aimed at seeking relevant information. *Id.* Craftwood served various requests seeking discovery prior to its purported class period.[13] Indeed, for many of these requests, Craftwood did not include *any time period whatsoever. See* Ex. A, Plaintiff's First Set of Requests for Production. Craftwood's response is that it believes there could conceivably be some documents predating the class period that are relevant. It provides a single example: "communications about and Wurth's understanding of opt-out requirements and the TCPA." ECF No. 63 at 15.

---

[13] Request Nos. 1.1, 1.2, 1.4, 2.1-2.5, 3.1-3.4, 4.1- 4.3, 5.1, 5.2, 7.1, 7.3, and 8.1. Ex. A, Plaintiff's First Set of Requests for Production.

*First*, Craftwood bears the burden of crafting appropriately-limited, relevant discovery requests. Craftwood did not even attempt to properly limit its requests to a relevant time period that is proportional to the needs of the case. Requests going back 10 or 20 years are not relevant to claims with a 4-year statute of limitations, especially when the first facsimile Craftwood complains about was sent in 2015.

*Second*, Craftwood cannot just serve numerous unbounded discovery requests and suggest WLC should comply because one subset of documents could potentially be relevant. "Potential relevance" is no longer the touchstone for discovery—reasonableness and proportionality have replaced it. Craftwood must explain which classes of documents predating the class period are proportional to the needs of the case relative to the significant burden it's attempting to place on WLC.

Until Craftwood serves requests that are proportional and reasonable—including with an appropriate time limit—WLC cannot substantively respond, and cannot be required to.

### D. Craftwood Is Not Entitled To WLC's Customer Information

Craftwood objects to WLC redacting its customers' private information from its document productions prior to class certification, arguing that obtaining these potential class members' identities is crucial. That is quite an interesting position for Craftwood to take. *See* ECF No. 73 at 4, Craftwood's Opposition to Motion to Disqualify (explaining that in Craftwood's prior TCPA litigation, at the certification stage, counsel was not aware WLC was a client because the identity of its class members were of no matter to certification: '[n]or were Craftwood's attorneys focused on the actual identities of the recipients. . . . Because class certification requires the predominance of common issues, Craftwood and its attorneys were interested only in knowing that potential class members could be identified by a fax number.").

In any event, courts around the nation have refused to compel this sort of discovery—and in situations precisely like this one—where "plaintiffs' attorneys may be seeking such information to identify potential new clients, rather than to establish the appropriateness of certification." *Dziennik v. Sealift, Inc.*, No. 05-CV-4659 MDG, 2006 WL 1455464, at *1 (E.D.N.Y. May 23, 2006); *see also Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 416 (9th Cir.1985) (affirming denial of motion to produce names of similarly situated investors); *In re Mortgagors of Temple-Inland Mortg. Corp.,* No. Civ. A. 99-CV4633, 2001 WL 177181, at *2 (E.D. Pa. Jan. 24, 2001); *Buycks-Roberson v. Citibank Federal Sav. Bank,* 162 F.R.D. 338, 342 (N.D. Ill.1995) (plaintiffs were not entitled to loan files without redacted addresses where loan applicant's names were also redacted).

Courts generally agree that people have a privacy interest in their contact information, including their private address and phone numbers. Although "the right to privacy is not a federally recognized privilege, many federal courts have considered it in discovery disputes." *Manigo,* 2016 WL 9281314, at *3; *see also DeMasi v. Weiss*, 669 F.2d 114, 120 (3rd Cir. 1982); *Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995).

That is not to say that some courts have not allowed discovery of class-member identities and contact information in narrow circumstances. *See, e.g., Webb v. Healthcare Revenue Recovery Grp. LLC*, No. 13-00737 RS, 2014 WL 325132, at *2-3 (N.D. Cal. January 29, 2014). But that does not change the fact that Craftwood must both (1) make a *prima facie* showing of the class for which it wants discovery in the first place, and (2) show that this identifying information is relevant prior to certification. And it has done neither. As explained in the prior section, Craftwood has not made a *prima facie* showing for the overbroad class it seeks discovery about. Nor has it explained why it needs customer information to argue class certification.

Finally, this case is not the "routine" TCPA case Craftwood pretends it is. These are not random people that Craftwood wants to track down and interview—they are WLC's longtime customers. WLC has active customers that have been with it since the 1970s. McGraw Decl. at ¶ 4. It has thousands upon thousands of customers who have been active for decades. *Id*. Unless and until a class is certified, Craftwood (as it argued yesterday) has no need to know the identities of WLC's customers. *Manigo,* 2016 WL 9281314, at *3; *see also DeMasi v. Weiss*, 669 F.2d 114, 120 (3rd Cir. 1982); *Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995).

### E. WLC Is Fulfilling Its Discovery Obligations

Now that WLC's motion for disqualification has been ruled upon, WLC has advised Plaintiff that by no later than April 13, 2018, WLC will (1) supplement its responses to properly-limited requests for documents; (2) supplement its responses to properly-limited interrogatories; (3) enter into a protective order to ensure the parties' and others' interests in confidentiality are protected—and after that, produce confidential information pursuant to its terms; and, (4) prepare a privilege log if one is needed.[14]

### F. Craftwood Is Not Entitled To Fees

Under its inherent powers, a court may impose sanctions where a party has willfully disobeyed a court order, or where the party has "acted in bad faith, vexatiously, or for oppressive reasons." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S.Ct. 1749, 1758 (2014) (citation omitted). A party who successfully moves to compel may also be entitled to fees, but only if both (1) "the movant filed the motion [after] attempting in good faith to obtain the disclosure or

---

[14] Although WLC included general objections in its responses, it has withheld documents thus far based on its specific objections and bases directly communicated to Craftwood. And despite Craftwood's suggestion that general objections are inappropriate, they are common practice. *See U.S. v. Aventis Pharma S.A.*, No. EDCV 09-23-MJG (OPx), 2013 WL 12138605 at *3 (C.D. Cal. August 9, 2013) (noting that general objections are merely "disfavored" by some courts).

- 18 -

discovery without court action;" and (2) "the opposing party's nondisclosure, response, or objection was [not] substantially justified." Fed. R. Civ. P. 37(a)(5).

As explained at length above, Craftwood abused the discovery process by serving facially improper requests, mischaracterizing the parties' discovery disputes, and refusing to negotiate the parties' disputes in good faith so as to avoid the court's intervention. Although WLC believes that *Craftwood* properly could be sanctioned for these abuses, in the spirit of encouraging a better relationship in the future, WLC does not request sanctions at this time.

As to Craftwood's request for fees, it has not come close to showing that it is entitled to any.[15] *First*, Craftwood cannot claim to have attempted in "good faith to obtain the disclosure or discovery without court action." As explained above, Craftwood delayed in propounding reasonable requests. And it knew well that WLC agreed to supplement its production as soon as the court ruled on the disqualification question (which it will do this week). Craftwood offers no reason that it could not have waited a short time longer for this discovery—which would have obviated at least much of its efforts to compel.

*Second,* there can be no serious dispute about whether WLC was justified in disputing the scope of Craftwood's requests. As explained above, Craftwood propounded facially improper requests and refused to revise those requests for months. The court need look no further than Craftwood's decision to ignore the Rules' numerical limits and the most basic limitations on the proper scope of class discovery (as even Craftwood itself ultimately acknowledged).

---

[15] Craftwood's argument for fees appears to be a copy-and-pasted form brief. *See, e.g.,* ECF No. 63 at 19 (referring to Rule "37(b)(2)(C)," which governs failures to comply with court orders); *id.* (referring to failures to file adequate "initial disclosures"). In Craftwood's supporting declaration, counsel offers no specific explanation or itemization of the hours allegedly worked on tasks, simply stating that, for example, "I spent approximately 10 hours preparing the original informal letter for the motion to compel and later the Joint Stipulation and supporting declarations." ECF No. 64 at 9. The amount of time spent is also far greater than reasonable.

*Third*, Craftwood's inflammatory accusations of "stonewalling" are disingenuous at best. Aside from WLC asking for some brief time to deal with serious medical issues and technology issues (both of which Craftwood agreed to), WLC has withheld further production only because either Craftwood's discovery requests were improper or because it reasonably believed Plaintiff's counsel had a disqualifying conflict of interest. The issue was hotly contested and WLC's grounds for moving were not frivolous.  It was fundamentally unfair of Craftwood to attempt to force WLC to engage with, much less give confidential information to, a law firm that previously represented it and is now suing it, until it could be heard on that issue.[16]

## CONCLUSION

For these reasons, WLC respectfully requests the Court deny Craftwood's Motion to Compel and its request for fees. WLC respectfully requests such other, further relief this Court deems appropriate.

Dated: April 10, 2018                     Respectfully submitted,

                                          SIDLEY AUSTIN LLP

                                          By:    */s/ Livia M. Kiser*
                                                 Livia M. Kiser

                                          *Attorneys for Defendant* WURTH LOUIS AND COMPANY

---

[16] Even if Craftwood's fee demand were proper (though it is not), Craftwood's conclusory records cannot substantiate a fee request. Craftwood has not adequately detailed the hours worked or the lodestar. Telling is that Craftwood seeks fees not just for preparing its Motion, but for every time it met and conferred with WLC. ECF No. 63 at 19.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Certificate of Service**

On April 10, 2018, I filed this document using the Court's CM/ECF system, causing it to be served upon all ECF-registered counsel of record per Rule 5(b)(3) of the Federal Rules of Civil Procedure.

/s/ Livia M. Kiser

Livia M. Kiser
lkiser@sidley.com
Courtney A. Hoffman
choffman@sidley.com
Raechel Bimmerle
rbimmerle@sidley.com
Tom Kayes
tkayes@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Tel: (312) 853-7000
Fax: (312) 853-7036

Michael L. Mallow
mmallow@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, California 90013
Tel: (213) 896-6666
Fax: (213) 896-6600

Attorneys for Defendant WURTH LOUIS AND COMPANY

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| CRAFTWOOD II, INC., et al., | Case No.:8:17-cv-00606 (DOC) (KES) |
| Plaintiff, | |
| v. | **DECLARATION OF LIVIA M. KISER IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL** |
| WURTH LOUIS AND COMPANY, et al., | |
| Defendant. | |

I, Livia M. Kiser, declare:

1.      I am a partner at the law firm of Sidley Austin LLP, counsel to Wurth Louis and Company in this case.  I am over 18 years of age and, if called to testify, I could and would testify about the information in this declaration.

2.      The information in this declaration is based on my own personal knowledge.

3.      Filed concurrently with this declaration and also in support of Wurth Louis's Opposition To Plaintiff's Motion To Compel are true and correct copies of the following exhibits:

| Ex. | Description |
| --- | --- |
| A. | Plaintiff's First Set of Requests for Production |
| B. | 10/26/2017 T. Kayes Email |
| C. | 11/10/2017 L. Livingston Letter |
| D. | 12/21/2017 T. Kayes Email |
| E. | 12/27/2017 L. Livingston Letter |
| F. | Craftwood TCPA Litigation Chart |

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed April 10, 2018, at Chicago, Illinois.

/s/ Livia M. Kiser
_____
Livia M. Kiser

**Certificate of Service**

On April 10, 2018, I filed this document using the Court's CM/ECF system, causing it to be served upon all ECF-registered counsel of record per Rule 5(b)(3) of the Federal Rules of Civil Procedure.

/s/ Livia M. Kiser

# Exhibit A

Under authority of Federal Rule of Civil Procedure 34, Plaintiff Craftwood II, Inc., demands that on November 2, 2017, commencing at 10:00 A.M., Defendant Wurth Louis & Company produce and permit the inspection and copying of all documents and electronically stored information identified herein, at the law offices of Payne & Fears, LLP, 4 Park Plaza, Suite 1100, Irvine, CA 92614. Such inspection and copying will not permanently alter the items inspected or copied.

## INSTRUCTIONS

A. If any request calls for the production of any privileged or protected document or material and such privilege or protection is asserted, Defendant are to furnish a log that identifies each document or material so withheld together with the following information: (i) the reason for withholding or non-disclosure; (ii) a statement of facts constituting the bases for any claim of privilege, work product or other ground of non-disclosure; (iii) a brief description of the document, including: the date of the document; the name(s) of its author(s) or preparer(s), and an identification by employment and title of each such person; (iv) the names of each person who was sent or has had access to, or custody of the document or any copy thereof, together with an identification by employment and title of each such person; (v) the request(s) to which the document relates; and (vi) in the case of any document relating in any way to an oral communication, identification of such oral communication, including the date, time, place and parties to such communication.

B. If any DOCUMENTS requested in these requests have been lost, destroyed, or overwritten, the DOCUMENTS lost, destroyed or overwritten shall be identified by author, date and subject matter, and Defendant shall provide the following additional information: (i) the request(s) to which the document relates; (ii) the last known location of the document; (iii) the name, address and telephone number of the last known person to have custody, care or control of the document; (iv) the circumstances under which the document was lost, destroyed or overwritten; and (v) the name, address and telephone number of any natural person or

PAYNE & FEARS LLP
ATTORNEYS AT LAW
1100 GLENDON AVENUE, SUITE 1250
LOS ANGELES, CALIFORNIA 90024
(310) 689-1750

1 │ organization known or believed by Defendant to have possession custody or control

2 │ of the original or any copies of the document.

3 │      C.     Each request shall be construed conjunctively or disjunctively as

4 │ necessary to make the request inclusive rather than exclusive.

5 │      D.     The plural includes the singular and the singular includes the plural.

6 │      E.     All electronically stored information should be produced in its native

7 │ format.

8 │ **DEFINITIONS**

9 │ The definitions set forth below shall be used for purposes of these requests:

10 │      1.     "CRAFTWOOD FAXES" means the DOCUMENTS attached as

11 │ Exhibits "1" through "10" to the Complaint filed in this action.

12 │      2.     "YOU," "YOUR," "DEFENDANT" or "WURTH" refers to Defendant

13 │ Wurth Louis & Company.

14 │      3.     "DOCUMENT" or "DOCUMENTS" are used in its broadest sense and

15 │ means the original and each copy, if such copy is different in any respect from the

16 │ original, whether different from the original because of notes made on such copy,

17 │ electronically stored format or otherwise, of any information fixed in any tangible

18 │ medium of expression. The term includes, but is not limited to, papers, contracts,

19 │ agreements, books, journals, ledgers, statements, memoranda, reports, bills, billings,

20 │ invoices, work sheets, jottings, projections, notes, letters, correspondence, abstracts,

21 │ advertisements, drawings, audits, charges, balance sheets, income statements,

22 │ checks, diagrams, certificates, diaries, calendars, logs, drafts, recordings,

23 │ instructions, lists, minutes of meetings, orders, resolutions, recitals, telegrams,

24 │ wires, cables, telexes, messages, telephone bills, resumes, summaries, tabulations,

25 │ tallies, statistical analyses, magnetic and electronic media (tapes, hard disks, floppy

26 │ disks computer tapes, computer printouts, input/output computer systems, whether

27 │ optical, visual or magnetic), electronic information, and any other information or

28 │ formal writings or tangible things on which any handwriting, typing, printing,

PAYNE & FEARS LLP
ATTORNEYS AT LAW
1100 GLENDON AVENUE, SUITE 1250
LOS ANGELES, CALIFORNIA 90024
(310) 689-1750

1  photostatic image, magnetic or electronic impulse, or other form of communication

2  is recorded or reproduced, and any and any amendments or supplements to any of

3  the foregoing, no matter by whom prepared.

4      4.    "ESTABLISHED BUSINESS RELATIONSHIP" or "EBR" has the

5  same meaning as used in 47 U.S.C. § 227(a)(2).

6      5.    "FAX BROADCASTER" means Westfax Inc. or any other party who

7  sent or participated in the sending of a JUNK FAX.

8      6.    "JUNK FAX" or "JUNK FAXES" mean any and all DOCUMENTS or

9  materials sent or transmitted via facsimile transmission, from April 4, 2013, through

10 the date You respond to these interrogatories that: (1) are identical or similar to the

11 CRAFTWOOD FAXES; (2) discuss, describe, promote products or services offered

12 by Wurth Louis & Company or under any Wurth Louis & Company brand; (3)

13 discuss, describe, promote any website of Wurth Louis & Company or any Wurth

14 Louis & Company brand; or (4) include any combination of the foregoing.

15     7.    "OPT-OUT NOTICE" means the notice that contains language

16 advising or informing recipients of any ability or opportunity to request not to be

17 sent additional or further faxes or advertisements, as more particularly set forth at 47

18 U.S.C. § 227(b)(2)(D) and at 47 C.F.R. § 64.1200(a)(4)(iii).

19     8.    "PERSON" or "PERSONS" means and includes a natural person, trust,

20 partnership, joint venture, corporation, any government or governmental body,

21 commission, board or agency, other form of legal entity, or any of the foregoing, but

22 excepting Defendant.

23     9.    "PLAINTIFF" means Craftwood II, Inc.

24     10.   "PRIOR EXPRESS INVITATION OR PERMISSION" or "PEP" has

25 the same meaning as used in 47 U.S.C. § 227(a)(5).

26     11.   "SENDER" or "SENDERS" means any person or entity as defined in

27 47 C.F.R. § 64.1200(f)(10).

28

PAYNE & FEARS LLP
ATTORNEYS AT LAW
1100 GLENDON AVENUE, SUITE 1250
LOS ANGELES, CALIFORNIA 90024
(310) 689-1750

1    12.    "TCPA" means the Telephone Consumer Protection Act, as amended

2  by the Junk Fax Protection Act, 47 U.S.C. § 227, and any and all regulations or

3  orders promulgated thereunder by the Federal Communications Commission.

4                    **<u>DOCUMENTS TO BE PRODUCED</u>**

5       **1.    Fax Telephone Number Lists**

6       1.1    All DOCUMENTS that describe, discuss, record or comprise the

7  purchase, rental or other acquisition of telephone numbers to which you sent or

8  attempted to send JUNK FAXES.

9       1.2    All DOCUMENTS that describe, discuss, record or comprise the list or

10 lists used to send the JUNK FAXES

11      1.3    All DOCUMENTS that describe, discuss, record, or explain how the

12 lists or lists used to send the JUNK FAXES were created.

13      1.4    All hard drives, servers or electronic media upon which any list or lists

14 used to send the JUNK FAXES are currently stored.

15      1.5    All hard drives, servers or electronic media upon which any list or lists

16 used to send the JUNK FAXES were previously stored.

17      1.6    All DOCUMENTS that describe, discuss, record, or explain how

18 WURTH obtained the fax numbers used to send the JUNK FAXES.

19      **2.    The Junk Faxes**

20      2.1    All JUNK FAXES.

21      2.2    All DOCUMENTS that describe, discuss, record or constitute all

22 communications about the sending of advertisements, promotional materials or

23 marketing materials via facsimile transmission, including, but not limited to, the

24 JUNK FAXES.

25      2.3    Separately for each JUNK FAX, DOCUMENTS sufficient to identify

26 each SENDER of the JUNK FAXES.

27      2.4    All versions and drafts of any OPT-OUT NOTICE used on JUNK

28 FAXES.

PAYNE & FEARS LLP
ATTORNEYS AT LAW
1100 GLENDON AVENUE, SUITE 1250
LOS ANGELES, CALIFORNIA 90024
(310) 689-1750

2.5     All communications about the inclusion or potential inclusion of OPT-OUT NOTICES on JUNK FAXES.

**3.     Fax Broadcasting**

3.1     All contracts or agreements with any FAX BROADCASTER that concern, in whole or in part, transmission of JUNK FAXES.

3.2     All communications with a FAX BROADCASTER that discuss, in whole or in part, transmission of JUNK FAXES, the TCPA, or this action.

3.3     All manuals, instructions or directions (including, without limitation, for any software, applications or web interface) used to send JUNK FAXES.

3.4     Separately for each JUNK FAX, all DOCUMENTS, including electronically stored data, that record or memorialize a facsimile transmission.

3.5     Separately for each JUNK FAX, all reports or other DOCUMENTS, including electronically stored data, that discuss the results of the sending or attempted sending of the JUNK FAX.

3.6     All DOCUMENTS that describe, discuss, record or memorialize the number or approximate or estimated number of (a) attempted or intended transmissions of a JUNK FAX, (b) unsuccessful transmissions of a JUNK FAX, or (c) successful transmissions of a JUNK FAX.

3.7     All invoices or billings from a FAX BROADCASTER for sending or attempted sending of a JUNK FAX.

**4.     Complaints/Litigation**

4.1     The complete file relating to or pertaining to any lawsuit or administrative proceeding (other than this action) that concerns, in whole or in part, YOUR sending of JUNK FAXES, including, but not limited to, all DOCUMENTS filed in any such lawsuit or administrative proceeding, all discovery and discovery responses and deposition transcripts.

4.2     All DOCUMENTS that describe, discuss or constitute complaints or objections by any PERSON (including any governmental office or agency)

PAYNE & FEARS LLP
ATTORNEYS AT LAW
1100 GLENDON AVENUE, SUITE 1250
LOS ANGELES, CALIFORNIA 90024
(310) 689-1750

1  concerning a JUNK FAX or claimed unsolicited facsimile transmissions sent by or

2  on YOUR behalf.

3      4.3    All DOCUMENTS that describe, discuss or constitute any or all

4  communications regarding complaints or objections from any PERSON (including

5  any governmental office or agency) concerning a JUNK FAX or claimed unsolicited

6  facsimile transmissions sent by or on YOUR behalf.

7  **5.    Documents Regarding the TCPA**

8      5.1    All DOCUMENTS that discuss the TCPA or laws against unsolicited

9  facsimile advertising that were created or received by YOU.

10     5.2    All DOCUMENTS that describe, discuss or constitute all

11 communications about the TCPA sent or received by YOU.

12     5.3    All DOCUMENTS that describe, discuss or constitute all

13 communications concerning prohibitions against unsolicited faxing sent or received

14 by YOU.

15 **6.    Communications Regarding This Lawsuit**

16     6.1    All DOCUMENTS that describe, discuss or constitute all

17 communications concerning the this action with any insurer, indemnitor or other

18 party that may be liable to satisfy all or part of a potential judgment in this action or

19 to indemnify or reimburse for payments made to satisfy the judgment.

20     6.2    All DOCUMENTS that describe, discuss or constitute all

21 communications concerning this action with any third party, including, but not

22 limited to, putative class members.

23     6.3    All written statements, recorded statements, declarations, or affidavits

24 of or by any PERSON concerning the issues, claims or defenses of this action and

25 drafts thereof.

26     6.4    All DOCUMENTS that describe, discuss or constitute all

27 communications about any written statements, recorded statements, declarations, or

28 affidavits of or by any PERSON concerning the issues, claims or defenses of this

PAYNE & FEARS LLP
ATTORNEYS AT LAW
1100 GLENDON AVENUE, SUITE 1250
LOS ANGELES, CALIFORNIA 90024
(310) 689-1750

1  lawsuit.

2  **7.  Prior Express Invitation or Permission**

3  7.1  All DOCUMENTS that describe, discuss, or constitute obtaining

4  PRIOR EXPRESS INVITATION OR PERMISSION from any PERSON (including

5  PLAINTIFF) to whom the JUNK FAXES were sent or attempted to be sent.

6  7.2  All DOCUMENTS that refer to, record or constitute all

7  communications by which PRIOR EXPRESS INVITATION OR PERMISSION

8  was given by any PERSON (including PLAINTIFF) to whom the JUNK FAXES

9  were sent or attempted to be sent.

10  7.3  All DOCUMENTS that comprise any and all communications

11  regarding or pertaining to the use of any PRIOR EXPRESS INVITATION OR

12  PERMISSION as a basis for sending, or attempting to send, the JUNK FAXES.

13  **8.  Established Business Relationship**

14  8.1  All DOCUMENTS that describe, record or constitute the creation,

15  formation or commencement of any ESTABLISHED BUSINESS RELATIONSHIP

16  between YOU and any PERSON (including PLAINTIFF) to whom the JUNK

17  FAXES were sent or attempted to be sent.

18  8.2  All DOCUMENTS that comprise any and all communications

19  regarding or pertaining to the use of an ESTABLISHED BUSINESS

20  RELATIONSHIP as a basis for sending, or attempting to send, the JUNK FAXES.

21  **9.  Plaintiff**

22  9.1  All DOCUMENTS that discuss or record communications between

23  YOU and PLAINTIFF.

24  9.2  All records of purchases made by PLAINTIFF.

25  **10.  Documents re: Interrogatory and RFA Responses**

26  10.1  All DOCUMENTS referenced in YOUR responses to the First Set of

27  Interrogatories propounded to YOU.

28  10.2  All DOCUMENTS used or referenced in YOUR response to First Set

PAYNE & FEARS LLP
ATTORNEYS AT LAW
1100 GLENDON AVENUE, SUITE 1250
LOS ANGELES, CALIFORNIA 90024
(310) 689-1750

1  of Requests for Admission propounded to YOU.

2

3  DATED: September 28, 2017        PAYNE & FEARS LLP

4

5

6  By: _____ /s/ Scott O. Luskin
                        SCOTT O. LUSKIN

7

8  Attorneys for Craftwood II, Inc.,
   individually and as representative of all
9  others similarly situated

10  4841-7430-1775.1

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PAYNE & FEARS LLP
ATTORNEYS AT LAW
1100 GLENDON AVENUE, SUITE 1250
LOS ANGELES, CALIFORNIA 90024
(310) 689-1750

1

## **PROOF OF SERVICE**

2

**Craftwood II v Wurth Louis & Company**
**United States District Court, Central District of California, Southern Division**
**8:17-cv-00606 (DOC) (KES)**

3

4

**STATE OF CALIFORNIA, COUNTY OF ORANGE**

5

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Orange, State of California. My business address is 4 Park Plaza, Suite 1100, Irvine, CA 92614.

6

7

On September 28, 2017, I served true copies of the following document(s) described as **Plaintiff Craftwood II, Inc.'s First Set of Requests for Production of Documents and Electronically Stored Information to Defendant Wurth Louis & Company** on the interested parties in this action as follows:

8

9

Livia M. Kiser                          Attorneys for Defendant
lkiser@sidley.com                  Wurth Louis and Company
Courtney A. Hoffmann
choffmann@sidley.com
Raechel Bimmerle
rbimmerle@sidley.com
Tom Kayes
tkayes@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Tel: (312) 853-7000
Fax: (312) 853-7036

10

11

12

13

14

15

16

Michael L. Mallow                  Attorneys for Defendant
mmallow@sidley.com             Wurth Louis and Company
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, California 90013
Tel.: (213) 896-6666
Fax: (213) 896-6600

17

18

19

20

**BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Payne & Fears LLP's practice for collecting and processing correspondence for mailing. On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

21

22

23

24

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

25

26

Executed on September 28, 2017, at Irvine, California.

27

28

_Janet Jackson_
Janet Jackson

PAYNE & FEARS LLP
ATTORNEYS AT LAW
1100 GLENDON AVENUE, SUITE 1250
LOS ANGELES, CALIFORNIA 90024
(310) 889-1750

# Exhibit B

**From:** Kayes, Tom
**Sent:** Thursday, October 26, 2017 1:56 PM
**To:** Luskin, Scott O. <SOL@paynefears.com>; Cordero, Darryl <cdc@paynefears.com>
**Cc:** Kiser, Liv <lkiser@sidley.com>; Perez, Alexa K. <alexa.perez@sidley.com>
**Subject:** Craftwood - Responses to Bay Hardware's First Interrogatories

Scott-

Attached are Wurth's responses to Bay Hardware's first set of interrogatories. We believe the set includes more than the 25 interrogatories permissible under the federal rules and our research led us to the conclusion that, to preserve an objection based on that numerical limit, we have to object across the board. The responses explain in more detail. On concluding we couldn't answer some questions without risking waiver of our objection, we decided to serve these before the 30-day response deadline elapsed.

Let me know if you have any questions,

**TOM KAYES**
Associate

**SIDLEY AUSTIN LLP**
One South Dearborn
Chicago, IL 60603
+1 312 853 3293
tkayes@sidley.com
www.sidley.com

# Exhibit C



4 Park Plaza, Suite 1100
Irvine, CA 92614
T 949. 851.1100
F 949. 851.1212

Leilani E. Livingston
(949) 797-1217
LLJ@paynefears.com

File No.: 4431.007

November 10, 2017

*VIA E-MAIL AND U.S. MAIL*

Livia M. Kiser
lkiser@sidley.com
Tom Kayes
tkayes@sidley.com
Sidley Austin LLP
One South Dearborn
Chicago, IL 60603

Re:   *Craftwood II v. Wurth Louis & Company*

Dear Livia and Tom:

I work with Scott Luskin and Darryl Cordero on the above matter.  I am writing to meet and confer about Wurth Louis & Company's responses to Craftwood II's First Set of Interrogatories.

**Interrogatory 15**

Wurth objected to Interrogatory No. 15 on the ground that it contains impermissible subparts.  Craftwood agrees to withdraw this interrogatory.

**Objections Based on Interrogatory Subparts**

Wurth objected to Interrogatories 1-14 on the basis that they contained impermissible subparts.  Plaintiff disagrees with this position for a few reasons.

First, interrogatories do not have subparts by virtue alone of asking for various pieces of info for a particular set of individuals (name, address, job title, etc.).  Only questions seeking information about *separate subjects* count as several interrogatories (e.g., "Were you ever discharged from any employment for incompetency or did you ever sue a former employer for any reason?").  *See Collaboration Properties, Inc. v. Polycom, Inc.*, 224 F.R.D. 473, 475 (N.D. Cal. 2004).  Plaintiff's interrogatories do not solicit questions about separate subjects, but rather pieces of information all relating to the same subject: the junk faxes.  For example, Interrogatory 2 asks for the identity of persons who "created" promotional campaigns and who "decided to proceed" with those campaigns. This does not constitute two questions.  Activities related to the promotional campaign all concern the campaign – they are not standalone.  Defendant's decisions about creating



# PAYNE & FEARS

Livia M. Kiser
November 10, 2017
Page 2

that campaign or proceeding with that campaign are not lines of inquiry "that [are] separate and distinct from the inquiry made by the portion of the interrogatory that precedes it." *Willingham v. Ashcroft*, 226 F.R.D. 57, 59 (D.D.C. 2005). As one district court explained: "Probably the best test of whether subsequent questions, within a single interrogatory, are subsumed and related, is to examine whether the first question is primary and subsequent questions are secondary to the primary question." *Kendall v. GES Exposition Services, Inc.*, 174 F.R.D. 684, 685 (D. Nev. 1997).

Second, a question about a category of communications does not contain subparts because there may have been multiple communications. For that reason, Interrogatory 8 (and the other requesting pieces of information about the faxes) is entirely permissible. Interrogatory 8 requests the identify of each person whom Wurth contends gave prior express permission to be sent faxes. All the faxes represent communications from Wurth, at different times. But "a question asking about communications of a particular type should be treated as a single interrogatory even though it requests that the time, place, persons present, and contents be stated separately for each such communication." *See Sterk Midden Nederland B.V. v. ASAP Installations, LLC*, 2010 WL 11507297, at *2 (M.D. Fla. Nov. 5, 2010). In any event, Wurth's list of individuals who it contends gave prior express permission is not necessarily fax-determinative; this weighs against Wurth's position that each question has subparts because it incorporates multiple faxes.

Similarly, your other objections on this ground fail. For example, an interrogatory asking Wurth to describe its process for using fax lists (Interrogatory 5) or listing persons with knowledge of PEP (Interrogatory 9, 10) is also permissible. Again, "an interrogatory containing subparts directed at eliciting details concerning a 'common theme' should generally be considered a single question." *Swackhammer v. Sprint Corp. PCS*, 225 F.R.D. 658, 664 (D. Kan. 2004).

**Other Objections**

Wurth also included other objections based on burden (Interrogatory 5, 6, 11, 12), prematurity (Interrogatory 8, 9, 10, 11, 12), and vagueness (Interrogatory 13). Plaintiff disagrees that these objections are legitimate or create any bar to discovery. Further, Wurth's objection based on and relevance per the Federal Rules of Evidence (Interrogatory 14) is easily dismissed; the Federal Rules of Civil Procedure are clear that "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." *See* Fed. R. Civ. P. 26(b)(1).

Wurth also included an objection to each interrogatory based on the definition of "junk fax." Wurth argues that "junk fax" is vague because it seeks documents "similar to the Craftwood Faxes," but Wurth does not give an explanation beyond that. Finally, Wurth's

P & F

# PAYNE & FEARS

Livia M. Kiser
November 10, 2017
Page 3

contention that "junk fax" is pejorative, prejudicial, and objectionable does not prevent it from providing complete responses to these interrogatories; it is a common term in all the relevant case law.  Nonetheless, Plaintiff is prepared to discuss this objection with Wurth during a meet and confer conference.

On these bases, Plaintiff requests amended responses to Interrogatories 1-14.  Pursuant to Local Rule 37-1, please let us know when you are available to have a conference regarding these issues next week.  We are generally available to discuss on Wednesday, November 15 anytime, Thursday, November 16 in the afternoon, or Friday, November 17 in the morning.

Very truly yours,

Leilani E. Livingston
PAYNE & FEARS LLP

LLJ/LEL
cc:    Scott O. Luskin

2017-11-10 M&C Ltr to Wurth re ROGs 4818-3518-0884 v.1.docx

P & F

# Exhibit D

| **From:** | Kayes, Tom </o=Sidley & Austin/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=Kayes, Tomead> |
| **Sent:** | Thursday, December 21, 2017 2:46 PM |
| **To:** | Luskin, Scott O. <SOL@paynefears.com>; Cordero, Darryl <cdc@paynefears.com>; Jones, Leilani L. <LLJ@paynefears.com> |
| **Cc:** | Perez, Alexa K. <alexa.perez@sidley.com>; Mallow, Michael <mmallow@sidley.com>; Kiser, Liv <lkiser@sidley.com> |
| **Subject:** | Craftwood v. Wurth - ESI Update |

Scott,

I want to give you an update on our ESI production efforts. We received a collection file from our client that, after several attempts, we were unable to open. The file was supposed to contain an export of potentially responsive emails and other files from the Wurth Louis and Company system. Our IT team believe the file was somehow corrupted. I spoke with the client's IT manager this morning and he believes that he needs to update the company's email software to produce a working export file. He believes he can have the update done and the new file to me by middle of next week. Once we have the new file we will review, and produce the responsive information.

Thanks,

**TOM KAYES**
Associate

**SIDLEY AUSTIN LLP**
One South Dearborn
Chicago, IL 60603
+1 312 853 3293
tkayes@sidley.com
www.sidley.com

# Exhibit E



4 Park Plaza, Suite 1100
Irvine, CA 92614
T 949. 851.1100
F 949. 851.1212

Leilani E. Livingston
(949) 797-1217
LLJ@paynefears.com

File No.: 4431.007

December 27, 2017

***VIA ELECTRONIC MAIL ONLY***

Tom Kayes
Liv Kiser
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603

Re:     *Craftwood II v. Wurth*

Dear Tom:

This letter follows up on our discovery conference last week regarding issues with Wurth's responses to our discovery.  I know you sent a letter regarding Craftwood II's responses already, and we will separately respond to that.

**Document Demands**

*Redacted Information*

We discussed the parties' positions on the need for this information.  We again directed you to our letter and cases in the Ninth Circuit ordering pre-certification discovery of class members' information and identity.  This information is relevant to numerosity, ascertainability, commonality, typicality, and superiority.  It also provides information for particular witnesses and is relevant to defenses (which Michael confirmed when discussing your potential PEP defense and our need to know the identity of those it applied to).

You pointed to *Oppenheimer* as supposed authority for your refusal to identify the class members before class certification.  Upon review, that case doesn't stand for the proposition at all.  *Oppenheimer* dealt with identification for purposes of class notice and who would pay for such notice, not discovery necessary for class certification and other issues.  The cases we cited deal directly with the issues raised, and you have provided no authority refuting them.

We agreed to briefly table the issue to see the documents actually produced and redacted.  Those documents *should* be produced by January 4.  It has been nine months since this case was filed, and we have received almost no documents from Wurth.  You initially agreed to produce documents in December, but only 150 pages have been transmitted.  This is unacceptable, despite Wurth's excuses of technical issues and



Tom Kayes
December 27, 2017
Page 2

otherwise.  It is even worse that we do not have any fax lists or transmission logs yet, since these are key documents and prior counsel told us that they had been collected before the originally scheduled mediation.

For clarity, we intend to move to compel to obtain unredacted documents.  We are waiting only to see whether you will relent on the issue, and also to determine the universe of documents that you decided to redact.

*Junk Fax Objection*

We explained our position that we are entitled to information and documents for faxes like those sent to Craftwood II during the class period.  These include fax blasts Craftwood II was included on and those it was not.  We are not, however, looking for every fax ever sent by Wurth.  For example, we don't want faxed invoices, which are completely different than the ads attached to the Complaint.  You agreed to take this under advisement.  Please let us know by December 29 whether you will comply.

*Customers v. Not*

We requested information about whether faxes were sent only to customers.  You stated that you can confirm the faxes were sent only to customers because, to be set up in Wurth's database, the recipient would have needed to fill out a credit form.  Please let us know if we've mistaken this explanation.

*Specific Demands*

Request 1.4 1.5:  We agreed to wait and see if the production satisfies our needs.

Request No. 2.2:  We reiterated the points in our letter and mentioned that Wurth's objections that it is duplicative were incorrect.  You requested that we should wait to see what is produced before proceeding further on this demand.  Please produce all responsive documents by January 4 so we can evaluate.

Request No. 6.1:  You agreed to supplement to identify that there are no responsive documents.

We reserve rights on all demands until we receive an actual production.

Tom Kayes
December 27, 2017
Page 3

*Privilege Log*

You stated that there were no documents or almost no documents that needed to be logged in accordance with the parties' Rule 26(f) agreement.  To the extent there are documents, please log them by January 4.

*Other Objections*

We raised several issues with Wurth's objections in our December 5 letter.  We did not specifically discuss them on the call, but please let us know if Wurth will withdraw them by January 4.  Also, to the extent Wurth is refusing to produce documents based on any of these objections or limiting its production in any way based on the objections, please let us know so that we can have the Magistrate decide the issue.

**Requests for Admission**

We discussed the issues raised in our December 5 letter.  It appears that Wurth intends to stand on its objections and responses.  Please confirm by December 29, so that we can move to compel.

**Interrogatories**

You stated that the responses, which were promised December 11, have been drafted and were merely awaiting approval.  Please provide responses by December 29.

**Protective Order**

You sent a draft December 13, and we provided comments on December 26.  Please let us know if it can be filed.  Regardless, as discussed months ago when you first mentioned a protective order, Craftwood II is willing to treat designations subject to the protective order before it is entered.  There is no reason to delay production on this ground.

Thank you for your time and attention to these issues.  We appreciate timely responses.

Tom Kayes
December 27, 2017
Page 4


Very truly yours,

Leilani E. Livingston
PAYNE & FEARS LLP

LLJ/LEL
cc:     Scott O. Luskin
        C. Darryl Cordero
        Michael Mallow
        Alexa K. Perez

# Exhibit F

**TCPA Class Actions filed by Payne & Fears LLP**
**on behalf of Craftwood Stores**

| Caption | Lead Counsel | Case No. | Court |
|---|---|---|---|
| *Craftwood Lumber Company v. Interline Brands, Inc.* | C. Darryl Cordero, Payne & Fears | 1:11-cv-4462 | N.D. Ill. |
| *Craftwood II, Inc. v. Tomy International, Inc. et al* | C. Darryl Cordero, Payne & Fears | 3:12-cv-2250 | S.D. Cal. (removed) |
| *Craftwood II, Inc. v. Tomy International, Inc.* | C. Darryl Cordero, Payne & Fears | 8:12-cv-1710 | C.D. Cal. |
| *Craftwood Lumber Company v. Seaboard International Forest Products* | C. Darryl Cordero, Payne & Fears | 1:13-cv-7433 | N.D. Ill. |
| *Craftwood Lumber Company v. Senco Brands, Inc.* | C. Darryl Cordero, Payne & Fears | 1:14-cv-6866 | N.D. Ill. |
| *Craftwood Lumber Company v. CMT (USA), Inc.* | C. Darryl Cordero, Payne & Fears | 1:14-cv-6864 | N.D. Ill. |
| *Craftwood Lumber Company v. Auburn Armature, Inc.* | C. Darryl Cordero, Payne & Fears | 1:14-cv-6868 | N.D. Ill. |
| *Craftwood II, Inc. v. United Stationers Inc.* | C. Darryl Cordero, Payne & Fears | 8:15-cv-704 | C.D. Cal. |
| *Craftwood Lumber Company v. B.E. Atlas Company, Inc.* | C. Darryl Cordero, Payne & Fears | 1:16-cv-7865 | N.D. Ill. |
| *Craftwood Lumber Company v. Essendant, Inc. et al* | C. Darryl Cordero, Payne & Fears | 1:16-cv-4321 | N.D. Ill. |
| *Alpha Tech Pet, Inc. v. Lagasse, LLC (Craftwood participating as a Third Party Plaintiff)* | C. Darryl Cordero, Payne & Fears | 1:16-cv-513 | N.D. Ill. |
| *Craftwood II, Inc. v. Generac Power Systems* | C. Darryl Cordero, Payne & Fears | 1:17-cv-4105 | N.D. Ill. |
| *Craftwood II, Inc. v. Horizon Global Corporation* | C. Darryl Cordero, Payne & Fears | 1:17-cv-4129 | N.D. Ill. |
| *Craftwood Lumber Co. v. Hardware Resources Inc.* | C. Darryl Cordero, Payne & Fears | 16 CH 1353 | Cir. Court of Lake County, IL |