1   C. Darryl Cordero, Bar No. 126689
    cdc@paynefears.com
2   Scott O. Luskin, Bar No. 238082
    sol@paynefears.com
3   Leilani E. Livingston, Bar No. 298896
    llj@paynefears.com
4   PAYNE & FEARS LLP
    1100 Glendon Avenue, Suite 1250
5   Los Angeles, California 90024
    Telephone: (310) 689-1750
6   Facsimile: (310) 689-1755

7   Attorneys for Plaintiff Craftwood II, Inc.,
    dba Bay Hardware, individually and as
8   representative of all others similarly situated

9

10              UNITED STATES DISTRICT COURT

11      CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

12  | Craftwood II, Inc., *et al.*, | Case No. 8:17-cv-00606 (DOC) (KES) |
13  |            Plaintiff, | Hon. David O. Carter |
14  |            v. | **Plaintiff Craftwood II, Inc.'s Reply Brief in Support of Its Motion to** |
15  | Wurth Louis & Company, *et al.*, | **Compel Supplemental Responses to Interrogatories, Requests for** |
16  |            Defendant. | **Production, and Supplemental Documents** |

17

18

19

20

21

22

23

24

25

26

27

28

PAYNE & FEARS LLP
ATTORNEYS AT LAW
1100 GLENDON AVENUE, SUITE 1250
LOS ANGELES, CALIFORNIA 90024
(310) 689-1750

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

Introduction.................................................................................................... 1

Argument ......................................................................................................... 2

A.    Wurth Must Immediately Serve Further Supplemental Responses to the Interrogatory Nos. 1-14................................................ 2

B.    Wurth Must Immediately Serve Supplemental Responses to Plaintiff's Document Requests and Produce All Responsive Documents and ESI, Without Redaction, and Provide a Privilege Log ......................................................................................... 5

C.    None of Wurth's Many and Evolving Excuses for Refusing to Comply with Craftwood II's Discovery Has Merit ...................... 8

   1.    The Discovery Is Not Limited to Either "Similarly-Situated" Wurth Customers or the Same Faxes that Craftwood II Received ............................................. 8

      a.    Discovery Is Not Limited to "Similarly Situated Customers...…....................................11

      b.    Discovery Is Not Limited to The Same Faxes Craftwood II Received ........................ 11

   2.    Wurth's Discussion of the "Proper Bounds of Class Discovery" Is Misleading and Wrong ...................... 13

   3.    Craftwood II Is Entitled to Wurth's Customer and Other Information in Complete, Unredacted Form ............................. 15

   4.    Craftwood II's Discovery Is Proportional to the Needs of the Case........................................................ 19

D.    Craftwood II Is Entitled to Monetary Sanctions for Wurth's Repeated Discovery Abuses................................................ 20

Conclusion ......................................................................................... 22

PAYNE & FEARS LLP
ATTORNEYS AT LAW
1100 GLENDON AVENUE, SUITE 1250
LOS ANGELES, CALIFORNIA 90024
(310) 689-1750

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*American Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.*,
  757 F.3d 540 (6th Cir. 2014) ................................................................. 11

*CE Design Ltd. v. King Architectural Metals, Inc.*,
  271 F.R.D. 595 (N.D. Ill. 2010), *vacated and remanded on other
  grounds,* 637 F.3d 721 (7th Cir. 2011) ............................................. 11

*City Select Auto Sales, Inc. v. David Randall Assoc., Inc.*,
  296 F.R.D. 299 (D. N.J. 2013) ............................................................ 11

*Crabtree v. Hayden, Stone Inc.*,
  43 F.R.D. 281 (S.D.N.Y. 1967) ........................................................... 13

*Craftwood II, Inc. v. Wurth Louis & Co.*,
  No. SACV 17-0606-DOC (KES), 2017 WL 4286605 (C.D. Cal.
  Sept. 20, 2017)..................................................................................... 10

*Craftwood Lumber Co. v. Interline Brands, Inc.*,
  No. 11 C 4462, 2013 WL 4598490 (N.D. Ill. Aug. 29, 2013) .......... 18

*DeBoer v. Mellon Mortg. Co.*,
  64 F.3d 1171 (8th Cir. 1995) ............................................................... 13

*Donnelly v. NCO Financial Sys., Inc.*,
  263 F.R.D. 500 (N.D. Ill. 2009) .......................................................... 20

*G.M. Sign, Inc. v. Finish Thompson, Inc.*,
  No. 07 C 5953...................................................................................... 18

*G.M. Sign, Inc. v. Group C Commc'ns, Inc.*,
  No. 08-cv-4521, 2010 WL 744262 (N.D. Ill. Feb. 25, 2010) ...... 11, 12

*Holak v. K Mart Corp.*,
  No. 1:12-CV-00304-AWI-MJS, 2014 WL 4930762 (E.D. Cal. Sept.
  30, 2014)......................................................................................... 13, 14

PAYNE & FEARS LLP
ATTORNEYS AT LAW
1100 GLENDON AVENUE, SUITE 1250
LOS ANGELES, CALIFORNIA 90024
(310) 689-1750

*Inland Concrete Enterprises, Inc. v. Kraft Americas LP*,
  No. CV 10-1776-VBF (OPX), 2011 WL 13209238 (C.D. Cal. Jan.
  7, 2011) ............................................................................................. 21

*Ira Holtzman, C.P.A. v. Turza*,
  728 F.3d 682 (7th Cir. 2013) .................................................. 11, 12, 13

*Karen S. Little, L.L.C. v. Drury Inns, Inc.*,
  306 S.W.3d 577 (Mo. Ct. App. 2010) ................................................ 11

*Lozano v. AT&T Wireless Services, Inc.*,
  504 F.3d 718 (9th Cir. 2007) ............................................................. 12

*McEwan v. OSP Group, L.P.*,
  Case No. 14-cv-2823-BEN, 2016 WL 1241530 (S.D. Cal. March
  30, 2016) ............................................................................................ 16

*Michel v. WM Healthcare Solutions, Inc.*,
  No. 1:10-CV-638, 2014 WL 497031 (S.D. Ohio Feb. 7, 2014) ........... 18

*Olney v. Job.com, Inc.*,
  No. 1:12-CV-01724-LJO-SKO, 2013 WL 5476813 (E.D. Cal. Sept.
  30, 2003) ............................................................................................ 12

*Penzer v. MSI Mktg., Inc.*,
  No. 01-30868 CA 32, 2003 WL 25548019 (Fla. Cir. Ct. Apr. 2,
  2003) ................................................................................................... 11

*Peters v. Credit Protection Ass'n, LP*,
  No. 2:13-cv-767, 2014 WL 6687146 (S.D. Ohio Nov. 26, 2014) ....... 16

*Practice Mgmt. Support Servs., Inc. v. Cirque du Soleil, Inc.*,
  No. 14 C 2032, 2018 WL 1255021 (N.D. Ill. Mar. 12, 2018) ............ 12

*Sadowski v. Med1 Online, LLC*,
  No. 07 C 2973, 2008 WL 2224892 (N.D. Ill. May 27, 2008) ............ 18

*Spine and Sports Chiropractic, Inc. v. Zirmed, Inc.*,
  No. 3:13-CV-00489-TBR, 2014 WL 2946421 (W.D. Ky. June 30,
  2014) ................................................................................................... 11

*Stemple v. QC Holdings, Inc.*,
  No. 12-cv-1997-CAB, 2013 WL 10870906 (S.D. Cal. June 17,
  2013) ................................................................................................... 16

PAYNE & FEARS LLP
ATTORNEYS AT LAW
1100 GLENDON AVENUE, SUITE 1250
LOS ANGELES, CALIFORNIA 90024
(310) 689-1750

*Thrasher v. CMRE Fin. Servs., Inc.*,
  Case No. 14-cv-1540-BEN, 2015 WL 1138469 (S.D. Cal. Mar. 13,
  2015) ................................................................................................................ 16

*True Health Chiropractic, Inc. v. McKesseon Corp.*,
  No. 13-cv-02219, 2015 WL 1502953 (N.D. Cal. Apr. 1, 2015) ................... 16, 17

*Wahl v. American Sec. Ins. Co.*,
  No. C 08-00555 RS, 2009 WL 3463211 (N.D. Cal. Oct. 23, 2009) ................... 14

*Webb v. Healthcare Revenue Recovery Group LLC*,
  Case No. C. 13-00737 RS, 2014 WL 325132 (N.D. Cal. Jan. 29,
  2014) ................................................................................................................ 16

*Whiteamire Clinic, P.A., Inc. v. Quill Corp.*,
  No. 12 C 5490, 2013 WL 5348377 (N.D. Ill. Sept. 24, 2013) ............................. 18

**Other Authorities**

Fed. R. Civ. Proc. 23 .......................................................................... 9, 10, 11, 12, 13

Fed. R. Civ. Proc. 26 ........................................................................................... 5, 19

Fed. R. Civ. Proc. 33(b)(1)(B), (3), (5) ................................................................... 3

PAYNE & FEARS LLP
ATTORNEYS AT LAW
1100 GLENDON AVENUE, SUITE 1250
LOS ANGELES, CALIFORNIA 90024
(310) 689-1750

### Introduction

Defendant Wurth Louis and Company has refused to provide complete responses to Plaintiff Craftwood II's special interrogatories or produce the documents and ESI that are responsive to Plaintiff's document requests that were served *seven months ago*.  Wurth has refused to provide proper discovery responses despite that Plaintiff's discovery seeks information and documents that are indisputably relevant in this TCPA class action, in which Plaintiff seeks to recover damages for and enjoin repeated junk faxing of advertisements by Wurth.  (ECF 1 ¶ 2.)

Wurth initially responded to the interrogatories by refusing to give any answers, and instead provided only objections.  Its initial document production consisted of a mere 150 pages.  Wurth produced no faxes, reports, logs or communications or other responsive documents.  Craftwood II then engaged in an extensive effort to resolve this dispute informally over the course of four months (beginning in November), before filing this motion.  Plaintiff used that time to engage in foot-dragging to avoid providing proper responses.  Despite representing that it expected to produce responsive ESI and supplemental interrogatory responses by late December, Wurth instead first notified Plaintiff of a claimed conflict on January 17 and demanded that Plaintiff's counsel withdraw from the case.  It later made clear that it would not proceed with discovery given the supposed conflict.

In denying the motion to disqualify Craftwood II's counsel, the Court at the April 9 hearing found that "the circumstances of the alleged conflict do suggest that the *motion [to disqualify] was filed for tactical reasons and to delay and obstruct discovery*."  (Luskin Supp. Decl. Exh. E at 28, emphasis added.)  The Court at the same hearing cautioned the parties to "better get ready for litigation in nano seconds", ordered the parties to get discovery "done" by the June 4 discovery cutoff, ordered the appointment of a special master for discovery, and ordered Wurth to get discovery to Plaintiff "very quickly."  (*Id.*, Exh. E at 29-30.)

PAYNE & FEARS LLP
ATTORNEYS AT LAW
1100 GLENDON AVENUE, SUITE 1250
LOS ANGELES, CALIFORNIA 90024
(310) 689-1750

-1-

But that is not what Wurth has done since the April 9 hearing.  Defendant has instead provided incomplete and evasive supplemental responses to the interrogatories and an additional production of a mere 1,604 pages that are almost all heavily redacted.  Wurth continues to offer a litany of meritless objections and excuses for not complying.

Defendant's consistent stonewalling appears to be based on its recognition of the potentially massive statutory damages in this case of approximately $350 million (without trebling) given the apparent size of Wurth's illegal junk fax program. (Luskin Supp. Decl. ¶¶ 3-5.)  Whatever Wurth's reasoning for refusing to comply with straightforward and clearly relevant discovery, it is inexcusable.  The requested sanctions are entirely appropriate.

The Court should grant the motion to compel in its entirety.

## Argument

**A.    Wurth Must Immediately Serve Further Supplemental Responses to the Interrogatory Nos. 1-14**

Wurth's initial responses to Craftwood II's interrogatories, which seek information directly relevant to the claims and defenses in this case, consisted of only objections and no answers.  Wurth provided supplemental responses a few days ago (on April 13), after this motion was filed.  But Defendant's supplemental responses are incomplete and evasive.

Among other things, the interrogatories ask for:

•       The identity of each person who participated in any decision to proceed with advertising campaigns involving a Junk Fax[1] (No. 1);

---

[1] The term "Junk Fax" is defined in part in the interrogatories as material sent via facsimile from April 4, 2013, through the date of Wurth's responses to the interrogatories that are identical or similar to the ten exhibits attached to the complaint.  During the parties' December 19 telephonic conference, Craftwood II clarified that it sought fax advertisements like those sent to Craftwood II during the class period, not every fax ever sent by Wurth.  (Luskin Decl., ¶ 17.)

PAYNE & FEARS LLP
ATTORNEYS AT LAW
1100 GLENDON AVENUE, SUITE 1250
LOS ANGELES, CALIFORNIA 90024
(310) 689-1750

• Separately for each Junk Fax the identity of each person who participated in the creation and sending of the Junk Fax and describe the nature of such participation (No. 4) and identify each sender (No. 7);

• Separately for each Junk Fax describe how and when the lists used to send the Junk Fax were compiled (No. 5) and how Wurth obtained the facsimile telephone numbers to which the Junk Faxes were sent or attempted to be sent (No. 6);

• Separately for each Junk Fax identify each person whom Wurth contends: (a) provided prior express invitation or permission (PEP) to be sent the Junk Fax (No. 8); (b) Wurth had an established business relationship (EBR) at the time the junk fax was sent or attempted to be sent (No. 11); and

• Describe the communications by which such person provided PEP (No. 9) and state the circumstances of how and when the EBR was commenced (No. 12).

Wurth's supplemental responses to the interrogatories are entirely improper because they are not verified under oath by Wurth. *See* FED. R. CIV. PROC. 33(b)(1)(B), (3), (5).  (Luskin Supp. Decl. ¶ 13, Exh. D.)

Even if Wurth's interrogatory responses were verified, most would still be improper because they fail to answer certain interrogatories and otherwise provide incomplete and evasive answers.  For example, the supplemental response to interrogatory No. 1 – which asks for the identify of each person involved in Wurth's Junk Fax campaigns – is incomplete because Wurth failed to include the name of someone who was obviously involved based on Wurth's supplemental document production.  That production includes emails from "Justin" (whose last name Wurth has improperly redacted) instructing someone (whose name has also been improperly redacted) to "send" fax advertisements to what appear to be thousands of businesses.  (Luskin Supp. Decl. ¶ 8.)  This is not a game where Plaintiff must search through documents to identify witnesses whose names should have been provided by Wurth in response to interrogatories.  Plaintiff obviously doesn't know

PAYNE & FEARS LLP
ATTORNEYS AT LAW
1100 GLENDON AVENUE, SUITE 1250
LOS ANGELES, CALIFORNIA 90024
(310) 689-1750

1    whether Wurth has failed to identify other witnesses.

2

3         The supplemental response to interrogatory 4, which asks that for each Junk

4    Fax Wurth identify each person who participated in the creation and sending of the

5    Junk Fax, only identifies persons involved in "the creation of informational pieces."

6    This doesn't identify any of the persons involved in the sending of the Junk Faxes,

7    and it's not clear whether "informational pieces" (which is not defined) is the same

8    as the term Junk Faxes.  The supplemental response to interrogatory 5 fails to state

9    for each Junk Fax how and when the lists used to send the Junk Faxes were

10   compiled.  Instead, Wurth provides an evasive response that references the response

11   to interrogatory 3 that provides a partial list of general criteria used by Wurth to

12   determine which of its customers to send "promotional information".

13        In response to interrogatory 8 that asks for each Junk Fax the identity of each

14   person whom Wurth contends provided PEP to the sent the fax, Wurth states that "it

15   believes that all of its customers who received promotional pieces via facsimile

16   consented to receive them."  The interrogatory does not ask about Wurth's "belief."

17   It asks for the identify of each person who provided PEP.  In response to

18   interrogatory 9 that asks Wurth, for each person it contends provided PEP, to

19   describe the communications by which such person provided PEP to be sent the

20   Junk Faxes, Wurth provides a general response about how its "customers" provide

21   "consent" by providing their fax numbers to Wurth, including by completing certain

22   forms.  This response is evasive and incomplete for several reasons, including that

23   "consent" is not at issue in a TCPA case; PEP is what the statute requires for that

24   defense.  The response also fails to identify any specific person who provided PEP,

25   and only refers to Wurth's "customers."  Also, although the response refers to

26   certain Wurth forms and credit applications that it contends were completed by its

27   customers and by which they provided consent to receive Junk Faxes, Wurth doesn't

28   identify any customers who actually completed the forms or did any of the other

PAYNE & FEARS LLP
ATTORNEYS AT LAW
1100 GLENDON AVENUE, SUITE 1250
LOS ANGELES, CALIFORNIA 90024
(310) 689-1750

-4-

1   things Wurth contends amount to consent.

2       Wurth must provide complete and verified responses to the interrogatories.

3   **B.**    **Wurth Must Immediately Serve Supplemental Responses to Plaintiff's**

4       **Document Requests and Produce All Responsive Documents and ESI,**

5       **Without Redaction, and Provide a Privilege Log**

6       Wurth still has not agreed in its responses to produce all responsive

7   documents, nor has it done so, and it has breached its latest promises in its

8   opposition to provide supplemental responses.  Wurth states in its opposition that by

9   April 13 it "will (1) supplement is responses to properly-limited requests for

10  documents . . . and, (4) prepare a privilege log if one is needed."[2]  (ECF 90 at 18.)

11  However, Wurth has not provided any supplemental responses to the document

12  requests or a privilege log, although it has made a further supplemental production

13  of documents that is incomplete.  Wurth stands by its many frivolous objections to

14  the document requests despite that Craftwood II's document requests seek

15  documents that are directly relevant to the claims and defenses in this case,

16  including the following documents, among others (Luskin Decl., ¶ 4, Exh. 3):

17      •    All documents that discuss or comprise the list or lists used to send the

18  Junk Faxes and how those lists were created (Nos. 1.2-1.3);

19      •    All documents that discuss or explain how Wurth obtained the fax

20  numbers used to send the Junk Faxes (No. 1.6);

21      •    All Junk Faxes (No. 2.1);

22

23  _____

24  [2]  Of course only Wurth knows whether a privileged log is "needed."  If one is not needed,
then Wurth should make clear that it is not withholding any responsive documents based

25  on any claimed privilege, or if a privilege log is needed, then Wurth should provide one
immediately.  Wurth has asserted privilege objections to document requests 4.1, 4.2, 4.3,

26  5.1, 5.2, 6.1. 6.3, 6.4 and 9.1.  (Luskin Decl., ¶ 7, Exh. 5.)  Wurth must either withdraw the
privilege objections from its responses or provide a proper privilege log.  The privilege log

27  must "describe the nature of the documents, communications, or tangible things not
produced or disclosed--and do so in a manner that, without revealing information itself

28  privileged or protected, will enable other parties to assess the claim."  Fed. R. Civ. Proc.
26(b)(5)(A)(ii).

PAYNE & FEARS LLP
ATTORNEYS AT LAW
1100 GLENDON AVENUE, SUITE 1250
LOS ANGELES, CALIFORNIA 90024
(310) 689-1750

PAYNE & FEARS LLP
ATTORNEYS AT LAW
1100 GLENDON AVENUE, SUITE 1250
LOS ANGELES, CALIFORNIA 90024
(310) 689-1750

1  • All documents that discuss or constitute all communications about the

2  sending of the Junk Faxes, among other things (No. 2.2);

3  • All contracts or agreements with any Fax Broadcaster (defined as

4  anyone, including WestFax, Inc., who participated in the sending of a Junk Fax) that

5  concern transmission of Junk Faxes (No. 3.1);

6  • Separately for each Junk Fax all reports or other documents that discuss

7  the results of the sending or attempted sending of the Junk Fax (No. 3.5);

8  • All documents that discuss or constitute all communications about the

9  TCPA sent or received by Wurth (No. 5.2);

10  • All documents that discuss or constitute all communications concerning

11  this action with any third party (No. 6.2);

12  • All documents that discuss or constitute obtaining PEP from any person

13  to whom the Junk Faxes were sent or attempted to be sent (No. 7.1);

14  • All documents that record or constitute all communications by which

15  PEP was given by any person to whom the Junk Faxes were sent or attempted to be

16  sent (No. 7.2); and

17  • All documents that record or constitute the creation, formation or

18  commencement of any EBR between Wurth and any person to whom the Junk

19  Faxes were sent or attempted to be sent (No. 8.1).

20  Wurth's document production is incomplete.  Wurth initially produced a total

21  of 150 pages.  Then, a few days ago (on April 13) Wurth produced an additional

22  1604 pages of documents.  (Luskin Suppl. Decl. ¶ 8.)  However, all but 29 of those

23  pages (1,575 pages) are almost completely redacted pages of what appear to be lists

24  of the persons to whom Wurth attempted to send or did send its junk faxes.  (*Id*. ¶

25  8.)  Four of the pages are invoices from WestFax to Wurth for sending the

26  "broadcast" faxes, although each of those invoices is partially redacted, including as

27  to the name of the person at Wurth to whom the invoices were addressed, the

28  description of the services performed by WestFax (as to some of the invoices) and

-6-

PAYNE & FEARS LLP
ATTORNEYS AT LAW
1100 GLENDON AVENUE, SUITE 1250
LOS ANGELES, CALIFORNIA 90024
(310) 689-1750

1    other information.  (*Id.* ¶¶ 8-9.)  Several pages consist of emails, although they too

2    have been redacted as to the full names of the senders and recipients and other

3    information.  (*Id.* ¶¶ 8-10.)[3]

4         Wurth has clearly not produced most of the documents requested.  The

5    production does not include the Wurth's contract with WestFax, which it admittedly

6    used for its fax blasting program, any documents showing the creation of the fax

7    flyers or the use of the deficient opt-out notice.[4]  (Luskin Supp. Decl., ¶ 12.)  There

8    are no documents discussing TCPA compliance.  (*Id.*)  There are no documents

9    identifying those fax recipients that gave prior express permission to receive a faxed

10   ad, a defense Wurth has asserted.  (*Id.*)  There are also no documents showing that

11   the fax recipients were customers, a requirement for the established business

12   relationship defense Wurth has asserted. (*Id.*)

13        Even Wurth's production of the fax transmissions is woefully incomplete.  It

14   appears from documents produced by WestFax in response to a subpoena, that

15   dating back to January 2013, Wurth made over 180 fax blasts.  (Luskin Supp. Decl.,

16   ¶¶ 3-5, 7, 11.)  But Wurth has produced items relating to only *four* fax blast

17   transmissions.  (*Id.*, ¶¶ 7, 11.)  Wurth has produced very few emails.  (*Id.*, ¶ 12.)

18   There are no communications from WestFax regarding the results of the fax blasts,

19   despite that after each blast WestFax automatically generates an email to the client

20   identifying the number of successful transmissions.  (*Id.*, ¶ 11.)

21

22   _____

23        [3]  On April 13, Wurth's counsel for the first time provided substantive comments to
     the revised proposed stipulated protective order sent by Plaintiff's counsel on December 26
24   – almost four months ago.  (Luskin Supp. Decl. ¶ 7, fn. 1.)  Defendant continues to use the
     protective order as an excuse for refusing to produce documents without redaction,
25   including as to information that is not even arguably confidential such as the identity of
     senders and recipients of emails.  Defendants is doing so despite that Craftwood II made
26   clear months ago (in December) that it would treat any disclosed documents as
     confidential pending the entry of a stipulated protective order to avoid any delay related to
27   confidentiality. (Luskin Decl. ¶ 14.)
          [4]  The declaration of Wurth's CFO, Edwin McGraw, states that "[w]hen WLC sent
28   facsimiles to multiple entities, it relied on a third-party facsimile sender called WestFax to
     send the faxes."  (ECF 91, ¶ 18.)

**C.      None of Wurth's Many and Evolving Excuses for Refusing to Comply with Craftwood II's Discovery Has Merit**

While Wurth asserts in its opposition various meritless reasons that it is not required to provide substantive responses to Plaintiff's discovery, it also agrees in its opposition to provide supplemental responses to the discovery.  But the supplemental responses now provided by Wurth are incomplete, evasive and improper, as discussed above.  Wurth therefore appears to stand by its meritless objections.

**1.      The Discovery Is Not Limited to Either "Similarly-Situated" Wurth Customers or the Same Faxes that Craftwood II Received**

Wurth contends that the only possible class discovery to which Craftwood II may be entitled is for "a class of similarly-situated customers who received the same faxes that Craftwood did."  (ECF No. 90 at 11.)  This is, of course, nonsense.

**a.  Discovery Is Not Limited to "Similarly Situated Customers"**

Wurth's contention that discovery should be limited to its customers that are "similarly-situated" (as it defines that term) to Craftwood II fails because there is no legal or other basis for limiting discovery in this way.  Nor has Wurth treated Plaintiff as belonging to such a subgroup of "similarly-situated" customers when fax blasting advertisements to its customers.

Wurth states that it "specifically selected the specific facsimiles attached to Plaintiff's Complaint *for Craftwood* based on the type of business it is and the products it sells."  (ECF 90 at 4.)  Defendant claims that based on Craftwood II's low-volume of purchases and lack of a designated outside sales representative, Plaintiff is "in a group of just 117 [Wurth] customers." (*Id*.)  It concludes that any class discovery should be limited to that "class of [117] similarly-situated customers" given the implication that Wurth only sent fax blasts to that subgroup when faxing Plaintiff.  (*Id*. at 4, 11.)

But Defendant's supplemental document production makes clear that when

PAYNE & FEARS LLP
ATTORNEYS AT LAW
1100 GLENDON AVENUE, SUITE 1250
LOS ANGELES, CALIFORNIA 90024
(310) 689-1750

fax blasting advertisements, Wurth did not treat Craftwood II as belonging to a subgroup of 117 Wurth Customers, or even a larger subgroup of "479 retailer-customers", as explained by Wurth's CFO in his declaration (*See* ECF 91, ¶¶ 10-12). Instead, for example, the production shows that on May 21, 2015, Wurth instructed an employee (whose name has been redacted) to "send" a "faxblast" to the "Blum-Faxlist," which appears to consist of more than *15,000* names and fax numbers, all of which have been redacted except for Plaintiff "Bay Hardware" and its fax number. (Luskin Supp. Decl. ¶ 9.) This only one of the four faxblast lists produced by Wurth where Craftwood II (Bay Hardware) was included in the blast along with thousands of others (*Id*. ¶¶ 8-9.)

Putting aside its flawed premise, Defendant argues, without any support, that limiting Plaintiff's discovery to fewer than 500 supposedly similarly situated Wurth customers is required because otherwise Craftwood II cannot meet the typicality and predominance requirements under Rule 23(a)(3) and (b)(3). (ECF 90 at 11-13.) This is false. Wurth's distinctions about its customers have no bearing on whether Craftwood II's claims are typical of those of Wurth's customers in the class. Consistent with TCPA case law, Plaintiff has alleged in its complaint that the injury it has sustained as a result of Defendant's actions include wrongfully occupying Plaintiff's facsimile telephone line, wasting time to manage and dispose of Defendant's junk faxes and consuming and wasting Plaintiff's electricity, paper and toner, among other things. (ECF No 1, ¶ 5.) A multitude of federal courts have held that allegations of occupied fax machines, wasted time, and loss of toner and paper constitute concrete injuries establishing Article III standing under the TCPA – including this one. *Craftwood II, Inc. v. Wurth Louis & Co.*, No. SACV 17-0606-DOC (KES), 2017 WL 4286605, at *7-8 (C.D. Cal. Sept. 20, 2017). Indeed, it appears that Wurth used a common pattern and practice to blast its junk faxes. From the few heavily redacted emails produced so far, the advertisements and fax lists appear to have been uploaded to WestFax, a third party fax broadcaster. WestFax

PAYNE & FEARS LLP
ATTORNEYS AT LAW
1100 GLENDON AVENUE, SUITE 1250
LOS ANGELES, CALIFORNIA 90024
(310) 689-1750

then blasted these out to the recipients.  (Luskin Supp. Decl., ¶¶ 8-9.)

        In addition to Wurth's common practice, the injuries alleged by Plaintiff apply equally to any Wurth customer, irrespective of how many purchases they have made or whether they have an assigned sales representative.  That Wurth may view their "lowest-volume" customers as less worthy of protection under the TCPA is irrelevant.  There is nothing in the TCPA or Rule 23 that excludes or provides any special rule based on how a defendant internally categorizes its customers/class members.  Rather, Plaintiff and all of Wurth's customers in the class have the same claims under the TCPA and they are entitled to the same damages and injunctive relief.  (ECF No. 1, ¶ 22.)

        Numerous common questions of law and fact predominate among all class members' claims, including, for example, whether the subject faxes are advertisements within the ambit of the TCPA, whether Defendant sent unsolicited facsimile advertisements in violation of the TCPA, whether Defendant complied with the opt-out notice requirements of the TCPA, and whether damages should be increased on account of Defendant's willful and/or knowing violations.  (ECF No. 1, ¶ 25.)  That is the reason courts across the country certify TCPA cases: "[c]lass certification is normal in litigation under § 277 [the TCPA], because the main questions, such as whether a given fax is an advertisement, are common to all recipients."  *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013); *see also CE Design Ltd. v. King Architectural Metals, Inc*., 271 F.R.D. 595, 600 (N.D. Ill. 2010) (granting class certification and observing that "the weight of authority" supports certification of junk fax class actions), *vacated and remanded on other grounds,* 637 F.3d 721 (7th Cir. 2011); *Penzer v. MSI Mktg., Inc*., No. 01-30868 CA 32, 2003 WL 25548019, at *2, 19-20 (Fla. Cir. Ct. Apr. 2, 2003) ("[t]he vast

1    majority of courts have approved the class certification of TCPA claims").[5]

2    There is no valid reason to limit class discovery to any subgroup.

3    **b.  Discovery Is Not Limited to The Same Faxes Craftwood II**

4    **Received**

5    Wurth's next contention that class discovery is limited to customers who

6    received the same faxes that Craftwood II did also fails.  (ECF No. 90 at 11).

7    Defendant also frames this as matter of standing: that Plaintiff does not "have

8    standing to litigate claims about faxes it never received."  (*Id*. at 14.)  That

9    Defendant cites no authority supporting these contentions is not surprising because

10   its claim is inconsistent with the law on typicality under Rule 23.

11   "Under Rule 23(a)(3), it is not necessary that all class members suffer the

12   same injury as the class representative" because "[i]n determining whether typicality

13   is met, the focus should be 'on the defendants' conduct and plaintiff's legal theory,'

14   not the injury caused to the plaintiff."  *Lozano v. AT&T Wireless Services, Inc*., 504

15   F.3d 718, 734 (9th Cir. 2007).[6]  Here, Plaintiff has alleged as to *Defendant's*

16   *conduct* that Wurth's illegal junk fax program was uniform, including that "all faxes

17

18      [5]  *See also American Copper & Brass, Inc. v. Lake City Indus. Prods., Inc*., 757

19   F.3d 540, 542 (6th Cir. 2014); *Karen S. Little, L.L.C. v. Drury Inns, Inc.*, 306 S.W.3d 577,

20   584 (Mo. Ct. App. 2010) ("many jurisdictions throughout the country have routinely

     allowed class certification...where third parties were utilized to send 'blast' faxes"); *City

21   Select Auto Sales, Inc. v. David Randall Assoc., Inc.*, 296 F.R.D. 299, 303-304, 322-323

     (D. N.J. 2013); *Kavu, Inc. Omnipak Corp*., 246 F.R.D. 642, 644-645, 651 (W.D. Wash.

22   2007); *Spine and Sports Chiropractic, Inc. v. Zirmed, Inc*., No. 3:13-CV-00489-TBR, 2014

23   WL 2946421, at *1, 22 (W.D. Ky. June 30, 2014).  Summed up, "[c]lass actions were

     designed for these types of claims."  *G.M. Sign, Inc. v. Group C Commc'ns, Inc.*, No. 08-

24   cv-4521, 2010 WL 744262, at *6 (N.D. Ill. Feb. 25, 2010).

25      [6]  Defendant provides a partial quote from *Olney* that "[t]ypicality requires that a

26   class representative possess the same interest and suffer the same injury as the putative

     class."  (ECF 90 at 12-13, *citing and quoting Olney v. Job.com, Inc*., No. 1:12-CV-01724-

27   LJO-SKO, 2013 WL 5476813, at * 14 (E.D. Cal. Sept. 30, 2003).  But Wuth fails to

     mention the very next sentence in *Olney* that "[r]epresentative claims need only be

28   'reasonably co-extensive with those of absent class members; they need not be

     substantially identical.'"  *Id*.

PAYNE & FEARS LLP
ATTORNEYS AT LAW
1100 GLENDON AVENUE, SUITE 1250
LOS ANGELES, CALIFORNIA 90024
(310) 689-1750

that are the subject of this lawsuit . . . constituted advertisements under the TCPA within their four corners and as part of WCL's overall marketing and promotional activities . . ." (ECF 1 ¶ 13). Plaintiff also alleges that "Defendant transmitted the faxes . . . without obtaining recipients' prior express invitation or permission, in direct violation of the TCPA and FCC regulations." (*Id.* ¶ 13.) These claims are susceptible to class wide treatment. Indeed, Craftwood II is seeking the same relief for the entire class – statutory damages and injunctive relief.

Courts have rejected Wurth's contention that typicality requires that the plaintiff receive the same faxes as the class, including a Northern District of Illinois court just last month. That court held defendants could not "parse the question [of typicality under Rule 23] more finely" by contending that the plaintiff only received a single fax out of various broadcasts sent on "different dates advertising other shows" because "typical does not mean identical." *Practice Mgmt. Support Servs., Inc. v. Cirque du Soleil, Inc.*, No. 14 C 2032, 2018 WL 1255021, at *6-8 (N.D. Ill. Mar. 12, 2018). The Seventh Circuit also upheld certification of a class where the defendant sent numerous faxes with the content changing over time, some of which the named plaintiff received and some of which he did not, without questioning whether the named plaintiff's claim was typical. *Ira Holtzman, C.P.A.*, 728 F.3d at 683; *see also DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174–75 (8th Cir. 1995) (holding "typicality is not altered by the different mortgage instruments held by class members," where "[t]he relief sought in the action is the same regardless of the amount of overage in any particular account").

Because Craftwood II is seeking the same relief for the entire class (statutory damages and injunctive relief) based on the same legal theory (TCPA violations), any factual distinctions between Craftwood II's claim and the claims of the other recipients does not destroy typicality.

PAYNE & FEARS LLP
ATTORNEYS AT LAW
1100 GLENDON AVENUE, SUITE 1250
LOS ANGELES, CALIFORNIA 90024
(310) 689-1750

**PAYNE & FEARS LLP**
ATTORNEYS AT LAW
1100 GLENDON AVENUE, SUITE 1250
LOS ANGELES, CALIFORNIA 90024
(310) 689-1750

## 2. Wurth's Discussion of the "Proper Bounds of Class Discovery" Is Misleading and Wrong

Wurth also contends falsely that there should be no class discovery in this case because Plaintiff has failed to make a *prima facie* showing that the class action requirements under Rule 23 have been satisfied or that discovery is likely to produce substantiation of the class allegations. (ECF 90 at 8-9.) While Defendant's discussion of the law in support of this argument is misleading and its conclusion wrong, it suffers from a more fundamental defect – it misses the point.

As explained in the opening brief, numerous California federal courts presume that TCPA claims are entitled to this very discovery. (Dkt. 63 at 10.) Wurth does not distinguish these cases, so must concede the point. This case is no different. Even further, TCPA cases are commonly certified, so this case meets the supposed *prima facie* test anyway. *Turza*, 728 F.3d at 684.[7] Wurth admits it used a common practice to blast faxes to thousands of recipients, including Craftwood II. (Luskin Supp. Decl. Ex. D.) In the very limited discovery provided so far,

---

[7] Wurth relies on cases that do not support limiting discovery in this case. It cites *Holak* for the proposition that "a plaintiff is entitled to class discovery only if it makes 'a prima facie showing.'" *Holak v. K Mart Corp.*, No. 1:12-CV-00304-AWI-MJS, 2014 WL 4930762, at *3 (E.D. Cal. Sept. 30, 2014). The Court actually stated that "in order to require Defendant to provide statewide class discovery Plaintiff must make a *prima facie* showing that class action requirements of [FRCP] 23 are satisfied *or that discovery is likely to produce substantiation of class allegations*." *Id.* (emphasis added). There is no question, even based on the limited discovery that classwide allegations can be substantiated.

Defendant cites *Crabtree* for the proposition that the purpose of discovery is to enable the parties to prepare for trial with respect to their own claims, "not to determine whether third parties have similar claims." (ECF 90 at 8, citing *Crabtree v. Hayden, Stone Inc.*, 43 F.R.D. 281, 282 (S.D.N.Y. 1967).) That case is inapplicable because the plaintiff initiated an individual action and later attempted to add class claims. The court disallowed it: "Plaintiffs frankly seek these records for the purpose of determining whether they may induce the Court to permit them to prosecute the action as a class action." *Id.* This case is not an individual action.

Finally, *Wahl* – another case cited by Defendant – doesn't support a limitation on discovery at all. There, the court denied defendant's motion for protective order and permitted the class discovery plaintiff requested—the opposite of what Wurth seeks here. *Wahl v. American Sec. Ins. Co.*, No. C 08-00555 RS, 2009 WL 3463211, at *3 (N.D. Cal. Oct. 23, 2009). "There is no hard and fast rule that discovery related to class issues is not proper before class certification has been filed or granted." *Id.*

---

Craftwood II is just one of 9,000, 12,000, 15,000, or more than 25,000 intended recipients of faxes blasted by Wurth's third party blaster, Westfax.  (Luskin Supp. Decl. ¶¶ 8-9.)[8]

Making matters worse, the Court did not phase discovery.  Judge Carter has determined that all discovery must be completed by June 4.  It couldn't be clearer that the Court wants all discovery to proceed immediately without this type of roadblock. Indeed, given Defendant's many (unfortunately successful) efforts to stall discovery, even if there was merit to Wurth's argument, it cannot now benefit from its own tactical delay.  There is no time remaining before the June 4 discovery cutoff (a mere seven weeks away) to wait.

At the hearing last week (on April 9), the Court made very clear that the June 4 discovery cutoff will not be continued and that the parties must "get it [i.e., discovery] done" by that date because they are now "on a fast track."  (Luskin Supp. Decl. ¶ 14, Exh. E at 30.)  If that were not sufficiently clear, the Court then had the following exchange with Wurth's counsel (Livia Kiser):

> The Court:   . . . And that other side's going to be getting discovery to you [Plaintiff] very quickly.
>
> Is that correct, Counsel?
>
> Ms. Kiser:   That's correct.
>
> The Court:   Very quickly.
>
> Ms. Kiser:   That's correct.
>
> (Luskin Supp. Decl. ¶ 14, Exh. E at 30.)

---

[8]  Although the fax lists produced by Defendant have been heavily redacted, they appear to consist of the names of businesses and their fax numbers because on at least one such list Defendant did not redact information concerning Plaintiff, including "Bay Hardware" and its fax number, (562) 594-4054.  That is the same fax number stated for Bay Hardware in the complaint (ECF 1, ¶ 6.)  (Luskin Suppl. Decl. ¶¶ 8-9.)

PAYNE & FEARS LLP
ATTORNEYS AT LAW
1100 GLENDON AVENUE, SUITE 1250
LOS ANGELES, CALIFORNIA 90024
(310) 689-1750

The Court has therefore already determined that Plaintiff may proceed with discovery and that Defendant must provide immediate responses.  But Defendant still has not provided proper discovery responses.  It must be ordered to do so immediately.

### 3. Craftwood II Is Entitled to Wurth's Customer and Other Information in Complete, Unredacted Form

Wurth has no valid reason, including privacy, for refusing to produce documents with the identity of the fax recipients and their fax numbers regardless of whether they are customers.  Both of Wurth's document productions – of a mere 154 pages on December 4 and another 1604 pages on April 13 – are heavily redacted, including what appear to be the names and fax numbers, on the claimed ground of privacy.  (Luskin Supp. Decl. ¶¶ 8-9.)

Craftwood II needs the know the identity and fax numbers of the class members for class certification, including numerosity, ascertainability, commonality, typyicality and superiority. For example, Craftwood II needs to able to identify the fax recipients to show ascertainability.  As is the case with most other matters where a defendant utilizes Westfax, Wurth appears to have fax lists with intended recipients.  Westfax normally produced reports identifying the number of successful transmissions and a log of the intended recipients to whom the transmissions failed.  To determine those receiving faxes, Craftwood II needs the identifying information to marry the list with the failure log.

Plaintiff also needs this information to address and challenge Wurth's PEP affirmative defense in which it alleges that "the claims of one or more members of the proposed classes are barred because they provided express consent, invitation and/or permission to receive facsimile transmissions from Wurth." (ECF 50 at 6.) Plaintiff will conduct discovery regarding Wurth's PEP defense, but it can't do so without knowing the identities of the class members.  The same is true for Wurth's EBR defense, if any.

PAYNE & FEARS LLP

ATTORNEYS AT LAW
1100 GLENDON AVENUE, SUITE 1250
LOS ANGELES, CALIFORNIA 90024
(310) 689-1750

Wurth may not redact the names and fax numbers of the recipients or any other information from its fax lists because even Wurth's customers, to the extent all recipients are customers, have no privacy interest in their identities.  California Federal courts have repeatedly held that the disclosure of the names and telephone numbers in TCPA actions do not present a serious privacy invasion.  *See, e.g., Thrasher v. CMRE Fin. Servs., Inc.*, Case No. 14-cv-1540-BEN, 2015 WL 1138469, at *3 (S.D. Cal. Mar. 13, 2015).  "[C]onsumers may reasonably expect that businesses to which they have provided their names and contact information will not disseminate that information to third parties.  However, *the disclosure of contact information during discovery in civil litigation generally does not constitute a serious invasion of that privacy interest, let alone an egregious breach of social norms*."  *McEwan v. OSP Group, L.P.*, Case No. 14-cv-2823-BEN, 2016 WL 1241530, at *4 (S.D. Cal. March 30, 2016) (emphasis added).  Defendant does not contest these cases.

Courts routinely compel defendant fax advertisers to turn over information that "identify the recipients."  *True Health Chiropractic, Inc. v. McKesseon Corp.*, No. 13-cv-02219, 2015 WL 1502953, at *3 (N.D. Cal. Apr. 1, 2015); *see also Webb v. Healthcare Revenue Recovery Group LLC*, Case No. C. 13-00737 RS, 2014 WL 325132, at **2-3 (N.D. Cal. Jan. 29, 2014); *Peters v. Credit Protection Ass'n, LP*, No. 2:13-cv-767, 2014 WL 6687146, **6-8 (S.D. Ohio Nov. 26, 2014); *Stemple v. QC Holdings, Inc.*, No. 12-cv-1997-CAB, 2013 WL 10870906, at *2-4 (S.D. Cal. June 17, 2013).

*True Health Chiropractic* is instructive. There the defendants made numerous attempts to resist pre-certification discovery of precisely the same information and documents sought here, including documents containing the identities and fax numbers of the recipients of the fax ads sent by the defendants.  *True Health Chiropractic, Inc.*, 2015 WL 1502953, at *3.  The District Court found this information to be relevant to the class certification issues, and it imposed sanctions

-16-

against the defendants for failing to comply with a previous motion to compel ruling requiring the defendants to produce these documents. *Id*. at *3, 7, 9.

Wurth ignores those authorities in its opposition.  Instead, Wurth argues without citing any on-point TCPA authority that information about the identity of its recipients is not required for class certification.  (ECF 90 at 18.)  As discussed above, class lists are relevant to ascertain potential class members and substantiate certification, including commonality.  The identity of the fax recipients is also relevant to Wurth's claimed PEP and EBR defenses.  (*Id.* at 13-14.)

Wurth argues that Craftwood II could not represent a class because its PEP and EBR defenses result in "individual inquiries."  (ECF 90 at 13-14.)  But Wurth has not produced any evidence of PEP or EBR, and the supposedly "individual inquiries" that it contends are unique to this TCPA case are asserted by virtually every defendant in a TCPA case and they are nonetheless routinely certified anyway.  The only way Wurth can maintain a PEP defense is by identifying, one by one, those fax recipients that it contends gave prior express permission to receive faxes, and the communications by which such permission was allegedly provided.

Wurth cannot oppose class certification as it likely intends to do by arguing that PEP and EBR issues require an individualized inquiry that predominates over common questions while denying Plaintiff the right to test that assertion through discovery.  A defendant "cannot defeat class certification by asserting the vague possibility that some of the individuals on the anonymous lists may have perchance consented to receiving the fax."  *G.M. Sign, Inc. v. Finish Thompson, Inc.,* No. 07 C 5953, WL 2581324 at *5 (N.D. Ill. Aug. 20, 2009).  The same analysis applies to the EBR defense.  *See, e.g., Michel v. WM Healthcare Solutions, Inc.*, No. 1:10-CV-638, 2014 WL 497031, at *7 (S.D. Ohio Feb. 7, 2014); S*adowski v. Med1 Online, LLC*, No. 07 C 2973, 2008 WL 2224892 *4 (N.D. Ill. May 27, 2008).

Wurth's opposition also mirrors the defendant's inconsistent position in *Whiteamire Clinic, P.A., Inc. v. Quill Corp.*, No. 12 C 5490, 2013 WL 5348377, at

PAYNE & FEARS LLP
ATTORNEYS AT LAW
1100 GLENDON AVENUE, SUITE 1250
LOS ANGELES, CALIFORNIA 90024
(310) 689-1750

-17-

1   **3, 6 (N.D. Ill. Sept. 24, 2013).  There, the court rejected claims that a defendant

2   could withhold pre-certification class discovery and at the same time challenge class

3   certification based on its defenses.

4        Indeed, courts have barred defendants from asserting PEP and EBR defenses

5   when they refuse to comply with an order to produce such material before class

6   certification.  *See Craftwood Lumber Co. v. Interline Brands, Inc*., No. 11 C 4462,

7   2013 WL 4598490, at *13-14 (N.D. Ill. Aug. 29, 2013).  In that case the court found

8   that "[t]he only effective sanction would be the preclusion of [defendant's] assertion

9   of PEP and EBR defenses and the preclusion of its introduction of evidence

10  concerning PEP and EBR.  This sanction is tailored to [defendant's] violation

11  because the main thrust of the outstanding discovery it refused to produce . . . was

12  the identification of fax recipients with respect to whom [defendant] had PEP and

13  EBR."  *Id*. at * 14.

14       Craftwood II requires the complete fax lists, transmission records, faxes, and

15  evidence regarding permission to meet the certification requirements and to test

16  Wurth's defenses.  Plaintiff is not required to merely accept as true Wurth's general

17  and unsubstantiated statements and call it a day.

18       Making matters worse, Wurth has also redacted information from its second

19  production for which there is no arguable basis for claiming privacy or other

20  grounds for withholding the information.  For instance, Defendant has redacted from

21  emails the full name of the person at Wurth (leaving only "Justin") who sent to

22  someone whose name has also been redacted various fax lists to be blasted.  The

23  names of the sender and recipient(s) of these emails are indisputably relevant in this

24  TCPA case and Plaintiff may depose them.[9]  Defendant has also improperly

25  ────────────────────

26       [9]  "Justin's" name does not appear in Wurth's supplemental response to any of the

27  interrogatories, including interrogatory 1 which asks Wurth to identify each person who
    was involved in or had any role in any decision to create or proceed with advertising or

28  promotional campaigns involving a junk fax.  (Luskin Supp. Decl. ¶ 13, Exh. D.)

PAYNE & FEARS LLP
ATTORNEYS AT LAW
1100 GLENDON AVENUE, SUITE 1250
LOS ANGELES, CALIFORNIA 90024
(310) 689-1750

1    redacted information in WestFax's invoices to Wurth for sending "broadcast

2    fax[es]", including the name of the person at Wurth to whom the invoices are

3    addressed.  Again, there is nothing private or confidential about the names of

4    witnesses, including Wurth's employees involved in its illegal junk fax program.

5        **4.    Craftwood II's Discovery Is Proportional to the Needs of the Case**

6        Wurth contends that the discovery is not proportional to the needs of the case

7    under Rule 26(b)(1) because certain of Craftwood II's document requests seek

8    discovery prior to the class period.  (ECF No. 90 at 15-16.)  This contention fails

9    because there is no question that the information sought is proportional to the needs

10   of this $350 million case.

11       First, Wurth mistakenly argues that "Craftwood did not include any time

12   period whatsoever" for many of its requests, including some unspecified subset of

13   document requests 1.1, 1.2, 1.4, 2.1-2.5, 3.1-3.4, 4.1-4.3, 5.1, 5.2, 7.1, 7.3 and 8.1.

14   (ECF No. 90 at 15.)  It also argues that these requests are not limited to the time

15   period alleged in the complaint – April 4, 2013 to April 4, 2017 (ECF 1, ¶ 13.)

16   Defendant has misconstrued the requests.

17       Some of these requests seek documents regarding matters that should not be

18   time-limited.  For example, Request 1.2 asks for documents that describe or discuss

19   the list or lists used to send the Junk Faxes at issue (which term is defined as those

20   faxes sent during the period from April 4, 2013 through the date of Wurth's

21   responses).  That a fax list for the Junk faxes and documents discussing that list

22   were prepared or created prior to April 2013 date does not make the Request

23   improper.  One would necessarily expect the fax list to be prepared sometime before

24   the faxes were sent.  Request 3.1 asks for all contracts or agreements with any Fax

25   Broadcaster (defined as anyone who participated in the sending of a Junk Fax) that

26   concern the transmission of Junk Faxes.  Again, one would expect any agreements

27   with a Fax Broadcaster to have been entered into before the Junk Faxes were sent.

28   Asking for such agreements, whenever they were entered into, is not improper.

PAYNE & FEARS LLP
ATTORNEYS AT LAW
1100 GLENDON AVENUE, SUITE 1250
LOS ANGELES, CALIFORNIA 90024
(310) 689-1750

-19-

Request 5.1 asks for documents that discuss the TCPA or laws against unsolicited facsimile advertising that were created or received by Wurth. If Wurth knew the TCPA requirements before April 2013, but still sent junk faxes after that date, that information is entirely relevant to whether Wurth acted willfully in violation of the TCPA. *See, e.g., Donnelly v. NCO Financial Sys., Inc.*, 263 F.R.D. 500, 504-505 (N.D. Ill. 2009) (granting motion to compel documents relating to other complaints or lawsuits brought against defendant and any steps defendant has taken to comply with the TCPA). Requests 1.1, 1.4, 2.2-2.4, 3.2-3.3, 5.2, and 8.1 are proper for the same reason – they do not need to be time-limited.

The remaining requests that Wurth challenges – 2.1, 2.5, 3.4, 4.1-4.3, 7.1 and 7.3 – are necessarily limited to the post April 2013 time-period because they are governed by the term Junk Fax, which has that time-frame included in the definition of the term.

Wurth also makes cursory mention of the "significant burden" placed on it by these requests. But its makes no showing whatsoever as to any such burden. Wurth cannot withhold documents on these bases. Indeed, this appears to be a potentially massive case with more than $350 million in base liability.

## D.   Craftwood II Is Entitled to Monetary Sanctions for Wurth's Repeated Discovery Abuses

Wurth continues, *seven months* after the discovery was served, to withhold documents and ESI, and the documents it has produced are almost completely redacted without good cause. And Wurth has still failed to provide complete responses to Plaintiff's interrogatories. Wurth has refused still to provide proper discovery responses despite that it represented that it expected to produce responsive ESI by late December (Luskin Decl., ¶ 18, Exh. 11). Wurth also represented that it expected to provide supplemental interrogatory responses "shortly" after counsel's December. 19 conference (*Id.*, ¶ 17).

Wurth then first notified Plaintiff of a claimed conflict issue on January 17

PAYNE & FEARS LLP
ATTORNEYS AT LAW
1100 GLENDON AVENUE, SUITE 1250
LOS ANGELES, CALIFORNIA 90024
(310) 689-1750

-20-

PAYNE & FEARS LLP
ATTORNEYS AT LAW
1100 GLENDON AVENUE, SUITE 1250
LOS ANGELES, CALIFORNIA 90024
(310) 689-1750

and demanded that Plaintiff's counsel withdraw from the case.  It also made clear a couple days later that it would not proceed with discovery given the supposed conflict despite that Wurth explained why there was no conflict.  (Luskin Decl., ¶¶ 24-28.)  At the April 9 hearing where the Court denied Defendant's motion to disqualify Craftwood II's counsel, the Court found that "the circumstances of the alleged conflict do suggest that the *motion [to disqualify] was filed for tactical reasons and to delay and obstruct discovery*."  (Luskin Supp. Decl., ¶ 14, Exh. E at 28, emphasis added.)  Wurth has no justification for its repeated discovery obstructions.[10]

Wurth argues that it acted reasonably in withholding production because it believed Plaintiff's counsel had a disqualifying interest, which it says were based on grounds that were "not frivolous." (*See, e.g.*, ECF No. 90 at 20.)  Wurth fails to address in its opposition its repeated broken promises to provide discovery responses or why it waited until January 17 to notify Plaintiff of a claimed conflict that it then used as a basis to halt all discovery.  Wurth drops into a footnote in its opposition that it "brought the conflict to the attention of Plaintiff's counsel as soon as possible after discovering the conflict." (*Id.* at 7, fn. 10.)  Obviously missing from that statement is *when* Wurth first learned of the supposed conflict and how long it waited to notify Plaintiff.  In any event, this Court has already seen through Wurth's obstruction.

Craftwood II is entitled to the fees it incurred to bring this motion to compel Wurth's compliance with discovery.

---

[10]  Wurth also refused to participate in Craftwood II's request for a Joint Stipulation per Local Rule 37 because Wurth planned to file its disqualification motion.  (*See* ECF No. 67.) Wurth failed to provide any input to the discovery dispute until this Court ordered it to.  (*Id.*) Based on this lack of cooperation, this Court is well within its power to sanction Wurth for its failure to follow the Local Rules.  *See Inland Concrete Enterprises, Inc. v. Kraft Americas LP*, No. CV 10-1776-VBF (OPX), 2011 WL 13209238, at *1 (C.D. Cal. Jan. 7, 2011) ("The failure of any counsel to comply with or cooperate in the aforementioned procedures may result in the imposition of sanctions. LR 37-4.").

1

**Conclusion**

2

For the foregoing reasons, the Court should grant this motion in its entirety.

3

4
DATED:  April 17, 2018                    PAYNE & FEARS LLP
                                          Attorneys at Law

5

6

7
                                          By:        /s/ Scott O. Luskin

8
                                                   SCOTT O. LUSKIN

9
                                          Attorneys for Plaintiff Craftwood II, Inc.,
10
                                          dba Bay Hardware, individually and as
                                          representative of all others similarly
11
                                          situated

PAYNE & FEARS LLP
ATTORNEYS AT LAW
1100 GLENDON AVENUE, SUITE 1250
LOS ANGELES, CALIFORNIA 90024
(310) 689-1750

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Certificate of Service**

I hereby certify that at the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Los Angeles, State of California. My business address is 1100 Glendon Avenue, Suite 1250, Los Angeles, CA 90024.

On this 17th day of April, 2018, I served true copies of **Plaintiff Craftwood II, Inc.'s Reply Brief in Support of Its Motion to Compel Supplemental Responses to Interrogatories, Requests for Production, and Supplemental Documents** on the interested parties in this action via the United States District Court CM/ECF system on all parties or persons requiring notice.

/s/ Scott O. Luskin

Scott O. Luskin