C. Darryl Cordero, Bar No. 126689
cdc@paynefears.com
Scott O. Luskin, Bar No. 238082
sol@paynefears.com
PAYNE & FEARS LLP
1100 Glendon Avenue, Suite 1250
Los Angeles, California 90024
Telephone: (310) 689-1750
Facsimile: (310) 689-1755

Attorneys for Plaintiff Craftwood II, Inc.,
dba Bay Hardware, individually and as
representative of all others similarly situated

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| Craftwood II, Inc., *et al.*, | Case No. 8:17-cv-00606 (DOC) (KES) |
| Plaintiff, | Hon. David O. Carter |
| v. | **Supplemental Declaration of Scott O. Luskin in Support of Plaintiff Craftwood II, Inc.'s Motion to Compel Supplemental Responses to Interrogatories, Requests for Production and Supplemental Documents** |
| Wurth Louis & Company, *et al.*, | |
| Defendant. | |

SUPPLEMENTAL DECLARATION OF SCOTT O. LUSKIN

I, Scott Luskin, declare as follows:

1. I am an attorney duly admitted to practice before this Court. I am a partner with Payne & Fears LLP, attorneys of record for Plaintiff Craftwood II, Inc., dba Bay Hardware, individually and as representative of all others similarly situated. I have personal knowledge of the facts set forth herein, except as to those stated on information and belief and, as to those, I am informed and believe them to be true. If called as a witness, I could and would competently testify to the matters stated herein.

2. As laid out in my original declaration in support of the motion to compel, I am co-lead counsel, and I have been involved in all aspects of discovery in this case. Albeit discovery is very limited because Wurth has obstructed us at every turn. Because Wurth continues to assert massive restrictions on discovery in its opposition, I wanted to make clear that this makes no sense here.

### The Extent of Wurth's Junk Fax Program

3. Last September we subpoenaed records from Westfax, Inc., a company Wurth identified as its third-party fax broadcaster. We also served basic discovery on Wurth itself. From the small amount of information I received in response to our subpoena and somewhat from Wurth's own recent supplemental discovery responses and heavily redacted document production, this appears to be a case where Wurth violated the TCPA on a massive scale.

4. The documents produced by Westfax, after several delays caused by Wurth, are especially telling. They include more than 180 invoices to Wurth dating back to January 2013. The invoices appear to show regular fax blasting, usually multiple invoices per month throughout 2013 to 2017. The invoices total just under $21,000. From my work on several other TCPA matters involving Westfax,

Westfax appears to always charge $0.03 for each successful fax. A quick calculation reveals that since January 2013 Wurth had Westfax blast more than 697,000 faxes ($20,920.4 /.03 = 697,380). Because the TCPA has a $500 statutory base damage, the claims could total $350 million. If the damages are trebled, as permitted by the statute, liability climbs over $1 billion.

5. In addition to the invoices we received a screenshot showing Wurth's client reps and several spreadsheets that appear to be fax lists Wurth stored on Westfax's web portal. The screenshot identifies Theresa Minehart and Kim Schnurstein as Wurth's representatives. As an example of the lists, one called "active faxes 071113", identifies Bay Hardware as one of 13,789 potential recipients. The file does not categorize those appearing on the list, but merely includes a phone number column and a column with a company name.

6. In my experience working on TCPA cases for about ten years, this is typical for junk fax cases. The client, like Wurth, either uses stored lists, like the ones we received from Westfax, or uploads additional lists to blast other identified recipients.

**Wurth's Incomplete, Improper, and Evasive Responses and Redacted Production**

7. Wurth's heavily redacted document production appears to confirm that this process was used. On April 13, more than a year after the case was filed, Wurth made its first production regarding some of the fax transmissions.[1] While it

---

[1] The same day, late in the afternoon, Wurth reached out regarding revisions to a stipulated protective order. Wurth had ignored the protective order since I sent my revisions December 26. We did not have time to analyze the changes that day, and it appears that Wurth made at least one major changes despite representations to the contrary.

-3-
SUPPLEMENTAL DECLARATION OF SCOTT O. LUSKIN

looks like Wurth made over 180 fax blasts, Wurth appears to have produced items relating to only *four* of them.

8. The few documents produced, only 1604, were heavily redacted (all but 29). For example, for an April 2015 blast and May 2015 blast, Wurth produced an email from Justin, last name redacted, who appears to be a Wurth marketing communications specialist. The recipient of the email is entirely redacted. The email lets the unknown recipient know the status of Justin's work on a fax list for a fax flyer to be sent April 27 and May 4. Attached hereto as Exhibit A is a true and correct copy of the email produced by Wurth. The next document appears to be the related fax list, but it is almost entirely redacted. All we can see is that there were almost 9,000 intended recipients, likely with fax numbers, since Wurth left un-redacted Bay Hardware and its fax number. Attached hereto as Exhibit B is a true and correct copy of an exemplar page of this document. The next document produced is a redacted Westfax invoice. For some reason the Louis and Company representative the invoice was sent to is redacted along with the account number and invoice number. No reason for the redactions is provided. The redaction of the recipient's name does not cover the first letter "K", so we can only assume it was sent to Kim Schnurstein, who for some reason has not been identified as a witness by Wurth in its 26(a) disclosures or in response to interrogatories. Attached hereto has Exhibit C is a true and correct copy of the invoice produced by Wurth. The next item produced was a copy of what was likely the related fax flyer.

9. The same pattern is repeated three more times. The second list has over 15,000 redacted entries (the Blum-Faxlist for May 21, 2015), and the invoice reveals Kim, redacted last name, as the recipient. On this one, the invoice number is not redacted, but a part one of the items for service is. The third heavily redacted list appears to relate only to the "CA Region" as identified in a footer. It has more than the two columns in the preceding lists, which appears to be full address

information, which can be deciphered from the only un-redacted line relating to Bay Hardware. The CA Region appears to have more than 12,000 intended recipients alone. The last list has more than 28,000 recipients. But it too is almost completely redacted.

10. There are also a few heavily redacted emails, including the names of the sender and recipients, regarding requests to opt-out of the faxes.

11. This limited and heavily redacted production is not nearly complete. It includes only four of the 180 blasts. It does not have any communications from Westfax regarding the results of the blasts. From my past experience, these communications are critical. After each blast, Westfax automatically generates an email to the client identifying the number of successful transmissions. Included are usually reports identifying either all the failed faxes and why or a detailed report identifying all the successes and failures.

12. The production also fails on every other front. Indeed, from my extensive TCPA experience I expected several items to be in the production. Several examples are telling. First, the production does not include the contract with Westfax. Westfax's standard agreement lays out the TCPA's requirements, so it is a critical document showing that a Westfax client willfully violated the TCPA. The production also does not have documents showing the creation of the fax flyers or the use of the deficient opt-out notice. There are no documents discussing TCPA compliance. There are no documents identifying those fax recipients that gave prior express permission to receive a faxed ad, a defense Wurth has asserted. There are also no documents showing that the fax recipients were customers, a requirement for the established business relationship defense Wurth has asserted.

13. Wurth's supplemental interrogatory responses fair no better since they provide little of the requested information. Attached hereto as Exhibit D is a true

-5-
SUPPLEMENTAL DECLARATION OF SCOTT O. LUSKIN

1 and correct copy of these responses. Indeed, one example is glaring. Wurth refused to identify those recipients supposedly providing prior express permission. This makes no sense. Because it is an affirmative defense, it is Wurth's burden to prove those granting Wurth PEP. Wurth asserts that all recipients gave consent, which Wurth may be attempting to conflate with PEP, but doesn't say who anyone is. Making matters worse, Wurth's failure to identify those giving PEP is contradictory to the representation made by Wurth's counsel, Michael Mallow, during our discovery conference. He made clear at that time that if someone was going to be used for the PEP defense, that person or entity would need to be identified.

**Judge Carter's Insistence that Discovery Proceed in Nanoseconds**

14. On April 9, the Court held a hearing on Wurth's motion to disqualify Craftwood II's counsel. The Court denied the motion in its entirety. Among other reasons for denial was that the "circumstances of the alleged conflict do suggest that the motion was filed for tactical reasons and to delay and obstruct discovery." Attached hereto as Exhibit E is a true and correct copy of the hearing transcript. Judge Carter went on to state that discovery was going to be sped up. He explained that the parties were "on a fast track…. And that other side [Wurth] is going to be getting discovery to you very quickly."

15. But quickly providing discovery clearly has not happened. It's been a week already, and we only have a piece of a piece of the information. And it's all redacted.

/ / /

/ / /

/ / /

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 17th day of April 2018, at Los Angeles, California.

          /s/ Scott O. Luskin
          SCOTT O. LUSKIN

4823-7876-0290.1

PAYNE & FEARS LLP
ATTORNEYS AT LAW
1100 GLENDON AVENUE, SUITE 1250
LOS ANGELES, CALIFORNIA 90024
(310) 689-1750

**Certificate of Service**

I hereby certify that at the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Los Angeles, State of California. My business address is 1100 Glendon Avenue, Suite 1250, Los Angeles, CA 90024.

On this 17th day of April, 2018, I served true copies of **Supplemental Declaration of Scott O. Luskin in Support of Plaintiff Craftwood II, Inc.'s Motion to Compel Supplemental Responses to Interrogatories, Requests for Production and Supplemental Documents** on the interested parties in this action via the United States District Court CM/ECF system on all parties or persons requiring notice.

/s/ Scott O. Luskin
_____
Scott O. Luskin