**EXHIBIT D**

Livia M. Kiser
lkiser@sidley.com
Tom Kayes
tkayes@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Tel: (312) 853-7000
Fax: (312) 853-7036

Michael L. Mallow
mmallow@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, California 90013
Tel: (213) 896-6666
Fax: (213) 896-6600

Attorneys for Defendant/Counter-Plaintiff
WURTH LOUIS AND COMPANY

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| CRAFTWOOD II, INC., et al. | No. 8:17-cv-00606 (DOC) (KES) |
|---|---|
| Plaintiff, | |
| v. | **Wurth Louis and Company's Supplemental Responses to Plaintiff Craftwood II, Inc.'s First Set of Interrogatories** |
| WURTH LOUIS AND COMPANY, et al. | |
| Defendant. | |

## PRELIMINARY STATEMENT

Wurth Louis and Company ("WLC") serves supplemental responses to Craftwood II, Inc.'s ("Craftwood's") first set of interrogatories. These supplemental responses are being provided as a result of discussions with counsel for Craftwood during the parties' meet-and-confer process, and based on the understandings and agreements reached during that process.

1    Craftwood initially served its interrogatories on September 28, 2017. Under
2    Rules 33(b)(2) and 6(d) of the Federal Rules of Civil Procedure, WLC therefore had
3    until October 31, 2017 to serve its responses and objections. WLC, however, served
4    its responses and objections on October 26—five days before their due date, because
5    WLC had no choice but to object to all of Craftwood's interrogatories as
6    unanswerable because Craftwood served more than the 25 interrogatories
7    permissible under Rule 33(a)(1). *See, e.g.*, *Oceanovac, Inc. v. Dole Food Co., Inc.*,
8    2016 WL 7155783, at *1 (C.D. Cal. Mar. 16, 2016).
9        Craftwood, however, did not seek to meet-and-confer about WLC's responses
10   until 15 days later, when it sent a letter dated November 11, 2017. In that letter,
11   Craftwood withdrew interrogatory no. 15.
12       The parties conferred by telephone about WLC's interrogatory responses on
13   November 27, 2017. During that conference, the parties did not come to an
14   agreement as to whether Craftwood had served too many interrogatories. But,
15   Craftwood indicated that it did not anticipate serving additional interrogatories at the
16   time so, despite the lack of agreement, WLC agreed to provide responses to the
17   remaining 14 numbered interrogatories in exchange for Craftwood's agreement that
18   WLC would not thereby waive its objection to Craftwood serving too many
19   interrogatories. WLC explained that, if Craftwood later served additional
20   interrogatories, it would refuse to answer those interrogatories based on that
21   objection. WLC and Craftwood also agreed that WLC was not waiving or
22   abandoning its other objections by providing supplemental responses. These
23   supplemental responses are made under and limited in accordance with these
24   objections.
25       WLC sets forth the supplemental responses after the responses previously
26   served.  Each response and supplemental response together form the complete
27   response to each interrogatory.
28   //

WLC'S SUPPLEMENTAL RESPONSES TO CRAFTWOOD'S FIRST SET OF INTERROGATORIES
EXHIBIT D, PAGE 12

**SUPPLEMENTAL RESPONSES TO FIRST SET OF INTERROGATORIES**

**Interrogatory No. 1:**

Identify (by name, last known home and business address and telephone number, job title and by whom employed at the time) each PERSON who was involved in, participated in, or had any role in any decision or approval of any decision to create or proceed with advertising or promotional campaigns involving a JUNK FAX.

**Response to Interrogatory No. 1:**

Objections Based on Rule 33(a)(1). WLC cannot answer this interrogatory because Bay Hardware has served more than the 25 interrogatories permitted under Rule 33(a)(1) of the Federal Rules of Civil Procedure. Bay Hardware is only permitted to serve on WLC "25 written interrogatories, including all discrete interrogatories." *Id*. A subpart counts as a separate interrogatory, no matter how numbered, if it is not "logically or factually subsumed within and necessarily related to the primary question." *Oceanovac, Inc. v. Dole Food Co., Inc.*, 2016 WL 7155783, at *1 (C.D. Cal. Mar. 16, 2016). Under this standard, this interrogatory counts as 2 interrogatories because it covers 2 discrete topics that are not necessarily related: the "creation" of campaigns and "proceeding" with them.

Further, because Bay Hardware has served in excess of 25 interrogatories, WLC may not pick and choose which to answer and must refrain from answering any. To preserve an objection based on the 25 interrogatory limit, the responding party must refrain from selectively answering some or all of the served interrogatories. *E.g., Lewis v. Donley*, 2009 WL 2176123, at *3 (D. Alaska July 22, 2009) ("A party who selectively responds to some interrogatories may be found to have waived its objection to the number of interrogatories."); *Nix v. Holbrook*, 2015 WL 733778, at *4 (D.S.C. Feb. 20, 2015); *Allahverdi v. Regents of Univ. of New Mexico*, 228 F.R.D. 696, 698 (D.N.M. 2005) ("When a party believes that another party has asked too many interrogatories, the party to which the discovery has be

- 3 -

propounded should object to all interrogatories or file a motion for protective order. The responding party should not answer some interrogatories and object to the ones to which it does not want to respond. By answering some and not answering others, the Defendants waived this objection."); Wright & Miller, *Fed. Pract. & Proc.* § 2168.1 (3d ed.) ("It has been held that, if a party believes that the numerical limitation has been exceeded, it waives the objection if it selectively answers some of the interrogatories and objects on this ground to the rest. This seems a sensible rule, for otherwise the responding party could 'pick and choose' the questions it wanted to answer."). Based on this objection, WLC cannot answer this interrogatory.

Objections Based on Bay Hardware's Definition of Junk Fax. This interrogatory is vague, ambiguous and overbroad because of Bay Hardware's definition of "junk fax." First, the definition of junk fax is vague because it seeks documents "similar to the Craftwood Faxes," without identifying the respect(s) in which the requested documents should be similar. Second, the definition is vague and ambiguous in seeking information from "any Wurth Louis [and] Company brand" because there is no other "Wurth Louis [and] Company brand" besides the named defendant. Finally, the definition is overbroad in that it seeks documents that "discuss" or "describe" "products or services" "offered by Wurth." This aspect of the definition makes it overbroad because it would include faxes, such as invoices, orders, customer questions, WLC's questions to suppliers, advertising by suppliers to WLC, etc.—none of which are relevant to the subject matter of this lawsuit. Fourth, the term is overbroad in that seeks information and documents related to faxes other than those sent to Bay Hardware. These faxes are not relevant to Bay Hardware's individual or class claims.

Further the term "junk fax" is unnecessarily pejorative and objectionable. WLC has never sent a "junk" fax. WLC therefore objects to these interrogatories or their answers ever being shown to a jury under Rule 403 of the Federal Rules of Evidence because the phrase "junk fax" has no probative value and is highly

- 4 -

1  prejudicial to WLC.

2  **Supplemental Response to Interrogatory No. 1:**

3      Subject to the foregoing objections (and incorporating here the Preliminary

4  Statement, as though fully set forth herein), during the period in which Craftwood

5  received the facsimiles attached to the Complaint, WLC states the following

6  individuals were involved in, participated in, or had any role in any decision or

7  approval of any decision to create or proceed with advertising or promotional

8  campaigns which possibly involved the sending of facsimile(s):

9      • Tom Mauss, Chief Executive Officer, Wurth Louis and Company

10      • Ed McGraw, Chief Financial Officer, Wurth Louis and Company

11      • Robert Berrett, Director of Sales (and in charge of marketing during the

12  relevant time period), Wurth Louis and Company

13      • Teresa Minehart, Marketing Services Manager, Wurth Louis and

14  Company (former)

15      The above individuals may be contacted through counsel for WLC.

16  **Interrogatory No. 2:**

17      For each JUNK FAX, identify (by name, last known home and business

18  address and telephone number, job title and by whom employed at the time) each

19  PERSON who was involved in, participated in, or had any role in any decision or

20  approval of any decision, to proceed with its transmission.

21  **Response to Interrogatory No. 2:**

22      Objections Based on Rule 33(a)(1). WLC cannot answer this interrogatory

23  because Bay Hardware has served more than the 25 interrogatories permitted under

24  Rule 33(a)(1) of the Federal Rules of Civil Procedure. Bay Hardware is only

25  permitted to serve on WLC "25 written interrogatories, including all discrete

26  interrogatories." *Id.*

27      Further, because Bay Hardware has served in excess of 25 interrogatories,

28  WLC may not pick and choose which to answer and must refrain from answering

- 5 -

any. To preserve an objection based on the 25 interrogatory limit, the responding party must refrain from selectively answering some or all of the served interrogatories. *E.g.*, *Lewis v. Donley*, 2009 WL 2176123, at \*3 (D. Alaska July 22, 2009) ("A party who selectively responds to some interrogatories may be found to have waived its objection to the number of interrogatories."); *Nix v. Holbrook*, 2015 WL 733778, at \*4 (D.S.C. Feb. 20, 2015); *Allahverdi v. Regents of Univ. of New Mexico*, 228 F.R.D. 696, 698 (D.N.M. 2005) ("When a party believes that another party has asked too many interrogatories, the party to which the discovery has be propounded should object to all interrogatories or file a motion for protective order. The responding party should not answer some interrogatories and object to the ones to which it does not want to respond. By answering some and not answering others, the Defendants waived this objection."); Wright & Miller, *Fed. Pract. & Proc. §* 2168.1 (3d ed.) ("It has been held that, if a party believes that the numerical limitation has been exceeded, it waives the objection if it selectively answers some of the interrogatories and objects on this ground to the rest. This seems a sensible rule, for otherwise the responding party could 'pick and choose' the questions it wanted to answer."). Based on this objection, WLC cannot answer this interrogatory.

<u>Objections Based on Bay Hardware's Definition of Junk Fax</u>. This interrogatory is vague, ambiguous and overbroad because of Bay Hardware's definition of "junk fax." First, the definition of junk fax is vague because it seeks documents "similar to the Craftwood Faxes," without identifying the respect(s) in which the requested documents should be similar. Second, the definition is vague and ambiguous in seeking information from "any Wurth Louis [and] Company brand" because there is no other "Wurth Louis [and] Company brand" besides the named defendant. Finally, the definition is overbroad in that it seeks documents that "discuss" or "describe" "products or services" "offered by Wurth." This aspect of the definition makes it overbroad because it would include faxes, such as invoices, orders, customer questions, WLC's questions to suppliers, advertising by suppliers

- 6 -

to WLC, etc.—none of which are relevant to the subject matter of this lawsuit. Fourth, the term is overbroad in that seeks information and documents related to promotional faxes other than those sent to Bay Hardware. These faxes are not relevant to Bay Hardware's individual or class claims.

Further the term "junk fax" is unnecessarily pejorative and objectionable. WLC has never sent a "junk fax." WLC therefore objects to these interrogatories or their answers ever being shown to a jury under Rule 403 of the Federal Rules of Evidence because the phrase "junk fax" has no probative value and is highly prejudicial to WLC.

**Supplemental Response to Interrogatory No. 2:**

Subject to the foregoing objections (and incorporating here its Preliminary Statement, as though fully set forth herein), WLC incorporates its supplemental response to Interrogatory No. 1 as and for its supplemental response to Interrogatory No. 2.

**Interrogatory No. 3:**

For each JUNK FAX, explain each step in the process of the sending of the JUNK FAX, including the composition or creation of the content, format, lay-out, artwork, opt-out notice, and header information of the JUNK FAX, the selection of the LIST to be used to send the JUNK FAX, and the transmission of the JUNK FAX.

**Response to Interrogatory No. 3:**

Objections Based on Rule 33(a)(1). WLC cannot answer this interrogatory because Bay Hardware has served more than the 25 interrogatories permitted under Rule 33(a)(1) of the Federal Rules of Civil Procedure. Bay Hardware is only permitted to serve on WLC "25 written interrogatories, including all discrete interrogatories." *Id.* A subpart counts as a separate interrogatory, no matter how numbered, if it is not "logically or factually subsumed within and necessarily related to the primary question." *Oceanovac, Inc. v. Dole Food Co., Inc.*, 2016 WL 7155783, at *1 (C.D. Cal. Mar. 16, 2016). Under this standard, this interrogatory

counts as 30 interrogatories because it covers 30 discrete topics that are not necessarily related. The definition of "junk fax" is overbroad unless properly limited to faxes sent to Bay Hardware, of which there are 10 attached to the complaint. For each of those 10 distinct faxes, some sent years apart, this interrogatory asks 3 distinct questions—one about its content, one about the selection of recipients, and one about how the fax was sent.

Further, because Bay Hardware has served in excess of 25 interrogatories, WLC may not pick and choose which to answer and must refrain from answering any. To preserve an objection based on the 25 interrogatory limit, the responding party must refrain from selectively answering some or all of the served interrogatories. *E.g., Lewis v. Donley*, 2009 WL 2176123, at *3 (D. Alaska July 22, 2009) ("A party who selectively responds to some interrogatories may be found to have waived its objection to the number of interrogatories."); *Nix v. Holbrook*, 2015 WL 733778, at *4 (D.S.C. Feb. 20, 2015); *Allahverdi v. Regents of Univ. of New Mexico*, 228 F.R.D. 696, 698 (D.N.M. 2005) ("When a party believes that another party has asked too many interrogatories, the party to which the discovery has be propounded should object to all interrogatories or file a motion for protective order. The responding party should not answer some interrogatories and object to the ones to which it does not want to respond. By answering some and not answering others, the Defendants waived this objection."); Wright & Miller, *Fed. Pract. & Proc.* § 2168.1 (3d ed.) ("It has been held that, if a party believes that the numerical limitation has been exceeded, it waives the objection if it selectively answers some of the interrogatories and objects on this ground to the rest. This seems a sensible rule, for otherwise the responding party could 'pick and choose' the questions it wanted to answer."). Based on this objection, WLC cannot answer this interrogatory.

<u>Objections Based on Bay Hardware's Definition of Junk Fax</u>. This interrogatory is vague, ambiguous and overbroad because of Bay Hardware's definition of "junk fax." First, the definition of junk fax is vague because it seeks

documents "similar to the Craftwood Faxes," without identifying the respect(s) in which the requested documents should be similar. Second, the definition is vague and ambiguous in seeking information from "any Wurth Louis [and] Company brand" because there is no other "Wurth Louis [and] Company brand" besides the named defendant. Finally, the definition is overbroad in that it seeks documents that "discuss" or "describe" "products or services" "offered by Wurth." This aspect of the definition makes it overbroad because it would include faxes, such as invoices, orders, customer questions, WLC's questions to suppliers, advertising by suppliers to WLC, etc.—none of which are relevant to the subject matter of this lawsuit. Fourth, the term is overbroad in that seeks information and documents related to promotional faxes other than those sent to Bay Hardware. These faxes are not relevant to Bay Hardware's individual or class claims.

Further the term "junk fax" is unnecessarily pejorative and objectionable. WLC has never sent a "junk" fax. WLC therefore objects to these interrogatories or their answers ever being shown to a jury under Rule 403 of the Federal Rules of Evidence because the phrase "junk fax" has no probative value and is highly prejudicial to WLC.

**Supplemental Response to Interrogatory No. 3:**

Subject to the foregoing objections (and incorporating here its Preliminary Statement, as though fully set forth herein), WLC responds that the following process was used when informational pieces were composed, created and distributed, including (but not limited to) via facsimile:

1.    When WLC faxed promotional product information to customers, the customers consented. Such information was often sent at a customer's specific request.

2.    When WLC faxed to multiple customers information about a product or promotion, WLC's marketing manager specifically selected which customers should receive the information based on WLC's knowledge about those customers,

including their location, how they use WLC's products, and what products they purchased in the past. Other customers who did not meet the criteria could have been intentionally excluded.

3.    For example, WLC's marketing manager specifically selected the facsimiles attached to Plaintiff's Complaint for Craftwood based on specific criteria, including the type of business Craftwood is, the products it sells, and where it is located.

4.    The criteria the WLC marketing head used to determine to whom to send promotional information about products or promotions varied and included (among other things): (a) location of customer, (b) size of customer, (c) customer purchase history, (d) type of customer, and (e) products used by customer in its business. Based on these and other criteria, the WLC marketing manager assembled a targeted group of potential recipients from a master list of customers who had provided consent to WLC to receive such information.

5.    When WLC sent facsimiles to multiple entities, it relied on a third-party facsimile sender called WestFax to send the faxes. WLC has no transmission data for any of the faxes it sent.

6.    WLC's marketing department would create the informational piece. If the piece was not going to be sent via facsimile, it would not contain an opt-out notice at the bottom. If it were intended to be faxed, an opt-out notice would be added. WLC does not know who originally drafted the opt-out notice. Sometimes the same pieces were distributed via facsimile and other means.

7.    After the marketing head created the targeted list, a member of the marketing department would then upload the piece and a list to the WestFax online platform so that WestFax could transmit the piece to the customers on the list. WestFax automatically excluded any entity who had previously requested exclusion from receiving information via facsimile. WestFax also did not transmit faxes to facsimile numbers that were no longer valid or to which a successful transmission

could not be made.

8.     WLC maintained a separate list of customers who preferred not to be contacted by fax. WestFax would automatically exclude these customers when transmitting to a targeted list.

**Interrogatory No. 4:**

Separately for each JUNK FAX, identify (by name, last known home and business address and telephone number, job title and by whom employed at the time) each PERSON who participated in or was involved in the creation and sending of the JUNK FAX, and describe the nature of that PERSON'S participation or involvement.

**Response to Interrogatory No. 4:**

Objections Based on Rule 33(a)(1). WLC cannot answer this interrogatory because Bay Hardware has served more than the 25 interrogatories permitted under Rule 33(a)(1) of the Federal Rules of Civil Procedure. Bay Hardware is only permitted to serve on WLC "25 written interrogatories, including all discrete interrogatories." *Id.* A subpart counts as a separate interrogatory, no matter how numbered, if it is not "logically or factually subsumed within and necessarily related to the primary question." *Oceanovac, Inc. v. Dole Food Co., Inc.*, 2016 WL 7155783, at *1 (C.D. Cal. Mar. 16, 2016). Under this standard, this interrogatory counts as 20 interrogatories because it covers 20 discrete topics that are not necessarily related. The definition of "junk fax" is overbroad unless properly limited to faxes sent to Bay Hardware, of which there are 10 attached to the complaint. For each of those 10 distinct faxes, some sent years apart, this interrogatory asks 2 distinct questions—one about who created the fax and one about who sent it.

Further, because Bay Hardware has served in excess of 25 interrogatories, WLC may not pick and choose which to answer and must refrain from answering any. To preserve an objection based on the 25 interrogatory limit, the responding party must refrain from selectively answering some or all of the served

- 11 -

interrogatories. *E.g.*, *Lewis v. Donley*, 2009 WL 2176123, at *3 (D. Alaska July 22, 2009) ("A party who selectively responds to some interrogatories may be found to have waived its objection to the number of interrogatories."); *Nix v. Holbrook*, 2015 WL 733778, at *4 (D.S.C. Feb. 20, 2015); *Allahverdi v. Regents of Univ. of New Mexico*, 228 F.R.D. 696, 698 (D.N.M. 2005) ("When a party believes that another party has asked too many interrogatories, the party to which the discovery has be propounded should object to all interrogatories or file a motion for protective order. The responding party should not answer some interrogatories and object to the ones to which it does not want to respond. By answering some and not answering others, the Defendants waived this objection."); Wright & Miller, *Fed. Pract. & Proc.* § 2168.1 (3d ed.) ("It has been held that, if a party believes that the numerical limitation has been exceeded, it waives the objection if it selectively answers some of the interrogatories and objects on this ground to the rest. This seems a sensible rule, for otherwise the responding party could 'pick and choose' the questions it wanted to answer."). Based on this objection, WLC cannot answer this interrogatory.

Objections Based on Bay Hardware's Definition of Junk Fax. This interrogatory is vague, ambiguous and overbroad because of Bay Hardware's definition of "junk fax." First, the definition of junk fax is vague because it seeks documents "similar to the Craftwood Faxes," without identifying the respect(s) in which the requested documents should be similar. Second, the definition is vague and ambiguous in seeking information from "any Wurth Louis [and] Company brand" because there is no other "Wurth Louis [and] Company brand" besides the named defendant. Finally, the definition is overbroad in that it seeks documents that "discuss" or "describe" "products or services" "offered by Wurth." This aspect of the definition makes it overbroad because it would include faxes, such as invoices, orders, customer questions, WLC's questions to suppliers, advertising by suppliers to WLC, etc.—none of which are relevant to the subject matter of this lawsuit. Fourth, the term is overbroad in that seeks information and documents related to

1  promotional faxes other than those sent to Bay Hardware. These faxes are not
2  relevant to Bay Hardware's individual or class claims.

3      Further the term "junk fax" is unnecessarily pejorative and objectionable.
4  WLC has never sent a "junk" fax. WLC therefore objects to these interrogatories or
5  their answers ever being shown to a jury under Rule 403 of the Federal Rules of
6  Evidence because the phrase "junk fax" has no probative value and is highly
7  prejudicial to WLC.

8  **Supplemental Response to Interrogatory No. 4:**

9      Subject to the foregoing objections (and incorporating here its Preliminary
10  Statement, as though fully set forth herein), WLC states that the following persons
11  were involved in the creation of informational pieces, some of which were sent via
12  facsimile:

13      •   Theresa Minehart designed informational pieces and operated the
14  WestFax platform. *See also* WLC's supplemental response interrogatory no. 1.

15      •   Chris Nichols designs informational pieces. He is a Marketing
16  Communications Specialist employed by WLC. He may be contacted through
17  counsel for WLC.

18      •   Robert Berrett requested that informational pieces be created and
19  identified the entities to whom the facsimiles were sent based on targeted criteria.
20  *See also* supplemental response to Interrogatory No. 1.

21  **Interrogatory No. 5:**

22      Separately for each JUNK FAX, describe how and when the LISTS used to
23  send the JUNK FAX were compiled.

24  **Response to Interrogatory No. 5:**

25      Objections Based on Rule 33(a)(1). WLC cannot answer this interrogatory
26  because Bay Hardware has served more than the 25 interrogatories permitted under
27  Rule 33(a)(1) of the Federal Rules of Civil Procedure. Bay Hardware is only
28  permitted to serve on WLC "25 written interrogatories, including all discrete

WLC'S SUPPLEMENTAL RESPONSES TO CRAFT WOOD'S FIRST SET OF INTERROGATORIES

interrogatories." *Id*. A subpart counts as a separate interrogatory, no matter how numbered, if it is not "logically or factually subsumed within and necessarily related to the primary question." *Oceanovac, Inc. v. Dole Food Co., Inc.*, 2016 WL 7155783, at *1 (C.D. Cal. Mar. 16, 2016). Under this standard, this interrogatory counts as 10 interrogatories because it covers 10 discrete topics that are not necessarily related. The definition of "junk fax" is overbroad unless properly limited to faxes sent to Bay Hardware, of which there are 10 attached to the complaint. The interrogatory asks a distinct question for each of those 10 distinct faxes.

Further, because Bay Hardware has served in excess of 25 interrogatories, WLC may not pick and choose which to answer and must refrain from answering any. To preserve an objection based on the 25 interrogatory limit, the responding party must refrain from selectively answering some or all of the served interrogatories. *E.g.*, *Lewis v. Donley*, 2009 WL 2176123, at *3 (D. Alaska July 22, 2009) ("A party who selectively responds to some interrogatories may be found to have waived its objection to the number of interrogatories."); *Nix v. Holbrook*, 2015 WL 733778, at *4 (D.S.C. Feb. 20, 2015); *Allahverdi v. Regents of Univ. of New Mexico*, 228 F.R.D. 696, 698 (D.N.M. 2005) ("When a party believes that another party has asked too many interrogatories, the party to which the discovery has be propounded should object to all interrogatories or file a motion for protective order. The responding party should not answer some interrogatories and object to the ones to which it does not want to respond. By answering some and not answering others, the Defendants waived this objection."); Wright & Miller, *Fed. Pract. & Proc.* § 2168.1 (3d ed.) ("It has been held that, if a party believes that the numerical limitation has been exceeded, it waives the objection if it selectively answers some of the interrogatories and objects on this ground to the rest. This seems a sensible rule, for otherwise the responding party could 'pick and choose' the questions it wanted to answer."). Based on this objection, WLC cannot answer this interrogatory.

<u>Objections Based on Bay Hardware's Definition of Junk Fax</u>. This

- 14 -

interrogatory is vague, ambiguous and overbroad because of Bay Hardware's definition of "junk fax." First, the definition of junk fax is vague because it seeks documents "similar to the Craftwood Faxes," without identifying the respect(s) in which the requested documents should be similar. Second, the definition is vague and ambiguous in seeking information from "any Wurth Louis [and] Company brand" because there is no other "Wurth Louis [and] Company brand" besides the named defendant. Finally, the definition is overbroad in that it seeks documents that "discuss" or "describe" "products or services" "offered by Wurth." This aspect of the definition makes it overbroad because it would include faxes, such as invoices, orders, customer questions, WLC's questions to suppliers, advertising by suppliers to WLC, etc.—none of which are relevant to the subject matter of this lawsuit. Fourth, the term is overbroad in that seeks information and documents related to promotional faxes other than those sent to Bay Hardware. These faxes are not relevant to Bay Hardware's individual or class claims.

Further the term "junk fax" is unnecessarily pejorative and objectionable. WLC has never sent a "junk" fax. WLC therefore objects to these interrogatories or their answers ever being shown to a jury under Rule 403 of the Federal Rules of Evidence because the phrase "junk fax" has no probative value and is highly prejudicial to WLC.

Other Objections. As phrased this interrogatory is unduly burdensome because it seeks a lengthy narrative for every single facsimile WLC has ever sent about its products and services.

**Supplemental Response to Interrogatory No. 5:**

Subject to the foregoing objections (and incorporating here its Preliminary Statement, as though fully set forth herein), WLC incorporates its supplemental response to Interrogatory No. 3 as and for its supplemental response to Interrogatory No. 5.

//

- 15 -

**Interrogatory No. 6:**

Separately for each JUNK FAX, state how YOU obtained the facsimile telephone numbers to which the JUNK FAX was sent or attempted to be sent.

**Response to Interrogatory No. 6:**

Objections Based on Rule 33(a)(1). WLC cannot answer this interrogatory because Bay Hardware has served more than the 25 interrogatories permitted under Rule 33(a)(1) of the Federal Rules of Civil Procedure. Bay Hardware is only permitted to serve on WLC "25 written interrogatories, including all discrete interrogatories." *Id*. A subpart counts as a separate interrogatory, no matter how numbered, if it is not "logically or factually subsumed within and necessarily related to the primary question." *Oceanovac, Inc. v. Dole Food Co., Inc.*, 2016 WL 7155783, at *1 (C.D. Cal. Mar. 16, 2016). Under this standard, this interrogatory counts as 10 interrogatories because it covers 10 discrete topics that are not necessarily related. The definition of "junk fax" is overbroad unless properly limited to faxes sent to Bay Hardware, of which there are 10 attached to the complaint. For each of those 10 distinct faxes, some sent years apart, this interrogatory asks a distinct question.

Further, because Bay Hardware has served in excess of 25 interrogatories, WLC may not pick and choose which to answer and must refrain from answering any. To preserve an objection based on the 25 interrogatory limit, the responding party must refrain from selectively answering some or all of the served interrogatories. *E.g.*, *Lewis v. Donley*, 2009 WL 2176123, at *3 (D. Alaska July 22, 2009) ("A party who selectively responds to some interrogatories may be found to have waived its objection to the number of interrogatories."); *Nix v. Holbrook*, 2015 WL 733778, at *4 (D.S.C. Feb. 20, 2015); *Allahverdi v. Regents of Univ. of New Mexico*, 228 F.R.D. 696, 698 (D.N.M. 2005) ("When a party believes that another party has asked too many interrogatories, the party to which the discovery has be propounded should object to all interrogatories or file a motion for protective order.

- 16 -

1   The responding party should not answer some interrogatories and object to the ones
2   to which it does not want to respond. By answering some and not answering others,
3   the Defendants waived this objection."); Wright & Miller, *Fed. Pract. & Proc.* §
4   2168.1 (3d ed.) ("It has been held that, if a party believes that the numerical
5   limitation has been exceeded, it waives the objection if it selectively answers some
6   of the interrogatories and objects on this ground to the rest. This seems a sensible
7   rule, for otherwise the responding party could 'pick and choose' the questions it
8   wanted to answer."). Based on this objection, WLC cannot answer this interrogatory.

9        <u>Objections Based on Bay Hardware's Definition of Junk Fax</u>. This
10  interrogatory is vague, ambiguous and overbroad because of Bay Hardware's
11  definition of "junk fax." First, the definition of junk fax is vague because it seeks
12  documents "similar to the Craftwood Faxes," without identifying the respect(s) in
13  which the requested documents should be similar. Second, the definition is vague
14  and ambiguous in seeking information from "any Wurth Louis [and] Company
15  brand" because there is no other "Wurth Louis [and] Company brand" besides the
16  named defendant. Finally, the definition is overbroad in that it seeks documents that
17  "discuss" or "describe" "products or services" "offered by Wurth." This aspect of
18  the definition makes it overbroad because it would include faxes, such as invoices,
19  orders, customer questions, WLC's questions to suppliers, advertising by suppliers
20  to WLC, etc.—none of which are relevant to the subject matter of this lawsuit.
21  Fourth, the term is overbroad in that seeks information and documents related to
22  promotional faxes other than those sent to Bay Hardware. These faxes are not
23  relevant to Bay Hardware's individual or class claims.

24        Further the term "junk fax" is unnecessarily pejorative and objectionable.
25  WLC has never sent a "junk" fax. WLC therefore objects to these interrogatories or
26  their answers ever being shown to a jury under Rule 403 of the Federal Rules of
27  Evidence because the phrase "junk fax" has no probative value and is highly
28  prejudicial to WLC.

WLC'S SUPPLEMENTAL RESPONSES TO CRAFTWOOD'S FIRST SET OF INTERROGATORIES
EXHIBIT D, PAGE 27

1        Other Objection. As phrased, this interrogatory is unduly burdensome because

2    to answer it WLC would need to separately investigate each fax number.

3    **Supplemental Response to Interrogatory No. 6:**

4        Subject to the foregoing objections (and incorporating here its Preliminary

5    Statement, as though fully set forth herein), WLC responds it obtained the facsimile

6    telephone numbers to which informational pieces were or might have been sent

7    directly from the recipients themselves (who are WLC customers) and in no other

8    way.  The use of facsimile machines has historically been very common among

9    WLC's customers and in the woodworking industry in general.  Most customers no

10   longer use fax to communicate, although many do still fax purchase orders and

11   request their invoices be sent to them via fax.  When customers want product

12   information, they usually request it electronically via e-mail (although some

13   customers still utilize fax machines for that purpose).

14   **Interrogatory No. 7:**

15       Separately for each JUNK FAX, identify (by name, last known home and

16   business address and telephone number and relationship to YOU) each SENDER.

17   **Response to Interrogatory No. 7:**

18       Objections Based on Rule 33(a)(1). WLC cannot answer this interrogatory

19   because Bay Hardware has served more than the 25 interrogatories permitted under

20   Rule 33(a)(1) of the Federal Rules of Civil Procedure. Bay Hardware is only

21   permitted to serve on WLC "25 written interrogatories, including all discrete

22   interrogatories." *Id*. A subpart counts as a separate interrogatory, no matter how

23   numbered, if it is not "logically or factually subsumed within and necessarily related

24   to the primary question." *Oceanovac, Inc. v. Dole Food Co., Inc.*, 2016 WL

25   7155783, at *1 (C.D. Cal. Mar. 16, 2016). Under this standard, this interrogatory

26   counts as 10 interrogatories because it covers 10 discrete topics that are not

27   necessarily related. The definition of "junk fax" is overbroad unless properly limited

28   to faxes sent to Bay Hardware, of which there are 10 attached to the complaint. For

1   each of those 10 distinct faxes, some sent years apart, this interrogatory asks a
2   distinct question.

3          Further, because Bay Hardware has served in excess of 25 interrogatories,
4   WLC may not pick and choose which to answer and must refrain from answering
5   any. To preserve an objection based on the 25 interrogatory limit, the responding
6   party must refrain from selectively answering some or all of the served
7   interrogatories. *E.g.*, *Lewis v. Donley*, 2009 WL 2176123, at *3 (D. Alaska July 22,
8   2009) ("A party who selectively responds to some interrogatories may be found to
9   have waived its objection to the number of interrogatories."); *Nix v. Holbrook*, 2015
10  WL 733778, at *4 (D.S.C. Feb. 20, 2015); *Allahverdi v. Regents of Univ. of New*
11  *Mexico*, 228 F.R.D. 696, 698 (D.N.M. 2005) ("When a party believes that another
12  party has asked too many interrogatories, the party to which the discovery has be
13  propounded should object to all interrogatories or file a motion for protective order.
14  The responding party should not answer some interrogatories and object to the ones
15  to which it does not want to respond. By answering some and not answering others,
16  the Defendants waived this objection."); Wright & Miller, *Fed. Pract. & Proc.* §
17  2168.1 (3d ed.) ("It has been held that, if a party believes that the numerical
18  limitation has been exceeded, it waives the objection if it selectively answers some
19  of the interrogatories and objects on this ground to the rest. This seems a sensible
20  rule, for otherwise the responding party could 'pick and choose' the questions it
21  wanted to answer."). Based on this objection, WLC cannot answer this interrogatory.

22          <u>Objections Based on Bay Hardware's Definition of Junk Fax</u>. This
23  interrogatory is vague, ambiguous and overbroad because of Bay Hardware's
24  definition of "junk fax." First, the definition of junk fax is vague because it seeks
25  documents "similar to the Craftwood Faxes," without identifying the respect(s) in
26  which the requested documents should be similar. Second, the definition is vague
27  and ambiguous in seeking information from "any Wurth Louis [and] Company
28  brand" because there is no other "Wurth Louis [and] Company brand" besides the

named defendant. Finally, the definition is overbroad in that it seeks documents that "discuss" or "describe" "products or services" "offered by Wurth." This aspect of the definition makes it overbroad because it would include faxes, such as invoices, orders, customer questions, WLC's questions to suppliers, advertising by suppliers to WLC, etc.—none of which are relevant to the subject matter of this lawsuit. Fourth, the term is overbroad in that seeks information and documents related to promotional faxes other than those sent to Bay Hardware. These faxes are not relevant to Bay Hardware's individual or class claims.

Further the term "junk fax" is unnecessarily pejorative and objectionable. WLC has never sent a "junk" fax. WLC therefore objects to these interrogatories or their answers ever being shown to a jury under Rule 403 of the Federal Rules of Evidence because the phrase "junk fax" has no probative value and is highly prejudicial to WLC.

**Supplemental Response to Interrogatory No. 7:**

Subject to the foregoing objections (and incorporating here its Preliminary Statement, as though fully set forth herein), WLC responds it is the sender of informational pieces via facsimile to targeted lists of customers, all of whom voluntarily provided their facsimile numbers to WLC and consented to receive such faxes.

**Interrogatory No. 8:**

Separately for each JUNK FAX, identify each PERSON whom YOU contend provided PRIOR EXPRESS INVITATION OR PERMISSION to be sent the JUNK FAX.

**Response to Interrogatory No. 8:**

Objections Based on Rule 33(a)(1). WLC cannot answer this interrogatory because Bay Hardware has served more than the 25 interrogatories permitted under Rule 33(a)(1) of the Federal Rules of Civil Procedure. Bay Hardware is only permitted to serve on WLC "25 written interrogatories, including all discrete

- 20 -

1  interrogatories." *Id.* A subpart counts as a separate interrogatory, no matter how

2  numbered, if it is not "logically or factually subsumed within and necessarily related

3  to the primary question." *Oceanovac, Inc. v. Dole Food Co., Inc.*, 2016 WL

4  7155783, at *1 (C.D. Cal. Mar. 16, 2016). Under this standard, this interrogatory

5  counts as 10 interrogatories because it covers 10 discrete topics that are not

6  necessarily related. The definition of "junk fax" is overbroad unless properly limited

7  to faxes sent to Bay Hardware, of which there are 10 attached to the complaint. For

8  each of those 10 distinct faxes, some sent years apart, this interrogatory asks a

9  distinct question.

10         Further, because Bay Hardware has served in excess of 25 interrogatories,

11  WLC may not pick and choose which to answer and must refrain from answering

12  any. To preserve an objection based on the 25 interrogatory limit, the responding

13  party must refrain from selectively answering some or all of the served

14  interrogatories. *E.g.*, *Lewis v. Donley*, 2009 WL 2176123, at *3 (D. Alaska July 22,

15  2009) ("A party who selectively responds to some interrogatories may be found to

16  have waived its objection to the number of interrogatories."); *Nix v. Holbrook*, 2015

17  WL 733778, at *4 (D.S.C. Feb. 20, 2015); *Allahverdi v. Regents of Univ. of New*

18  *Mexico*, 228 F.R.D. 696, 698 (D.N.M. 2005) ("When a party believes that another

19  party has asked too many interrogatories, the party to which the discovery has be

20  propounded should object to all interrogatories or file a motion for protective order.

21  The responding party should not answer some interrogatories and object to the ones

22  to which it does not want to respond. By answering some and not answering others,

23  the Defendants waived this objection."); Wright & Miller, *Fed. Pract. & Proc.* §

24  2168.1 (3d ed.) ("It has been held that, if a party believes that the numerical

25  limitation has been exceeded, it waives the objection if it selectively answers some

26  of the interrogatories and objects on this ground to the rest. This seems a sensible

27  rule, for otherwise the responding party could 'pick and choose' the questions it

28  wanted to answer."). Based on this objection, WLC cannot answer this interrogatory.

- 21 -

1        <u>Objections Based on Bay Hardware's Definition of Junk Fax</u>. This

2 interrogatory is vague, ambiguous and overbroad because of Bay Hardware's

3 definition of "junk fax." First, the definition of junk fax is vague because it seeks

4 documents "similar to the Craftwood Faxes," without identifying the respect(s) in

5 which the requested documents should be similar.  Second, the definition is vague

6 and ambiguous in seeking information from "any Wurth Louis [and] Company

7 brand" because there is no other "Wurth Louis [and] Company brand" besides the

8 named defendant. Finally, the definition is overbroad in that it seeks documents that

9 "discuss" or "describe" "products or services" "offered by Wurth." This aspect of

10 the definition makes it overbroad because it would include faxes, such as invoices,

11 orders, customer questions, WLC's questions to suppliers, advertising by suppliers

12 to WLC, etc.—none of which are relevant to the subject matter of this lawsuit.

13 Fourth, the term is overbroad in that seeks information and documents related to

14 promotional faxes other than those sent to Bay Hardware. These faxes are not

15 relevant to Bay Hardware's individual or class claims.

16        Further the term "junk fax" is unnecessarily pejorative and objectionable.

17 WLC has never sent a "junk" fax. Wurth therefore objects to these interrogatories or

18 their answers ever being shown to a jury under Rule 403 of the Federal Rules of

19 Evidence because the phrase "junk fax" has no probative value and is highly

20 prejudicial to WLC.

21        <u>Other Objections</u>. This interrogatory is premature. WLC's investigation into

22 the number and identify of customers who requested fax advertising is ongoing.

23 **<u>Supplemental Response to Interrogatory No. 8</u>:**

24        Subject to the foregoing objections (and incorporating here its Preliminary

25 Statement, as though fully set forth herein), WLC responds that it believes that all

26 of its customers who received informational pieces via facsimile consented to

27 receive them, and that when any given customer revoked consent, WLC honored

28 that request and provided information to that customer by other means.

- 22 -

**Interrogatory No. 9:**

For each PERSON identified in response to Interrogatory No. 8, describe (including date, nature and content of) the communications by which such PERSON provided PRIOR EXPRESS INVITATION OR PERMISSION.

**Response to Interrogatory No. 9:**

Objections Based on Rule 33(a)(1). WLC cannot answer this interrogatory because Bay Hardware has served more than the 25 interrogatories permitted under Rule 33(a)(1) of the Federal Rules of Civil Procedure. Bay Hardware is only permitted to serve on WLC "25 written interrogatories, including all discrete interrogatories." *Id*. A subpart counts as a separate interrogatory, no matter how numbered, if it is not "logically or factually subsumed within and necessarily related to the primary question." *Oceanovac, Inc. v. Dole Food Co., Inc.*, 2016 WL 7155783, at *1 (C.D. Cal. Mar. 16, 2016). Under this standard, this interrogatory counts as 10 interrogatories because it covers 10 discrete topics that are not necessarily related. The definition of "junk fax" is overbroad unless properly limited to faxes sent to Bay Hardware, of which there are 10 attached to the complaint. For each of those 10 distinct faxes, some sent years apart, this interrogatory asks a distinct question.

Further, because Bay Hardware has served in excess of 25 interrogatories, WLC may not pick and choose which to answer and must refrain from answering any. To preserve an objection based on the 25 interrogatory limit, the responding party must refrain from selectively answering some or all of the served interrogatories. *E.g.*, *Lewis v. Donley*, 2009 WL 2176123, at *3 (D. Alaska July 22, 2009) ("A party who selectively responds to some interrogatories may be found to have waived its objection to the number of interrogatories."); *Nix v. Holbrook*, 2015 WL 733778, at *4 (D.S.C. Feb. 20, 2015); *Allahverdi v. Regents of Univ. of New Mexico*, 228 F.R.D. 696, 698 (D.N.M. 2005) ("When a party believes that another party has asked too many interrogatories, the party to which the discovery has be

- 23 -

propounded should object to all interrogatories or file a motion for protective order. The responding party should not answer some interrogatories and object to the ones to which it does not want to respond. By answering some and not answering others, the Defendants waived this objection."); Wright & Miller, *Fed. Pract. & Proc.* § 2168.1 (3d ed.) ("It has been held that, if a party believes that the numerical limitation has been exceeded, it waives the objection if it selectively answers some of the interrogatories and objects on this ground to the rest. This seems a sensible rule, for otherwise the responding party could 'pick and choose' the questions it wanted to answer."). Based on this objection, WLC cannot answer this interrogatory.

Objections Based on Bay Hardware's Definition of Junk Fax. This interrogatory is vague, ambiguous and overbroad because of Bay Hardware's definition of "junk fax." First, the definition of junk fax is vague because it seeks documents "similar to the Craftwood Faxes," without identifying the respect(s) in which the requested documents should be similar. Second, the definition is vague and ambiguous in seeking information from "any Wurth Louis [and] Company brand" because there is no other "Wurth Louis [and] Company brand" besides the named defendant. Finally, the definition is overbroad in that it seeks documents that "discuss" or "describe" "products or services" "offered by Wurth." This aspect of the definition makes it overbroad because it would include faxes, such as invoices, orders, customer questions, WLC's questions to suppliers, advertising by suppliers to WLC, etc.—none of which are relevant to the subject matter of this lawsuit. Fourth, the term is overbroad in that seeks information and documents related to promotional faxes other than those sent to Bay Hardware. These faxes are not relevant to Bay Hardware's individual or class claims.

Further the term "junk fax" is unnecessarily pejorative and objectionable. WLC has never sent a "junk" fax. WLC therefore objects to these interrogatories or their answers ever being shown to a jury under Rule 403 of the Federal Rules of Evidence because the phrase "junk fax" has no probative value and is highly

- 24 -

prejudicial to WLC.

Other Objections. This interrogatory is premature. WLC's investigation into the number and identify of customers who requested fax advertising is ongoing.

**Supplemental Response to Interrogatory No. 9:**

Subject to the foregoing objections (and incorporating here its Preliminary Statement, as though fully set forth herein), WLC responds that, in its industry and among its customers, it has long been usual and customary to communicate via facsimile. Further responding, customers provided consent to receive informational pieces (including via facsimile) in one or more of the following ways:

- Customers provide fax numbers to WLC on credit applications, sometimes on multiple occasions (*e.g.*, WLAC 117, WLAC 124), and in connection with those applications request promotional information be sent by facsimile;

- Customers provide fax numbers to WLC via communications transmitted via facsimile (*e.g.*, WLAC 99), and in connection with those communications request promotional information be sent via facsimile thereafter;

- Customers consent to receive promotional information via facsimile at industry trade shows and expos, including by completing the form produced as WLAC 2, 7;

- Customers consent to receive promotional information, including via facsimile, when they voluntarily sign up for promotions (e.g., WLAC 1, 2);

- Customers consent to receive promotional information, including via facsimile, by expressly requesting it from WLC's inside sales representatives and/or customer service representatives;

- Customers consent to receive promotional information, including via facsimile, by specifically requesting it from outside sales representatives;

- Customers provide facsimile numbers and also consent to receive promotional information when they update their contact information by fax, email, mail, or over the phone;

- • Customers consent to receive promotional information when they re-apply for credit;

- • Customers expressly call to request that WLC fax them promotional material;

- • Customers expressly request WLC fax them promotional information during sales visits to customer premises.

WLC may have occasionally sent an informational facsimile to individuals or businesses who expressed an interest in WLC's products (as by phoning the company or responding to a print or online promotion) and who expressly requested such information by fax but who never ultimately submitted a credit application or obtained a WLC customer number. In those instances, the prospective customers were never entered into WLC's customer database and therefore were never sent informational pieces via facsimile through WestFax.

Similarly, customers who previously consented to receive informational pieces via facsimile but who subsequently were removed from WLC's customer database subsequently thereafter never received further promotional material via facsimile by any means, including through Westfax.

**Interrogatory No. 10:**

Identify (by name, last known home and business address and telephone number, job title and by whom employed at the time) each PERSON with knowledge of any facts stated in response to Interrogatory No. 9.

**Response to Interrogatory No. 10:**

Objections Based on Rule 33(a)(1). WLC cannot answer this interrogatory because Bay Hardware has served more than the 25 interrogatories permitted under Rule 33(a)(1) of the Federal Rules of Civil Procedure. Bay Hardware is only permitted to serve on WLC "25 written interrogatories, including all discrete interrogatories." *Id.*

Further, because Bay Hardware has served in excess of 25 interrogatories,

- 26 -

WLC may not pick and choose which to answer and must refrain from answering any. To preserve an objection based on the 25 interrogatory limit, the responding party must refrain from selectively answering some or all of the served interrogatories. *E.g.*, *Lewis v. Donley*, 2009 WL 2176123, at *3 (D. Alaska July 22, 2009) ("A party who selectively responds to some interrogatories may be found to have waived its objection to the number of interrogatories."); *Nix v. Holbrook*, 2015 WL 733778, at *4 (D.S.C. Feb. 20, 2015); *Allahverdi v. Regents of Univ. of New Mexico*, 228 F.R.D. 696, 698 (D.N.M. 2005) ("When a party believes that another party has asked too many interrogatories, the party to which the discovery has be propounded should object to all interrogatories or file a motion for protective order. The responding party should not answer some interrogatories and object to the ones to which it does not want to respond. By answering some and not answering others, the Defendants waived this objection."); Wright & Miller, *Fed. Pract. & Proc.* § 2168.1 (3d ed.) ("It has been held that, if a party believes that the numerical limitation has been exceeded, it waives the objection if it selectively answers some of the interrogatories and objects on this ground to the rest. This seems a sensible rule, for otherwise the responding party could 'pick and choose' the questions it wanted to answer."). Based on this objection, WLC cannot answer this interrogatory.

    <u>Other Objections</u>. WLC incorporates its objections to the underlying interrogatory.

**Supplemental Response to Interrogatory No. 10:**

    Subject to the foregoing objections (and incorporating here its Preliminary Statement, as though fully set forth herein), WLC identifies the following individuals, all of whom can be contacted via WLC's counsel:

- Tom Mauss, Chief Executive Officer, WLC;
- Ed McGraw, Chief Financial Officer, WLC; and
- Robert Berrett, Director of Sales (and in charge of marketing during the relevant time period), WLC.

1  Investigation continues.

2  **Interrogatory No. 11:**

3      Separately for each JUNK FAX, identify (by name, facsimile telephone

4  number and last known business address and telephone number) each PERSON with

5  whom YOU contend YOU had an ESTABLISHED BUSINESS RELATIONSHIP

6  at the time the JUNK FAX was sent or attempted to be sent.

7  **Response to Interrogatory No. 11:**

8      Objections Based on Rule 33(a)(1). WLC cannot answer this interrogatory

9  because Bay Hardware has served more than the 25 interrogatories permitted under

10  Rule 33(a)(1) of the Federal Rules of Civil Procedure. Bay Hardware is only

11  permitted to serve on WLC "25 written interrogatories, including all discrete

12  interrogatories." *Id.* A subpart counts as a separate interrogatory, no matter how

13  numbered, if it is not "logically or factually subsumed within and necessarily related

14  to the primary question." *Oceanovac, Inc. v. Dole Food Co., Inc.*, 2016 WL

15  7155783, at *1 (C.D. Cal. Mar. 16, 2016). Under this standard, this interrogatory

16  counts as 10 interrogatories because it covers 10 discrete topics that are not

17  necessarily related. The definition of "junk fax" is overbroad unless properly limited

18  to faxes sent to Bay Hardware, of which there are 10 attached to the complaint. For

19  each of those 10 distinct faxes, some sent years apart, this interrogatory asks a

20  distinct question.

21      Further, because Bay Hardware has served in excess of 25 interrogatories,

22  WLC may not pick and choose which to answer and must refrain from answering

23  any. To preserve an objection based on the 25 interrogatory limit, the responding

24  party must refrain from selectively answering some or all of the served

25  interrogatories. *E.g.*, *Lewis v. Donley*, 2009 WL 2176123, at *3 (D. Alaska July 22,

26  2009) ("A party who selectively responds to some interrogatories may be found to

27  have waived its objection to the number of interrogatories."); *Nix v. Holbrook*, 2015

28  WL 733778, at *4 (D.S.C. Feb. 20, 2015); *Allahverdi v. Regents of Univ. of New*

*Mexico*, 228 F.R.D. 696, 698 (D.N.M. 2005) ("When a party believes that another party has asked too many interrogatories, the party to which the discovery has be propounded should object to all interrogatories or file a motion for protective order. The responding party should not answer some interrogatories and object to the ones to which it does not want to respond. By answering some and not answering others, the Defendants waived this objection."); Wright & Miller, *Fed. Pract. & Proc.* § 2168.1 (3d ed.) ("It has been held that, if a party believes that the numerical limitation has been exceeded, it waives the objection if it selectively answers some of the interrogatories and objects on this ground to the rest. This seems a sensible rule, for otherwise the responding party could 'pick and choose' the questions it wanted to answer."). Based on this objection, WLC cannot answer this interrogatory.

Objections Based on Bay Hardware's Definition of Junk Fax. This interrogatory is vague, ambiguous and overbroad because of Bay Hardware's definition of "junk fax." First, the definition of junk fax is vague because it seeks documents "similar to the Craftwood Faxes," without identifying the respect(s) in which the requested documents should be similar. Second, the definition is vague and ambiguous in seeking information from "any Wurth Louis [and] Company brand" because there is no other "Wurth Louis [and] Company brand" besides the named defendant. Finally, the definition is overbroad in that it seeks documents that "discuss" or "describe" "products or services" "offered by Wurth." This aspect of the definition makes it overbroad because it would include faxes, such as invoices, orders, customer questions, WLC's questions to suppliers, advertising by suppliers to WLC, etc.—none of which are relevant to the subject matter of this lawsuit. Fourth, the term is overbroad in that seeks information and documents related to promotional faxes other than those sent to Bay Hardware. These faxes are not relevant to Bay Hardware's individual or class claims.

Further the term "junk fax" is unnecessarily pejorative and objectionable. WLC has never sent a "junk" fax. WLC therefore objects to these interrogatories or

1  their answers ever being shown to a jury under Rule 403 of the Federal Rules of
2  Evidence because the phrase "junk fax" has no probative value and is highly
3  prejudicial to WLC.

4  **Supplemental Response to Interrogatory No. 11:**

5      Subject to the foregoing objections (and incorporating here its Preliminary
6  Statement, as though fully set forth herein), WLC incorporates its supplemental
7  responses to Interrogatory Nos. 6 and 7 as if fully set forth herein and affirmatively
8  states it has an established business relationship with every recipient of any
9  informational piece WLC caused to be sent via facsimile through WestFax because
10  all of them are WLC customers who completed credit applications and voluntarily
11  provided their fax numbers to WLC. Moreover, these same customers provided
12  express consent to receive promotional materials, including via facsimile.

13  **Interrogatory No. 12:**

14      For each PERSON identified in response to Interrogatory No. 11, state the
15  circumstances of how and when the ESTABLISHED BUSINESS RELATIONSHIP
16  was commenced.

17  **Response to Interrogatory No. 12:**

18      <u>Objections Based on Rule 33(a)(1)</u>. WLC cannot answer this interrogatory
19  because Bay Hardware has served more than the 25 interrogatories permitted under
20  Rule 33(a)(1) of the Federal Rules of Civil Procedure. Bay Hardware is only
21  permitted to serve on WLC "25 written interrogatories, including all discrete
22  interrogatories." *Id.*

23      Further, because Bay Hardware has served in excess of 25 interrogatories,
24  WLC may not pick and choose which to answer and must refrain from answering
25  any. To preserve an objection based on the 25 interrogatory limit, the responding
26  party must refrain from selectively answering some or all of the served
27  interrogatories. *E.g., Lewis v. Donley*, 2009 WL 2176123, at *3 (D. Alaska July 22,
28  2009) ("A party who selectively responds to some interrogatories may be found to

- 30 -

have waived its objection to the number of interrogatories."); *Nix v. Holbrook*, 2015 WL 733778, at *4 (D.S.C. Feb. 20, 2015); *Allahverdi v. Regents of Univ. of New Mexico*, 228 F.R.D. 696, 698 (D.N.M. 2005) ("When a party believes that another party has asked too many interrogatories, the party to which the discovery has be propounded should object to all interrogatories or file a motion for protective order. The responding party should not answer some interrogatories and object to the ones to which it does not want to respond. By answering some and not answering others, the Defendants waived this objection."); Wright & Miller, *Fed. Pract. & Proc.* § 2168.1 (3d ed.) ("It has been held that, if a party believes that the numerical limitation has been exceeded, it waives the objection if it selectively answers some of the interrogatories and objects on this ground to the rest. This seems a sensible rule, for otherwise the responding party could 'pick and choose' the questions it wanted to answer."). Based on this objection, WLC cannot answer this interrogatory.

Other Objections. WLC incorporates its objections to the underlying interrogatory.

**Supplemental Response to Interrogatory No. 12:**

Subject to the foregoing objections (and incorporating here its Preliminary Statement, as though fully set forth herein), WLC responds as follows:

WLC incorporates its supplemental response to Interrogatory No. 12 as and for its supplemental Interrogatory No. 12, and further states the following: WLC currently has over 25,000 active (purchasing) customers, some of which WLC has been conducting business with since the 1970s. Well over 23,000 of these customers have been active for more than a year, and well over 20,000 of these customers have been active for at least three years. Every WLC customer has at least one designated representative based on where that customer is located. Many other customers also have an outside sales representative that is assigned to that specific customer. WLC outside sales personnel visit their customers' businesses in person, talk with them by phone, and communicate with them by fax or other electronic mediums. These

1  representatives are not just salesmen, but are trained to and do provide advice based
2  on their expertise and experience with the products WLC sells and the woodworking
3  industry more generally.

4       Representatives consult with customers about WLC products and their general
5  woodworking needs. The relationships between WLC representatives and customers
6  often last years, even decades.

7       WLC internally categorizes its customers in a variety of ways. For example,
8  the lowest-volume, active customers are designated "S1" customers. WLC uses
9  different communication and promotional channels and efforts depending on the
10  customer's volume designation.   WLC also internally categorizes its customers
11  based on their type of business (wholesaler, manufacturer, or retailers), as well as
12  their locations.

13       WLC's primary business comes from long-term, one-on-one relationships
14  with hardware wholesalers and manufacturers who make things using wood and
15  other building supplies. Out of WLC's 25,000 active customers, only 479 are sub-
16  distributors (retailers).

17       Craftwood is one of the 479 retailer-customers. It has made only a handful of
18  purchases from WLC, and is therefore among customers in the S1 category. Out of
19  WLC's 479 retailer-customers, Craftwood is one of 225 who are also within the S1
20  volume category, and one of 117 without a personally-assigned outside sales
21  representative.

22  **Interrogatory No. 13:**

23       At the time each JUNK FAX was sent, identify (by name, last known home
24  and business address and telephone number, job title and by whom employed) each
25  PERSON who was primarily responsible for YOUR compliance or attempted
26  compliance with the TCPA.

27  **Response to Interrogatory No. 13:**

28       Objections Based on Rule 33(a)(1). WLC cannot answer this interrogatory

- 32 -

because Bay Hardware has served more than the 25 interrogatories permitted under Rule 33(a)(1) of the Federal Rules of Civil Procedure. Bay Hardware is only permitted to serve on WLC "25 written interrogatories, including all discrete interrogatories." *Id.* A subpart counts as a separate interrogatory, no matter how numbered, if it is not "logically or factually subsumed within and necessarily related to the primary question." *Oceanovac, Inc. v. Dole Food Co., Inc.*, 2016 WL 7155783, at *1 (C.D. Cal. Mar. 16, 2016). Under this standard, this interrogatory counts as 10 interrogatories because it covers 10 discrete topics that are not necessarily related. The definition of "junk fax" is overbroad unless properly limited to faxes sent to Bay Hardware, of which there are 10 attached to the complaint. For each of those 10 distinct faxes, some sent years apart, this interrogatory asks a distinct question.

Further, because Bay Hardware has served in excess of 25 interrogatories, WLC may not pick and choose which to answer and must refrain from answering any. To preserve an objection based on the 25 interrogatory limit, the responding party must refrain from selectively answering some or all of the served interrogatories. *E.g., Lewis v. Donley*, 2009 WL 2176123, at *3 (D. Alaska July 22, 2009) ("A party who selectively responds to some interrogatories may be found to have waived its objection to the number of interrogatories."); *Nix v. Holbrook*, 2015 WL 733778, at *4 (D.S.C. Feb. 20, 2015); *Allahverdi v. Regents of Univ. of New Mexico*, 228 F.R.D. 696, 698 (D.N.M. 2005) ("When a party believes that another party has asked too many interrogatories, the party to which the discovery has be propounded should object to all interrogatories or file a motion for protective order. The responding party should not answer some interrogatories and object to the ones to which it does not want to respond. By answering some and not answering others, the Defendants waived this objection."); Wright & Miller, *Fed. Pract. & Proc.* § 2168.1 (3d ed.) ("It has been held that, if a party believes that the numerical limitation has been exceeded, it waives the objection if it selectively answers some

of the interrogatories and objects on this ground to the rest. This seems a sensible rule, for otherwise the responding party could 'pick and choose' the questions it wanted to answer."). Based on this objection, WLC cannot answer this interrogatory.

Objections Based on Bay Hardware's Definition of Junk Fax. This interrogatory is vague, ambiguous and overbroad because of Bay Hardware's definition of "junk fax." First, the definition of junk fax is vague because it seeks documents "similar to the Craftwood Faxes," without identifying the respect(s) in which the requested documents should be similar. Second, the definition is vague and ambiguous in seeking information from "any Wurth Louis [and] Company brand" because there is no other "Wurth Louis [and] Company brand" besides the named defendant. Finally, the definition is overbroad in that it seeks documents that "discuss" or "describe" "products or services" "offered by Wurth." This aspect of the definition makes it overbroad because it would include faxes, such as invoices, orders, customer questions, WLC's questions to suppliers, advertising by suppliers to WLC, etc.—none of which are relevant to the subject matter of this lawsuit. Fourth, the term is overbroad in that seeks information and documents related to promotional faxes other than those sent to Bay Hardware. These faxes are not relevant to Bay Hardware's individual or class claims.

Further the term "junk fax" is unnecessarily pejorative and objectionable. WLC has never sent a "junk" fax. Wurth therefore objects to these interrogatories or their answers ever being shown to a jury under Rule 403 of the Federal Rules of Evidence because the phrase "junk fax" has no probative value and is highly prejudicial to WLC.

Other Objections. This interrogatory is vague as to what "primary" responsibility means.

**Supplemental Response to Interrogatory No. 13**:

Subject to the foregoing objections (and incorporating here its Preliminary Statement, as though fully set forth herein), WLC incorporates its supplemental

- 34 -

response to Interrogatories No. 9 and 12 as and for its supplemental response to Interrogatory No. 13.

**Interrogatory No. 14:**

State any and all policy changes, or any remedial, corrective or disciplinary measures taken by YOU or on YOUR behalf regarding the sending of facsimile transmissions after YOU received notice of this lawsuit.

**Response to Interrogatory No. 14:**

Objections Based on Rule 33(a)(1). Wurth cannot answer this interrogatory because Bay Hardware has served more than the 25 interrogatories permitted under Rule 33(a)(1) of the Federal Rules of Civil Procedure. Bay Hardware is only permitted to serve on WLC "25 written interrogatories, including all discrete interrogatories." *Id.*

Further, because Bay Hardware has served in excess of 25 interrogatories, WLC may not pick and choose which to answer and must refrain from answering any. To preserve an objection based on the 25 interrogatory limit, the responding party must refrain from selectively answering some or all of the served interrogatories. *E.g.*, *Lewis v. Donley*, 2009 WL 2176123, at *3 (D. Alaska July 22, 2009) ("A party who selectively responds to some interrogatories may be found to have waived its objection to the number of interrogatories."); *Nix v. Holbrook*, 2015 WL 733778, at *4 (D.S.C. Feb. 20, 2015); *Allahverdi v. Regents of Univ. of New Mexico*, 228 F.R.D. 696, 698 (D.N.M. 2005) ("When a party believes that another party has asked too many interrogatories, the party to which the discovery has been propounded should object to all interrogatories or file a motion for protective order. The responding party should not answer some interrogatories and object to the ones to which it does not want to respond. By answering some and not answering others, the Defendants waived this objection."); Wright & Miller, *Fed. Pract. & Proc.* § 2168.1 (3d ed.) ("It has been held that, if a party believes that the numerical limitation has been exceeded, it waives the objection if it selectively answers some

WLC'S SUPPLEMENTAL RESPONSES TO CRAFT WOOD'S FIRST SET OF INTERROGATORIES

EXHIBIT D, PAGE 45

of the interrogatories and objects on this ground to the rest. This seems a sensible rule, for otherwise the responding party could 'pick and choose' the questions it wanted to answer."). Based on this objection, WLC cannot answer this interrogatory.

Objections Based on Rule 407 of the Federal Rules of Evidence. The information sought by this interrogatory is not relevant or, if relevant at all, not sufficiently relevant for its discovery to be proportional because it seeks information that is inadmissible under Rule 407 of the Federal Rules of Evidence.

**Supplemental Response to Interrogatory No. 14:**

Subject to and incorporating here its Preliminary Statement, WLC answers it has undertaken no "policy changes, or any remedial, corrective or disciplinary measures" as a result of having received notice of this lawsuit, the lawsuit being utterly without merit. By way of further response, most customers no longer use fax to communicate, although many do still fax purchase orders and request their invoices be sent to them via fax. When customers want information about WLC's products, they usually request it electronically via e-mail (although some customers still utilize fax machines for that purpose). When customers request information by facsimile, WLC fulfills those requests.

**Interrogatory No. 15:**

If YOUR answer to any request for admission served concurrently with these interrogatories is anything other than an unqualified admission, state all facts YOU contend support your answer.

**Response to Interrogatory No. 15:**

Objections Based on Rule 33(a)(1). Wurth cannot answer this interrogatory because Bay Hardware has served more than the 25 interrogatories permitted under Rule 33(a)(1) of the Federal Rules of Civil Procedure. Bay Hardware is only permitted to serve on Wurth "25 written interrogatories, including all discrete interrogatories." *Id.* A subpart counts as a separate interrogatory, no matter how numbered, if it is not "logically or factually subsumed within and necessarily related

- 36 -

to the primary question." *Oceanovac, Inc. v. Dole Food Co., Inc.*, 2016 WL 7155783, at *1 (C.D. Cal. Mar. 16, 2016).

Under this standard, this interrogatory counts as 40 interrogatories because it covers 40 discrete topics, one for each request for admission in Bay Hardware's First Set of Requests for Admission. *See, e.g.*, *Hahn v. Rothman*, 2010 WL 11526734, at *2 (C.D. Cal. June 11, 2010) (finding that interrogatory seeking basis for answers to requests for admission should count against the 25 interrogatory limit as one interrogatory per discrete request for admission); *Safeco of Am. v. Rawstron*, 181 F.R.D. 441, 443 (C.D. Cal. 1998) (same).

Further, because Bay Hardware has served in excess of 25 interrogatories, Wurth may not pick and choose which to answer and must refrain from answering any. To preserve an objection based on the 25 interrogatory limit, the responding party must refrain from selectively answering some or all of the served interrogatories. *E.g.*, *Lewis v. Donley*, 2009 WL 2176123, at *3 (D. Alaska July 22, 2009) ("A party who selectively responds to some interrogatories may be found to have waived its objection to the number of interrogatories."); *Nix v. Holbrook*, 2015 WL 733778, at *4 (D.S.C. Feb. 20, 2015); *Allahverdi v. Regents of Univ. of New Mexico*, 228 F.R.D. 696, 698 (D.N.M. 2005) ("When a party believes that another party has asked too many interrogatories, the party to which the discovery has be propounded should object to all interrogatories or file a motion for protective order. The responding party should not answer some interrogatories and object to the ones to which it does not want to respond. By answering some and not answering others, the Defendants waived this objection."); Wright & Miller, *Fed. Pract. & Proc. §* 2168.1 (3d ed.) ("It has been held that, if a party believes that the numerical limitation has been exceeded, it waives the objection if it selectively answers some of the interrogatories and objects on this ground to the rest. This seems a sensible rule, for otherwise the responding party could 'pick and choose' the questions it wanted to answer."). Based on this objection, Wurth cannot answer this

1  interrogatory.

2      <u>Objections Based on Bay Hardware's Definition of Junk Fax</u>. This

3  interrogatory is vague, ambiguous and overbroad because of Bay Hardware's

4  definition of "junk fax." First, the definition of junk fax is vague because it seeks

5  documents "similar to the Craftwood Faxes," without identifying the respect(s) in

6  which the requested documents should be similar. Second, the definition is vague

7  and ambiguous in seeking information from "any Wurth Louis [and] Company

8  brand" because there is no other "Wurth Louis [and] Company brand" besides the

9  named defendant. Finally, the definition is overbroad in that it seeks documents that

10 "discuss" or "describe" "products or services" "offered by Wurth." This aspect of

11 the definition makes it overbroad because it would include faxes, such as invoices,

12 orders, customer questions, Wurth's questions to suppliers, advertising by suppliers

13 to Wurth, etc.—none of which are relevant to the subject matter of this lawsuit.

14 Fourth, the term is overbroad in that seeks information and documents related to

15 promotional faxes other than those sent to Bay Hardware. These faxes are not

16 relevant to Bay Hardware's individual or class claims.

17     Further the term "junk fax" is unnecessarily pejorative and objectionable.

18 Wurth has never sent a "junk" fax. Wurth therefore objects to these interrogatories

19 or their answers ever being shown to a jury under Rule 403 of the Federal Rules of

20 Evidence because the phrase "junk fax" has no probative value and is highly

21 prejudicial to Wurth.

22 **<u>Supplemental Response to Interrogatory No. 15</u>:**

23     Interrogatory no. 15 was withdrawn by letter dated November 10, 2017, and

24 therefore no response to this interrogatory is required or provided.

25

26 Dated: April 13, 2018                  Respectfully submitted,

27                                 SIDLEY AUSTIN LLP

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

/s/ Livia M. Kiser
Livia M. Kiser

Attorney for Defendant Wurth Louis and Company

WLC'S SUPPLEMENTAL RESPONSES TO CRAFT WOOD'S FIRST SET OF INTERROGATORIES

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### Certificate of Service

On April 13, 2018, I caused this document to be served on all ECF-registered counsel of record via e-mail under Rule 5(b)(2)(E) of the Federal Rules of Civil Procedure.

/s/ Livia M. Kiser