**EXHIBIT E**

1    **UNITED STATES DISTRICT COURT**

2    **CENTRAL DISTRICT OF CALIFORNIA**

3    **HONORABLE DAVID O. CARTER, JUDGE PRESIDING**

4                      - - - - - - -

5    CRAFTWOOD, II, INC.,                )        **<u>CERTIFIED</u>**
                                          )
6            Plaintiff,                   )
                                          )
7        vs.                             )  No. 8:17-CV-0606-DOC
                                          )     Item No. 2
8    WURTH LOUIS AND COMPANY, ET AL.,    )
                                          )
9            Defendant.                  )
     _____)

10

11

12

13              REPORTER'S TRANSCRIPT OF PROCEEDINGS

14                     Hearing on Motions

15                     Santa Ana, California

16                     Monday, April 9, 2018

17

18

19

20

21   Debbie Gale, CSR 9472, RPR, CCRR
     Federal Official Court Reporter
22   United States District Court
     411 West 4th Street, Room 1-053
23   Santa Ana, California 92701
     (714) 558-8141
24

25

**APPEARANCES OF COUNSEL:**

FOR PLAINTIFF CRAFTWOOD, II, INC.:
Charles Darryl Cordero
PAYNE & FEARS LLP
1100 Glendon Avenue
Suite 1250
Los Angeles, California 90024
310-689-1750
cdc@paynefears.com

Scott O. Luskin
PAYNE & FEARS LLP
1100 Glendon Avenue
Suite 1250
Los Angeles, California 90024
310-689-1750
sol@paynefears.com

FOR DEFENDANT WURTH LOUIS AND COMPANY, ET AL.:

Michael L. Mallow
SIDLEY AUSTIN LLP
555 West Fifth Street
Suite 4000
Los Angeles, California 90013
213-896-6666
mmallow@sidley.com

Livia M. Kiser
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
312-853-7000
lkiser@sidley.com

ALSO PRESENT:

Daniel F. Fears (not on docket)

8:17-CV-0606-DOC - 4/9/2018 - Item No. 2

3

| | | |
|---|---|---|
| 1 | **I N D E X** | |
| 2 | **PROCEEDINGS** | **PAGE** |
| 3 | Initial Remarks by the Court | 5 |
| 4 | Court's questions | 15 |
| 5 | Response by Mr. Mallow | 15 |
| 6 | Response by Mr. Cordero | 17 |
| 7 | Argument by Mr. Cordero | 19 |
| 8 | Argument by Mr. Mallow | 23 |
| 9 | Ruling of the Court | 26 |
| 10 | Response by Mr. Luskin | 29 |
| 11 | | |
| 12 | | |
| 13 | | |
| 14 | | |
| 15 | | |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |

8:17-CV-0606-DOC – 4/9/2018 – Item No. 2

4

|  |  |  |
|---|---|---|
| | 1 | **SANTA ANA, CALIFORNIA, MONDAY, APRIL 9, 2018** |
| | 2 | **Item No. 2** |
| | 3 | (8:31 a.m.) |
| | 4 | THE COURT:  Craftwood v. Louis Wurth *(verbatim)* |
| | 5 | and Company. |
| 08:31 | 6 | Well, Counsel, would you make your appearances.  I |
| | 7 | assume you're on behalf of the plaintiff, Craftwood; is that |
| | 8 | correct? |
| 08:31 | 9 | MR. CORDERO:  We are, Your Honor. |
| 08:31 | 10 | THE COURT:  Thank you. |
| 08:31 | 11 | Would you go ahead and make your appearances. |
| 08:31 | 12 | MR. CORDERO:  Certainly. |
| 08:31 | 13 | Good morning.  Darryl Cordero of Payne & Fears. |
| 08:31 | 14 | MR. LUSKIN:  Scott Luskin of Payne & Fears. |
| 08:31 | 15 | MR. FEARS:  Good morning, Your Honor.  Daniel |
| | 16 | Fears of Payne & Fears. |
| 08:31 | 17 | THE COURT:  Have you had any contact with the |
| | 18 | defense counsel? |
| 08:31 | 19 | MR. LUSKIN:  They're walking right in, Your Honor. |
| 08:31 | 20 | MS. KISER:  Hi, Judge Carter.  We were here |
| | 21 | earlier. |
| 08:31 | 22 | THE COURT:  Oh, my apologies.  You were so kind. |
| | 23 | You went outside on the sealed record. |
| 08:31 | 24 | MR. MALLOW:  Right, when Your Honor sealed the |
| | 25 | record. |

**Certified for Payne & Fears**
**Debbie Gale, CSR 9472, RPR, CCRR**
**Federal Official Court Reporter**

8:17-CV-0606-DOC - 4/9/2018 - Item No. 2

5

08:31   1          THE COURT:  I'm sorry.  Thank you for being so

2      courteous.

08:31   3          Would you make your appearances, please.

08:31   4          MR. MALLOW:  Sure, Your Honor.  Michael Mallow and

5      Liv Kiser, Sidley Austin, on behalf of Wurth Louis.

08:32   6              **INITIAL REMARKS BY THE COURT**

08:32   7          THE COURT:  The parties are before the Court to

8      discuss Wurth Louis and Company's motion for an order

9      disqualifying Payne & Fears as counsel for plaintiff

10      Craftwood, or, in the alternative, denying class

11      certification on the grounds of inadequacy of counsel.

08:32   12         This putative class action arises out of claims

13      that Defendant Wurth violated the Telephone Consumer

14      Protection Act by sending Plaintiff Craftwood and other

15      class members junk faxes.  Specifically, plaintiff alleges

16      that in the past four years, defendant has adopted and

17      implemented an illegal junk fax advertising program to

18      promote the sale of property, goods, and services.  As part

19      of this fax advertising program, defendant allegedly sent

20      plaintiff a large number of junk faxes that failed to

21      include a proper "out of" notice -- or, "opt-out" notice

22      without obtaining prior express invitation or permission.

08:33   23         Defendant Wurth has argued in their papers that

24      plaintiffs' counsel Payne & Fears must be disqualified

25      because it is plaintiff counsel in another TCPA class

**Certified for Payne & Fears**
**Debbie Gale, CSR 9472, RPR, CCRR**
**Federal Official Court Reporter**

8:17-CV-0606-DOC - 4/9/2018 - Item No. 2

6

1   action, *Craftwood Lumber Company v. Senco Brands,* and Wurth

2   Louis is a class member in that action, albeit an absent

3   class member.  Thus, Defendant Wurth Louis argues that Payne

4   & Fears cannot both represent Wurth Louis in the

5   *Sensco (sic)* acts -- case and sue Wurth Louis in this case.

6   Moreover, Defendant Wurth Louis claims that after it brought

7   this conflict to the attention of plaintiffs' counsel, they

8   simply ignored it and refused to fully divulge whether

9   they've obtained Wurth Louis's confidential information

10  while representing it in the *Senco* case.  Thus, defendant

11  argues that even if plaintiffs' counsel is not disqualified,

12  they should be found to be inadequate counsel for the

13  purposes of class certification.

08:35 14        Plaintiff Craftwood, on the other hand, responds

15  that Defendant's motion is tactically motivated for the

16  purposes of "sandbagging."  Plaintiff explains that it filed

17  this action on March 9, 2017, after the preliminary approval

18  of December 15, 2016, but before class certification or

19  final approval on June 19, 2017, of the *Senco* settlement,

20  and that it did not know that Wurth Louis was one of the

21  unnamed class members in that settlement.  Plaintiff

22  explains that at the time of the *Senco* settlement, with

23  minor exceptions not relevant here, that *Senco* had not

24  disclosed names of recipients that were associated with the

25  telephone numbers to which it had sent fax ads.  In the

8:17-CV-0606-DOC - 4/9/2018 - Item No. 2

7

| | |
|---|---|
| 1 | proposed settlement, *Senco* therefore agreed to deliver to |
| 2 | the settlement administrator -- not to Plaintiffs' |
| 3 | counsel -- a database that contained the names and addresses |
| 4 | of its fax recipients so that notice could be sent out. |
| 5 | Plaintiff further claims that it'd not -- it did not obtain |
| 6 | confidential information from Wurth in the *Senco* case or |
| 7 | have any communication with the company at all, and that |
| 8 | none of the traditional conflicts/concerns that might arise |
| 9 | out of concurrent representation exist here. |

08:35

| | |
|---|---|
| 10 | In the Senco matter, there was no sharing of |
| 11 | confidences, no conversations, no litigation involving |
| 12 | unnamed class members, potential or otherwise, and no reason |
| 13 | for the firm to suspect that lurking within the 3,700 |
| 14 | proposed class members there might be a defendant in another |
| 15 | suit. |

08:35

| | |
|---|---|
| 16 | Further, plaintiffs' counsel argues that Wurth |
| 17 | Louis never became a client in the *Senco* case for conflict |
| 18 | purposes, citing authority that unnamed class members are |
| 19 | not considered to be clients of the proposed class counsel |
| 20 | for purposes of applying the professional rule that |
| 21 | restricts representation when there are concurrent conflicts |
| 22 | of interest. |

08:39

| | |
|---|---|
| 23 | In the *City of San Diego v. Haas* case, at 207 |
| 24 | Cal.App. 4th, 471 *(sic)*, 502 at 2012 *(sic)*, in the comment |
| 25 | at 25 to ABA Model Rule: |

8:17-CV-0606-DOC - 4/9/2018 - Item No. 2

8

08:39   1              "When a lawyer represents or seeks to

   2              represent a class of plaintiffs or

   3              defendants in a class-action lawsuit,

   4              unnamed members of the class are

   5              ordinarily not considered to be clients

   6              of the lawyer for purposes of applying

   7              paragraph (a)(1) of this rule.  Thus,

   8              the lawyer does not typically need to

   9              get the consent of such a person before

  10              representing a client suing the person

  11              in an unrelated matter."

08:39  12        Plaintiff argues that this common-sense rule is

  13   necessary, particularly because unnamed members can reach

  14   into the millions for a single case, to avoid disqualifying

  15   firms simply because they are successful consumer advocates.

  16        Under Rule -- Local Rule 7-3, as an initial

  17   matter, plaintiff alleges that defendant again failed to

  18   follow Local Rule 7-3.  And, as the parties will recall, in

  19   responding to defendant's last motion, the Court wrote a

  20   full page in its Order, and discussed in detail at the

  21   hearing, the requirements and importance of Local Rule 7-3,

  22   because it was clear that out-of-town defense counsel had

  23   failed to comply with the Rule.  Specifically I wrote,

  24              "As an initial matter, the Court

  25              addresses the parties' dispute about

8:17-CV-0606-DOC - 4/9/2018 - Item No. 2

9

1          whether Defendant complied with Local

2          Rule 7-3 in filing its Motion.  Local

3          Rule 7-3 requires counsel contemplating

4          the filing of any motion to first

5          contact opposing counsel to discuss

6          thoroughly, preferably in person, the

7          substance of the contemplated motion and

8          any potential resolution.  Thus, under

9          this rule parties should discuss with

10         the opposing attorneys not only the fact

11         that they intend to file a motion, but

12         they must make clear the grounds for the

13         motion and each substantive issue the

14         motion will address."

15         Here, the parties dispute whether their

16    conversation during a June 19, 2017, phone call was

17    sufficient to qualify as a Local Rule 7-3 conference.

18    Without a record of the phone call, the Court cannot fully

19    determine whether the parties' phone discussion met the

20    requirements of Local Rule 7-3, but it certainly seems

21    possible that the phone call was insufficient.  Often,

22    parties confirm with each other via email the issues they

23    discussed during a Rule 7-3 phone conference, so that they

24    can easily demonstrate to the Court by production of those

25    emails that they complied with the Local Rules.  That does

8:17-CV-0606-DOC - 4/9/2018 - Item No. 2

10

1   not appear to have happened here.

2           In any case, Defendant certainly violated Local

3   Rule 7-3's requirement that a party wait at least seven days

4   after the conference before filing its motion.  However, any

5   prejudice to Plaintiff resulting from Defendant's untimely

6   filing was likely cured by the Court's Order granting the

7   parties' joint stipulation to continue the hearing on the

8   Motion, which gave Plaintiff a month from the time the

9   Motion was filed to file its Opposition.

10          Under these circumstances, the Court will address

11  the merits of defendant's motion despite defendant's failure

12  to comply with Local Rule 7-3.  However, the Court takes

13  compliance with the local rules very seriously, and

14  instructs both parties to comply with both the letter and

15  spirit of the rules in the future.

16          In the instant Motion, defendant asserts that the

17  Local Rule 7-3 conference took place over a period of weeks

18  beginning on January 17, 2018.  This seems to be referring

19  to a series of emails between counsel, starting with an

20  email in which defense counsel alerts plaintiffs' counsel to

21  the potential conflict and explains why, under California

22  law, they believe the conflict requires automatic

23  disqualification.  Defense counsel asked to discuss these

24  issues, and this resulted in emails being sent back and

25  forth.  Defense counsel now argues that Local Rule 7-3 does

8:17-CV-0606-DOC - 4/9/2018 - Item No. 2

11

1   not require anything more than discussing the issues, and

2   that there is no question that defendant did that repeatedly

3   for two months prior to this motion being filed.

4           However, nowhere in these discussions did defense

5   counsel mention filing a motion.  In fact, defense counsel

6   only notified Plaintiff that it would be filing a motion

7   with the following email:

8           "Counsel:

9           "We are preparing and will file next

10          week a motion to disqualify Payne &

11          Fears or, in the alternative, to deny

12          certification based on your firm suing

13          Wurth Louis and Company while, at the

14          same time, representing it.  We will

15          request that the case be stayed pending

16          the resolution of the motion.  For that

17          reason, we will not be completing the

18          joint stipulation at this time.

08:41   19          So, as discussed previously, Local Rule 7-3

20  requires counsel contemplating the filing of any motion

21  first contact the opposing counsel to discuss thoroughly and

22  preferably in person -- although, I do recognize you're out

23  of town, and I don't want that to turn into harassment by

24  local counsel making you fly out here -- the substance of a

25  contemplated motion and any potential resolution.  Thus,

8:17-CV-0606-DOC - 4/9/2018 - Item No. 2

12

|  |  |  |
|---|---|---|
|  | 1 | under this rule, the parties should discuss with opposing |
|  | 2 | attorneys not only the fact that they intend to file a |
|  | 3 | motion, but they must make clear the grounds for the motion |
|  | 4 | and each substantive issue the motion will address. |
| 08:41 | 5 | So while it seems that the Defendant Wurth, |
|  | 6 | probably in good faith, believed that plaintiff would know |
|  | 7 | the grounds for the disqualification mot- -- motion based on |
|  | 8 | counsel's previous email discussions, Local Rule 7-3 still |
|  | 9 | requires the parties discuss thoroughly, ideally in person |
|  | 10 | or by phone, all of the substantive issues the motion will |
|  | 11 | address. |
| 08:42 | 12 | Thus, the email quoted above, in which defendant |
|  | 13 | notified plaintiff it intended to file motion is |
|  | 14 | insufficient.  In the future when counsel actually notifies |
|  | 15 | opposing counsel of their intention to file a motion, they |
|  | 16 | should thoroughly discuss all the areas any motion will |
|  | 17 | cover. |
| 08:42 | 18 | Now, the way I'm gonna resolve that is this:  I |
|  | 19 | know you're out of town.  The other side could be accused of |
|  | 20 | harassing.  These are technical rules.  We're gonna get a |
|  | 21 | Special Master.  You're taking too much of my time now. |
| 08:42 | 22 | Who will your Special Master be? |
| 08:42 | 23 | MR. CORDERO:  I would suggest perhaps Judge Colaw, |
|  | 24 | who's now retired. |
| 08:42 | 25 | THE COURT:  Doesn't matter.  Step over and talk to |

8:17-CV-0606-DOC - 4/9/2018 - Item No. 2

13

|         |    |                                                                      |
|---------|----|----------------------------------------------------------------------|
|         | 1  | each other.  I want to appoint a Special Master right now.            |
| 08:42   | 2  | When you take too much of my time, I'm gonna take                    |
|         | 3  | your money.                                                           |
| 08:43   | 4  | If you don't have one, I have one for you.  So                       |
|         | 5  | let's go.  You're still taking too much of my time.                  |
| 08:43   | 6  | MR. CORDERO:  Well, we don't --                                      |
| 08:43   | 7  | THE COURT:  Okay.  It'll be Robert O'Brien in                        |
|         | 8  | Los Angeles.  Contact him.  End of discussion.  If he has a          |
|         | 9  | conflict, get back to me.                                            |
| 08:43   | 10 | All right.  Concerning the motion to disqualify                     |
|         | 11 | counsel are governed by state law.  And by virtue of the             |
|         | 12 | district court's local rules, California law controls                |
|         | 13 | whether an ethical violation occurred.  According to the             |
|         | 14 | Central District of California local rule, attorneys                 |
|         | 15 | practicing in this district must be familiar with and comply         |
|         | 16 | with the standards of professional conduct required --               |
| 08:43   | 17 | Oh, you can also have Judge Smith.  I'll give you                    |
|         | 18 | two options:  Judge Smith or Robert O'Brien.  That's the end         |
|         | 19 | of the discussion.  Call 'em.                                        |
| 08:43   | 20 | Attorneys practicing in this district must be                       |
|         | 21 | familiar with and comply with the standards of professional          |
|         | 22 | conduct required of members of the State Bar of California           |
|         | 23 | and contained in the State Bar Act, the Rules of                     |
|         | 24 | Professional Conduct, and the decisions of any court                 |
|         | 25 | applicable therein.                                                  |

8:17-CV-0606-DOC - 4/9/2018 - Item No. 2

14

| 08:44 | 1 | Because motions to disqualify are often tactically |
| | 2 | motivated and can be disruptive to the litigation process, |
| | 3 | disqualification is a drastic measure that's generally |
| | 4 | disfavored and imposed only when absolutely necessary. |
| 08:44 | 5 | Under California Rule of Professional Conduct |
| | 6 | 3-310(C)(3), |
| 08:44 | 7 | "A lawyer shall not, without the |
| | 8 | informed written consent of each client, |
| | 9 | represent a client in a matter and at |
| | 10 | the same time in a separate matter |
| | 11 | accept as a client or -- a person or |
| | 12 | entity whose interest in the first |
| | 13 | matter is adverse to the client in the |
| | 14 | first matter." |
| 08:44 | 15 | Thus, the rule precludes a lawyer from |
| | 16 | representing two clients with adverse interests |
| | 17 | simultaneously.  However, |
| 08:44 | 18 | "In the realm of class actions, the |
| | 19 | rules of disqualification cannot be |
| | 20 | applied mechanically so as to defeat the |
| | 21 | purpose of the class proceedings. |
| | 22 | Rather, the circumstances of each case |
| | 23 | must be evaluated," |
| 08:45 | 24 | Citing *Sharp v. Next Entertainment*. |
| 08:45 | 25 | In addition under Federal Rule of Civil |

**Certified for Payne & Fears**
**Debbie Gale, CSR 9472, RPR, CCRR**
**Federal Official Court Reporter**

EXHIBIT E, PAGE 64

8:17-CV-0606-DOC - 4/9/2018 - Item No. 2

15

|   |   |   |
|---|---|---|
| | 1 | Procedure 23(g), any counsel appointed as class counsel must |
| | 2 | be adequate, which includes the requirements that class |
| | 3 | counsel must fairly and adequately represent the interests |
| | 4 | of the class. |
| 08:45 | 5 | **COURT'S QUESTIONS** |
| 08:45 | 6 | THE COURT:  Now, for the defendants:  Why do the |
| | 7 | circumstances of this situation merit disqualification? |
| 08:45 | 8 | This is brief and succinct. |
| 08:45 | 9 | **RESPONSE BY MR. MALLOW** |
| 08:45 | 10 | MR. MALLOW:  Your Honor, Michael Mallow on behalf |
| | 11 | of Wurth Louis. |
| 08:45 | 12 | Briefly and succinctly, Your Honor, I think your |
| | 13 | discussion in *White v. Experian Corporation* sheds |
| | 14 | significant light on why there should be disqualification in |
| | 15 | this case, where there shouldn't be disqualification in the |
| | 16 | *White* case. |
| 08:45 | 17 | Since the *White* decision there has been the *Walker* |
| | 18 | *verse (sic) Apple* decision out of the Court of Appeal from |
| | 19 | California, which indicates that automatic disqualification, |
| | 20 | when you have two clients who are actually engaged -- when |
| | 21 | their interests are adverse, there has to be, uh, |
| | 22 | disqualification.  In that case, in *(unintelligible)* -- |
| 08:46 | 23 | *(Court reporter requests clarification for the* |
| | 24 | *record.)* |
| 08:46 | 25 | MR. MALLOW:  In *Walker v. Apple* the conflicting |

**Certified for Payne & Fears**
**Debbie Gale, CSR 9472, RPR, CCRR**
**Federal Official Court Reporter**

8:17-CV-0606-DOC - 4/9/2018 - Item No. 2

16

|       |    |                                                                              |
|-------|----|------------------------------------------------------------------------------|
|       | 1  | issue was, um, the fact that plaintiffs' counsel in the                      |
|       | 2  | class action would have to depose, uh, as an adversary one                   |
|       | 3  | of the class members.                                                        |
| 08:46 | 4  | Here, the conflict is quite clear.  We have Wurth                            |
|       | 5  | Louis being sued by Craftwood, when Craftwood, um -- when it                 |
|       | 6  | was a class member in a -- in the *Senco* case.                             |
| 08:46 | 7  | In your *White* decision -- so, under automatic                             |
|       | 8  | disqualification, which is identified in *Walker verse (sic)*               |
|       | 9  | *Apple,* um, disqualification is required.                                   |
| 08:46 | 10 | THE COURT:  All right.                                                       |
| 08:46 | 11 | MR. MALLOW:  If Your Honor --                                                |
| 08:46 | 12 | THE COURT:  Thank you, Counsel.                                              |
| 08:46 | 13 | Under California Rule of Professional Conduct                                |
|       | 14 | 3-310(C)(3), a lawyer shall not without the informed written                |
|       | 15 | consent of each client, represent a client in a matter and                  |
|       | 16 | at the same time in a separate matter accept as a client a                  |
|       | 17 | person or entity whose interest in the first matter is                      |
|       | 18 | adverse to the client in the first matter.                                  |
| 08:47 | 19 | So even assuming that Wurth Louis was a client of                           |
|       | 20 | defense counsel in *Senco*, how does plaintiff in this matter              |
|       | 21 | have an adverse interest to Wurth Louis in the *Senco* matter,             |
|       | 22 | the first matter?  Be succinct now.                                         |
| 08:47 | 23 | MR. MALLOW:  In Wurth Louis -- I'm sorry.  In the                           |
|       | 24 | *Senco* matter, Wurth Louis is a class member.  It is a                    |
|       | 25 | class -- it is a client of Payne & Fears.                                   |

| | | |
|---|---|---|
| 08:47 | 1 | THE COURT:  All right. |
| 08:47 | 2 | MR. MALLOW:  In this case, Wurth Louis is the |
| | 3 | defendant being sued by Payne & Fears, the same attorney it |
| | 4 | had in the class action. |
| 08:47 | 5 | THE COURT:  Thank you. |
| 08:47 | 6 | So, plaintiffs, why should you be allowed to sue |
| | 7 | Wurth Louis now while they were an unarmed -- or unnamed |
| | 8 | class member in the previous class action? |
| 08:48 | 9 | MR. CORDERO:  Thank you, Your Honor. |
| 08:48 | 10 | THE COURT:  And be succinct now.  I've read your |
| | 11 | papers and we're not gonna take a lotta time with this. |
| 08:48 | 12 | **RESPONSE BY MR. CORDERO** |
| 08:48 | 13 | MR. CORDERO:  At the time that we commenced this |
| | 14 | case, Wurth Louis was not a class member in *Senco*. |
| 08:48 | 15 | THE COURT:  Okay. |
| 08:48 | 16 | MR. CORDERO:  We've cited ample authority for |
| | 17 | that.  The only response from the defendant is, *Well, you* |
| | 18 | *haven't given any California authority.* |
| 08:48 | 19 | But the authority we provided was Seventh Circuit |
| | 20 | authority.  And Seventh Circuit governs the *Senco* case and |
| | 21 | we -- so Wurth was not a client of Payne & Fears until |
| | 22 | June 9, as -- as an absentee class member until June 9. |
| 08:48 | 23 | Number two.  The ABA Rules of Professional Conduct |
| | 24 | and Comment 25 are very clear that an absentee class member |
| | 25 | is not considered a client of the firm representing the |

**Certified for Payne & Fears**
**Debbie Gale, CSR 9472, RPR, CCRR**
**Federal Official Court Reporter**

8:17-CV-0606-DOC - 4/9/2018 - Item No. 2

18

1   class.  And we -- we know from ample California authority --

2   some of which Your Honor mentioned -- the *Haas* case -- and

3   most recently the *Reed* case, and -- and that -- the ABA

4   model rule is followed in California on this particular

5   point.

08:49   6           In fact, *Haas* quoted, uh, Comment 25 for the

7   proposition unnamed class members are ordinarily not members

8   of the class.

08:49   9           Number three.  On the issue of *Walker*, the

10   *(inaudible)* --

08:49   11          *(Court reporter requests clarification for the*

12   *record.)*

08:49   13          MR. CORDERO:  I'm sorry.

08:49   14          The root concern of the Court in Walker was the

15   attorney -- attorney's duty of loyalty to the client.

16   Because, you may recall from the facts of *Walker*, the -- uh,

17   *Karn*, who was the class member sought to be deposed in Class

18   Action No. 2, was an absentee class member in Class 1.  And

19   Class 1 had been certified and was an ongoing, actively

20   litigated class matter.  So there was a very real poss- --

21   there was ongoing representation of *Karn*.  And -- and the

22   root concern, as expressed by the Court of Appeal in *Walker*,

23   was the -- was the attorney's duty of loyalty and the

24   potential of the client's interests being diversely affected

25   by the lawyer's conduct.

8:17-CV-0606-DOC - 4/9/2018 - Item No. 2

19

| | | |
|---|---|---|
| 08:50 | 1 | In this particular case, this is a creature of |
| | 2 | class actions and class actions only.  Because, by the time |
| | 3 | Wurth became an absentee class member, three months after |
| | 4 | this case was commenced, the die was already cast.  Wurth's |
| | 5 | interest in the *Senco* recovery was fixed.  There was nothing |
| | 6 | that -- |
| 08:50 | 7 | THE COURT:  All right.  Thank you, Counsel. |
| 08:50 | 8 | MR. CORDERO:  -- the counsel could do to increase |
| | 9 | or diminish it. |
| 08:50 | 10 | THE COURT:  I understand that now. |
| 08:50 | 11 | Then why should I address the issue of class |
| | 12 | certification and adequacy of purported class counsel at |
| | 13 | this time instead of the class certification stage? |
| 08:50 | 14 | MR. MALLOW:  Your Honor, obviously, if -- if the |
| | 15 | Court is inclined to disqualify counsel, then that becomes a |
| | 16 | nonissue.  The class certification issue becomes a nonissue |
| | 17 | because either there'll be -- there'll be substituted |
| | 18 | counsel, and that would -- |
| 08:51 | 19 | THE COURT:  All right.  Thank you. |
| 08:51 | 20 | Now you have five minutes each for your respective |
| | 21 | arguments. |
| 08:51 | 22 | Counsel, on behalf of the plaintiff. |
| 08:51 | 23 | MR. CORDERO:  Thank you, Your Honor. |
| 08:51 | 24 | **ARGUMENT BY MR. CORDERO** |
| 08:51 | 25 | MR. CORDERO:  Your Honor, before I start, I'd like |

**Certified for Payne & Fears**
**Debbie Gale, CSR 9472, RPR, CCRR**
**Federal Official Court Reporter**

EXHIBIT E, PAGE 69

8:17-CV-0606-DOC - 4/9/2018 - Item No. 2

20

|         |    |                                                                      |
|---------|----|----------------------------------------------------------------------|
|         | 1  | to point out for the record, Mr. Mallow is a local attorney          |
|         | 2  | here in Orange County; and, therefore, was perfectly capable         |
|         | 3  | of participating in a 7-3 meeting in person.                         |
| 08:51   | 4  | So I thought the Court should know that, for the                     |
|         | 5  | record.                                                              |
| 08:51   | 6  | THE COURT:  Thank you.                                                |
| 08:51   | 7  | MR. CORDERO:  In the *White* case, the Court                         |
|         | 8  | observed that disqualification motions are often tactically          |
|         | 9  | motivated.  And I cannot imagine a more dramatic fact                 |
|         | 10 | pattern of that here.                                                 |
| 08:51   | 11 | After -- Wurth, after being sued in this case, and                   |
|         | 12 | knowing that obviously Payne & Fears is representing                  |
|         | 13 | Craftwood in a matter adverse to Wurth, had ample                    |
|         | 14 | opportunity to raise the issue of any potential conflict.            |
|         | 15 | It could've opted out of the *Senco* class.  It chose not to.        |
|         | 16 | It could've objected --                                              |
| 08:52   | 17 | *(Court reporter requests clarification for the*                     |
|         | 18 | *record.)*                                                           |
| 08:52   | 19 | MR. CORDERO:  It could've objected to                                |
|         | 20 | representation by Payne & Fears of the *Senco* class.                |
|         | 21 | Measures could've been taken at the time -- had Wurth spoken         |
|         | 22 | up at the time, measures could've been taken to alleviate            |
|         | 23 | any concerns.  As an example, we had co-counsel in the *Senco*       |
|         | 24 | case.  Co-counsel could had -- uh, it -- had Wurth raised            |
|         | 25 | the issue, the, uh -- the certification order could've, uh,          |

8:17-CV-0606-DOC - 4/9/2018 - Item No. 2

21

|        |    |                                                                      |
|--------|----|----------------------------------------------------------------------|
|        | 1  | been adjusted to provide that Payne & Fears represent the            |
|        | 2  | entire class, but Wurth.                                             |
| 08:52  | 3  | But Wurth chose to remain silent and, instead,                      |
|        | 4  | decided to spring this certi- -- uh, this disqualification          |
|        | 5  | issue almost a year after learning about the *Senco* case.   In     |
|        | 6  | their reply papers, Wurth asserts that they had provided --         |
|        | 7  | there's no evidence that Wurth received notice of the               |
|        | 8  | *Senco* -- of it's -- of it's potential membership in the           |
|        | 9  | *Senco* class.   That's absolutely not true.   It's in the          |
|        | 10 | record.   We have *(unreportable)* --                               |
| 08:53  | 11 | *(Court reporter requests clarification for the*                    |
|        | 12 | *record.)*                                                          |
| 08:53  | 13 | MR. CORDERO:   I'm sorry.                                           |
| 08:53  | 14 | We have notice -- we have, uh, testimony from the                  |
|        | 15 | settlement administrator in *Senco* that Wurth received actual      |
|        | 16 | notice of the *Senco* settlement and chose to do nothing.          |
| 08:53  | 17 | The Third Circuit has pointed out that this, uh --                 |
|        | 18 | that a party in this position cannot lie in wait and remain        |
|        | 19 | silent during Case No. 1, and then spring an alleged               |
|        | 20 | disqualification issue in Case No. 2.   And that's in the *In*     |
|        | 21 | *Re Fine Paper (phonetic)* decision.                               |
| 08:53  | 22 | Number 2, in *Ratcliff (phonetic)* this -- uh, the                |
|        | 23 | Ninth Circuit affirmed this Court and held that California         |
|        | 24 | law, as the Court pointed out early in its statement, is not       |
|        | 25 | mechanical in applying ethical rules in class actions, and        |

8:17-CV-0606-DOC - 4/9/2018 - Item No. 2

22

|  |  |  |
|---|---|---|
| | 1 | that there has to be flexibility in regards to the unique |
| | 2 | circumstances of class actions. |
| 08:54 | 3 | I would -- I would suggest to the Court that |
| | 4 | that -- the Ninth -- the *Ratcliff* precedent is law of the |
| | 5 | Circuit. And once something is law of the Circuit, there |
| | 6 | must be an irreconcilable conflict by a supervening superior |
| | 7 | authority that changes the law of the Circuit. An |
| | 8 | intermediate California Court of Appeal decision, as in |
| | 9 | *Walker* is not a -- number one, it's not a supervening |
| | 10 | authority. It's "a" intermediate decision. |
| 08:54 | 11 | And number two, there's no irreconcilable |
| | 12 | conflict. Because *Walker* was a case in which there was |
| | 13 | ongoing representation of Karn in Class Action No. 1 in a |
| | 14 | way that Karn had a legitimate expectation that the firm |
| | 15 | would -- would, uh, serve her interest in Class Action |
| | 16 | No. 1. |
| 08:54 | 17 | *Wurth* doesn't have that legitimate expectation. |
| | 18 | The die was cast. Its interest in *Senco* was fixed as of |
| | 19 | June 9. And there's no ongoing activity by the firm that |
| | 20 | would in any way impair any concerns about the duty of |
| | 21 | loyalty. |
| 08:55 | 22 | THE COURT: All right. |
| 08:55 | 23 | You have one minute. Is there anything else? |
| 08:55 | 24 | MR. CORDERO: Yes, sir. |
| 08:55 | 25 | I think that the -- the *Ratcliff* precedent is |

8:17-CV-0606-DOC - 4/9/2018 - Item No. 2

23

| | |
|---|---|
| | 1 |
| 08:55 | 2 |
| | 3 |
| | 4 |
| | 5 |
| | 6 |
| | 7 |
| 08:55 | 8 |
| 08:55 | 9 |
| 08:55 | 10 |
| | 11 |
| 08:55 | 12 |
| 08:55 | 13 |
| | 14 |
| | 15 |
| | 16 |
| | 17 |
| | 18 |
| 08:56 | 19 |
| | 20 |
| | 21 |
| | 22 |
| 08:56 | 23 |
| | 24 |
| | 25 |

1   binding.

2        And I would also point out that in the *Reed*

3   decision, that is post-*Walker* and post-*Ratcliff* -- *Reed*

4   specifically said that we -- we are -- we believe that --

5   that *Ratcliff* was, uh -- is persuasive, and we're gonna

6   follow *Ratcliff*, and that California law does not require

7   automatic disqualification.

8        THE COURT:  All right.  Thank you.

9        Counsel, you have five minutes.

10       MR. MALLOW:  Thank you, Your Honor.  Michael

11  Mallow again.

12                    **ARGUMENT BY MR. MALLOW**

13       MR. MALLOW:  Your Honor, this is unusual case

14  *(verbatim)* primarily because plaintiffs' counsel is engaged

15  in a series of class actions, business against business, in

16  the same industry, based on a method of communication, which

17  is the primary method of communication between participants

18  in the industry.

19       And any class member list, um, for a TCPA

20  settlement that is reached by Payne & Fears can equally be

21  the target list, according to Payne & Fears, because the

22  disqualification rules, according to them, do not apply.

23       Your Honor, *Walker* verse *(verbatim)* *Apple* is clear

24  that automatic disqualification is required.  But even if

25  Your Honor goes with *Rifkin (phonetic)*, your decision in

8:17-CV-0606-DOC - 4/9/2018 - Item No. 2

24

| | |
|---|---|
| | 1 |
| | 2 |
| | 3 |
| | 4 |
| 08:56 | 5 |

1   *White* is very -- provides substantial guidance as to why

2   automatic dis- -- uh, disqualification was not required in

3   this case.  But all of the factors that your Honor

4   identified in *White* are absent here.

5            Your Honor talked about in *White* the

6   disqualifying -- disqualification was not appropriate

7   because the disqualifying event, the provision in the

8   settlement agreement that was terminated or -- uh, by the

9   Ninth Circuit -- was a cabined event, it was a brief event.

10   It was an event where a client is not pitted against client

11   in -- in subsequent or paralegal litigation.  It was a

12   situation that was a mistake by the plaintiffs' counsel in

13   the context of a settlement negotiation.

14            None of those criteria, none of those factors are

15   present here.  What we have is a direct conflict, where one

16   client is suing another client on an issue that Wurth was

17   represented by plaintiffs' class action counsel on the same

18   issue.

19            Why would Wurth have to opt-out of a class action

20   where relief is being provided through the efforts of

21   plaintiffs' counsel so that plaintiffs' counsel can then go

22   and sue Wurth Louis?  That is not how the -- the

23   disciplinary rule operates.  The firm owes the dirty -- the

24   duty of loyalty to the client, not the other way around.

25            Wurth Louis says that they did not know about the

8:17-CV-0606-DOC - 4/9/2018 - Item No. 2

25

|  | |
|---|---|
| 1 | class settlement until they received the check.  And there's |
| 2 | no reason they should've necessarily known about it.  The |
| 3 | settlement notice went to remote offices; it required class |
| 4 | members to do nothing to collect, um, the settlement |
| 5 | proceeds -- a tribute to Payne & Fears, quite honestly, that |
| 6 | it was not a "claims made" process.  That if a claims -- a |
| 7 | class member did nothing, they got a check.  When the check |
| 8 | was received, that triggered, uh, an inquiry by the company |
| 9 | when they saw that Payne -- uh, Payne & Fears was on that |
| 10 | cert -- uh, that check. |
| 08:58  11 | Now, Your Honor, I don't think you have to make a |
| 12 | determination whether Payne & Fears is telling the truth |
| 13 | that they didn't know that Wurth Louis was a class member, |
| 14 | and that Wurth Louis says that it didn't know it was a class |
| 15 | member.  The bottom line is, in November it became apparent |
| 16 | that there was a conflict. |
| 08:58  17 | In January, information was provided to Payne & |
| 18 | Fears that a conflict existed.  Who cares how that |
| 19 | information came to them.  The bottom line is they were |
| 20 | informed of the conflict, and they have two things that they |
| 21 | need to do when so informed:  Either withdraw from the |
| 22 | representation or obtain appropriate waivers.  They did |
| 23 | neither in this case. |
| 08:59  24 | And what plaintiff is suggesting, by saying that |
| 25 | they filed suit before the class was certified is, once you |

8:17-CV-0606-DOC - 4/9/2018 - Item No. 2

26

|  |  |  |
|--|--|--|
| | 1 | file litigation, if a conflict arises, the conflict is |
| | 2 | irrelevant for disqualification purposes.  That's not how |
| | 3 | the ethical code operates. |
| 08:59 | 4 | When the conflict arises, it needs to be |
| | 5 | addressed.  And if a conflict arises within the context of |
| | 6 | litigation -- ongoing litigation -- then waivers need to be |
| | 7 | obtained, or the firm has to substitute out. |
| 08:59 | 8 | THE COURT:  Okay. |
| 08:59 | 9 | All right.  How long will it take each of you to |
| | 10 | contact one of these Special Masters? -- unless you can |
| | 11 | quickly reach an agreement on somebody else. |
| 09:00 | 12 | MR. CORDERO:  I'm sure we can do that within 24 |
| | 13 | hours, Your Honor. |
| 09:00 | 14 | THE COURT:  48 hours, then.  Just double it. |
| | 15 | Okay?  I want the name of that Special Master back to me. |
| | 16 | And that Special Master is now to participate in all |
| | 17 | discovery issues, including all depositions. |
| 09:00 | 18 | Have a seat, Counsel. |
| 09:00 | 19 | **RULING OF THE COURT** |
| 09:00 | 20 | THE COURT:  First of all, the defendant's motion |
| | 21 | is denied by this Court.  I agree with counsel's |
| | 22 | plaintiff -- or plaintiffs' counsel that, given the |
| | 23 | circumstances, defendant did not become the client of |
| | 24 | plaintiffs' counsel in *Senco*, particularly because |
| | 25 | plaintiffs' counsel was unaware that Wurth Louis was an |

**Certified for Payne & Fears**
**Debbie Gale, CSR 9472, RPR, CCRR**
**Federal Official Court Reporter**

8:17-CV-0606-DOC - 4/9/2018 - Item No. 2

27

|       |    |                                                                      |
|-------|----|----------------------------------------------------------------------|
|       | 1  | unnamed class member in *Senco* and had no communication with        |
|       | 2  | Wurth Louis in *Senco*, and did not learn any confidential           |
|       | 3  | information.                                                         |
| 09:00 | 4  | Defense' reliance on *Walker v. Apple Inc.* is                       |
|       | 5  | unavailing to the Court because in that case the court              |
|       | 6  | specifically limited its holding to the circumstances of           |
|       | 7  | that case, including the known identity and the prominent           |
|       | 8  | role of the concurrently represented client who would need         |
|       | 9  | to be cross-examined on the witness stand in the concurrent        |
|       | 10 | case.                                                               |
| 09:01 | 11 | And, in referring to *Walker*, at 1108 and 1109                     |
|       | 12 | quote:                                                              |
| 09:01 | 13 | "Thus, it is the combination of class                              |
|       | 14 | certification in *Felczer*, which                                  |
|       | 15 | transformed the firm's relationship with                           |
|       | 16 | class members for some purposes, and the                           |
|       | 17 | undisputed evidence regarding Karn's                               |
|       | 18 | identity and the role in this case,                                |
|       | 19 | which minimizes the concern regarding                             |
|       | 20 | the impracticalities of dealing with                               |
|       | 21 | unknown, unnamed class members, that                              |
|       | 22 | persuades us that the trial court did                              |
|       | 23 | not err in finding the firm represents                            |
|       | 24 | Karn for conflict purposes," end of                               |
|       | 25 | quote.                                                             |

**Certified for Payne & Fears**
**Debbie Gale, CSR 9472, RPR, CCRR**
**Federal Official Court Reporter**

EXHIBIT E, PAGE 77

8:17-CV-0606-DOC - 4/9/2018 - Item No. 2

28

| | | |
|---|---|---|
| 09:01 | 1 | Those facts are entirely distinguishable. |
| | 2 | Moreover, the circumstances of the alleged conflict do |
| | 3 | suggest that the motion was filed for tactical reasons and |
| | 4 | to delay and obstruct discovery.  In addition, defendant has |
| | 5 | not shown at this stage that the Payne & Fears would -- |
| | 6 | counsel would not be adequate counsel as class counsel. |
| 09:02 | 7 | Now, I'm gonna speed you now.  I'm not gonna slow |
| | 8 | you down.  You're too old on my calendar and you're running |
| | 9 | into too many silly disputes.  So now it's gonna get costly. |
| 09:02 | 10 | And so far, Wurth has allegedly refused to |
| | 11 | participate due to the supposed conflict. |
| 09:02 | 12 | Where's Mr. Wurth?  Where is Mr. Wurth? |
| 09:02 | 13 | MS. KISER:  Mr. Wurth isn't here, Your Honor. |
| 09:02 | 14 | THE COURT:  I know he's not here.  Where is he? |
| | 15 | Arkansas?  Alaska? |
| 09:02 | 16 | MS. KISER:  Wurth Louis and Company is throughout |
| | 17 | the United States. |
| 09:02 | 18 | THE COURT:  I know.  Where's Wurth? |
| 09:02 | 19 | MR. CORDERO:  Wurth's local office -- I mean, |
| | 20 | Wurth is based in Orange County -- or Brea. |
| 09:02 | 21 | THE COURT:  So he's local; right? |
| 09:02 | 22 | Local; right? |
| 09:02 | 23 | Now, why do I need to extend deadlines?  I can |
| | 24 | certainly work with you.  But now I'm gonna put a lot of |
| | 25 | pressure on both of you. |

**Certified for Payne & Fears**
**Debbie Gale, CSR 9472, RPR, CCRR**
**Federal Official Court Reporter**

8:17-CV-0606-DOC - 4/9/2018 - Item No. 2

29

| 09:03 | 1 | Have a seat, Counsel. |
|---|---|---|

09:03  1   Have a seat, Counsel.

09:03  2   When you start taking my time -- I love

3   litigation.  I don't allow the silly dance to get there.

4   That's time-consuming on my part.  And I devote a lotta time

5   to my counsel, but you can tell I've reached the point of

6   frustration now.

09:03  7   You better get ready for litigation in nano

8   seconds now.  So I'm asking, before I'm imposing:  Do I need

9   to extend any deadlines concerning the deposition?  Because

10   so far the discovery deadlines in this case -- apparently,

11   has a request by plaintiffs' counsel to account for Wurth's

12   alleged refusal to participate due to the supposed conflict.

09:03  13   So I can certainly extend for four months, but I'm

14   wondering why.  Local.  And I can get him.

09:03  15   MR. LUSKIN:  Your Honor --

09:03  16   THE COURT:  Call him right now.  Pick up your

17   cellphone and find him.

09:03  18   MR. LUSKIN:  Your Honor, I guess, let me address

19   that.

09:03  20   **RESPONSE BY MR. LUSKIN**

09:04  21   MR. LUSKIN:  Scott Luskin for plaintiff.

09:04  22   It's not that we can't depose a representative

23   witness from Wurth Louis and Company.  We don't have any

24   records.  We don't have any interrogatory responses.

09:04  25   THE COURT:  That's why you're gonna have a Special

8:17-CV-0606-DOC - 4/9/2018 - Item No. 2

30

|       |    |                                                            |
|-------|----|------------------------------------------------------------|
|       | 1  | Master.  And that Special Master's gonna be working        |
|       | 2  | full-time now.                                             |
| 09:04 | 3  | MR. LUSKIN:  All right.  Well, that's right,                |
|       | 4  | Your Honor.  I guess --                                     |
| 09:04 | 5  | THE COURT:  When's your deadline cutoff?                    |
| 09:04 | 6  | MR. LUSKIN:  June 4 is the discovery cutoff.                |
| 09:04 | 7  | THE COURT:  You can get it done by then.  I'm not           |
|       | 8  | gonna change your date.  Get it done.                      |
| 09:04 | 9  | MR. LUSKIN:  Okay, Your Honor.                              |
| 09:04 | 10 | THE COURT:  End of discussion.                             |
| 09:04 | 11 | Now you're on -- no.  Sit down.                            |
| 09:04 | 12 | Now, you're on a fast track.  You have a much             |
|       | 13 | different Court.  Up to this time, I've been very patient   |
|       | 14 | with all the parties.  That is dramatically changed now.    |
| 09:04 | 15 | You get this done by June 4th.                             |
| 09:04 | 16 | And that other side's going to be getting               |
|       | 17 | discovery to you very quickly.                              |
| 09:04 | 18 | Is that correct, Counsel?                                  |
| 09:04 | 19 | MS. KISER:  That's correct.                                 |
| 09:04 | 20 | THE COURT:  Very quickly.                                   |
| 09:04 | 21 | MS. KISER:  That is correct.                                |
| 09:04 | 22 | THE COURT:  All right.  Now, you get back to me in         |
|       | 23 | 48 hours.  You don't have to appear again.  But I want the  |
|       | 24 | name of that Special Master.  I want them contacted and     |
|       | 25 | they're working 24/7 if they have to.  But your dates don't |

**Certified for Payne & Fears**
**Debbie Gale, CSR 9472, RPR, CCRR**
**Federal Official Court Reporter**

EXHIBIT E, PAGE 80

8:17-CV-0606-DOC - 4/9/2018 - Item No. 2

31

|  |  |
|---|---|
| | 1 | change now. |
| 09:04 | 2 |      All right.  Counsel, I want to thank you. |
| | 3 | Good-bye. |
| 09:05 | 4 |      MR. CORDERO:  Thank you, Your Honor. |
| 09:05 | 5 |      MS. KISER:  Thank you. |
| 09:05 | 6 |      MR. FEARS:  Thank you, Your Honor. |
| 09:05 | 7 |    *(Proceedings concluded at 9:05 a.m.)* |
| | 8 |      -oOo- |

8:17-CV-0606-DOC - 4/9/2018 - Item No. 2

32

1                            -oOo-

2

3                         CERTIFICATE

4

5        I hereby certify that pursuant to Section 753,

6   Title 28, United States Code, the foregoing is a true and

7   correct transcript of the stenographically reported

8   proceedings held in the above-entitled matter and that the

9   transcript page format is in conformance with the

10  regulations of the Judicial Conference of the United States.

11

12  Date:  April 10, 2018

13

14                        /s/ Debbie Gale

15                        _____
                          DEBBIE GALE, U.S. COURT REPORTER
16                        CSR NO. 9472, RPR, CCRR

17

18

19

20

21

22

23

24

25

**Certified for Payne & Fears**
**Debbie Gale, CSR 9472, RPR, CCRR**
**Federal Official Court Reporter**

EXHIBIT E, PAGE 82