Liv Kiser SBN 285411
lkiser@kslaw.com
KING & SPALDING LLP
444 W. Lake Street
Suite 1650
Chicago, Illinois 60606
Telephone: (312) 995-6333
Facsimile: (312) 995-6330

Michael Shortnacy SBN 277035
mshortnacy@kslaw.com
KING & SPALDING LLP
633 West Fifth Street
Suite 1700
Los Angeles, California 90071

*Attorneys for Defendant*
*WURTH LOUIS AND COMPANY*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SANTA ANA DIVISION

| | |
|---|---|
| CRAFTWOOD II, INC., California corporation, dba BAY HARDWARE, individually, and as representative of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>WURTH LOUIS AND COMPANY, a California corporation, and Does 1 through 1000,<br><br>Defendant. | Case No. 8:17-cv-00606 (DOC) (KES)<br><br>Hon. David O. Carter<br><br>**Defendant Wurth Louis and Company's Memorandum of Contentions of Facts and Law** |

DEFENDANT'S MEM. OF CONTENTIONS OF FACT AND LAW

1    Defendant Wurth Louis and Company ("Wurth Louis") presents this

2    memorandum of contentions of fact and law.

3    **I.    Claims Plaintiff plans to pursue**

4    **Claim 1:** Plaintiff Craftwood II, Inc. ("Plaintiff," "Craftwood" or "Bay

5    Hardware") claims that Wurth Louis violated the Telephone Consumer

6    Protection Act, 47 U.S.C. § 227, "by using a []facsimile machine . . . to send

7    facsimile advertisements to [the] telephone facsimile machines of Bay Hardware."

8    ECF No. 1-1 at 16.

9    **Claim 2:** Plaintiff claims that Wurth Louis violated the Telephone

10   Consumer Protection Act, 47 U.S.C. § 227, "by using a []facsimile machine . . . to

11   send facsimile advertisements to [the] telephone facsimile machines of Bay

12   Hardware" that "fail to comply" with the TCPA's "Opt-Out Notice

13   Requirements." ECF No. 1-1 at 18.

14   As a preliminary note, Craftwood's two claims are redundant: there is no

15   separate claim for faxing without a compliant opt-out notice. An opt-out notice is

16   merely an element of the established-business-relationship defense. *See* 47 U.S.C. §

17   227. To avoid confusing the jury, Plaintiff has indicated it is considering whether

18   to consolidate Claims 1 and 2 into a single claim. Plaintiff should do so.

19   **II.    Claim 1: Alleged violation of 47 U.S.C. § 227**

20   **a.  Elements Craftwood must prove**

21   To establish its claim that Wurth Louis violated 47 U.S.C. § 227, Craftwood

22   must prove all of the following:

23   1.  That Wurth Louis used a "telephone facsimile machine";

24   2.  "to send, to a telephone facsimile machine";

25   3.  "an unsolicited advertisement."

26   47 U.S.C. § 227(b)(1); *True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d

27   923, 926 (9th Cir. 2018).

28   An "advertisement," as the TCPA means it, is a fax that does not merely

promote an "ancillary commercial benefit to either party," but instead, is in fact "an advertisement (or a pretext for an advertisement)." *Simon v. RadNet Mgmt., Inc.*, 2015 WL 13653873, at \*3 (C.D. Cal. Jan. 14, 2015). Courts consider, among other things, how much space on the fax page is devoted to overt advertising and how prominent the advertising is within the document. *Id.*

Moreover, the parties' commercial relationship here made the faxes setting forth discounts as well as mark downs on products and goods sold by Craftwood (d/b/a Bay Hardware) into offers to do business even if they also constituted "advertisements" as that term is defined in the TCPA.

**b. Some of Wurth Louis's key evidence opposing this claim**

- Documents and testimony from Wurth Louis employees and Craftwood employees or officers demonstrating that the facsimiles in issue were invited by Craftwood.

- Documents and testimony from Wurth Louis employees and Craftwood employees or officers demonstrating that the facsimiles at issue were consented to by Craftwood.

- Documents and testimony from Wurth Louis employees and Craftwood employees or officers demonstrating that Craftwood (d/b/a Bay Hardware) and its predecessors (also d/b/a Bay Hardware) had a long-standing business relationship with Wurth Louis in which both parties communicated business matters via facsimile with no restrictions placed on the particular form of communications.

- Documents and testimony from Wurth Louis and Craftwood employees or officers demonstrating that the opt-out language on the facsimiles was efficacious and understood by Plaintiff, who simply (and unreasonably) elected to not exclude itself by any means.

- Documents and testimony that Wurth Louis's opt-out language on the faxes transmitted to Plaintiff, combined with Defendant's actual practices, fully complied with the opt-out requirements in the statute and governing regulations (*i.e.*, the process by which customers excluded themselves was either instantaneous or effectuated within days).

- Documents and testimony demonstrating that Craftwood is not within the zone of interests the TCPA is designed to protect.

- Documents and testimony demonstrating that as applied to this case, the TCPA violates the First Amendment.

- Documents and testimony demonstrating that Craftwood suffered no actual damages related to the injury of which it complains and, therefore, lacks statutory standing.

- Documents and testimony demonstrating that Craftwood should be barred from recovery because, *inter alia*, it has taken actions and engaged in conduct that prevent it from asserting its claims.

- Documents and testimony demonstrating that Craftwood should be barred from recovery because, *inter alia*, it enticed Wurth Louis to send faxes to it over a period of years to manufacture a TCPA claim and/or also failed to mitigate the alleged damages it contends it suffered.

- Documents and testimony supporting each of Wurth Louis's affirmative defenses, discussed *infra* at Section V.[1]

## III.   Claim 2: Alleged violation of 47 U.S.C. § 227

This claim is redundant of the first and should be consolidated with claim 1

---

[1] In addition, Wurth Louis intends to offer documents and testimony from Wurth Louis and Craftwood employees or officers demonstrating that certain faxes allegedly sent to Craftwood are not "advertisements" within the meaning of the TCPA.

into a single claim. Wurth Louis will oppose it on the same grounds that it opposes Craftwood's first claim.

## IV.  Craftwood's claim for willful damages

Craftwood alleges that Wurth Louis's supposed violations of the TCPA were "willfully or knowingly" done so that Craftwood should be awarded a penalty of up to three times actual damages. *See* 47 U.S.C. § 227(b)(3). Wurth Louis did not act willfully, as the evidence in the case will demonstrate. Moreover, even if a defendant has been found by the jury to have acted willfully, whether to award additional damages is a matter committed to the trial court's sound discretion. *Id.* (stating that a court "may" award additional damages in its "discretion").

The TCPA does not define "willfully or knowingly." *See id.* Courts have primarily proposed two distinct meanings; the Ninth Circuit has not yet weighed in on which one applies. Some courts suggest that a defendant must merely "intend or know that it was performing each of the elements of a TCPA claim (*e.g.*, that it was making a call, to a person who did not provide prior express consent, using an automated system)." *Haysbert v. Navient Sols., Inc*., No. CV 15-4144 PSG (EX), 2016 WL 890297, at *10 (C.D. Cal. Mar. 8, 2016) (explaining split of authority); *see also Lary v. Trinity Physician Fin. & Ins. Servs*., 780 F.3d 1101, 1107 (11th Cir. 2015) ("The requirement of 'willful[ ] or knowing[ ]' conduct requires the violator to know he was performing the conduct that violates the statute.").

Other courts have rejected that standard—pointing out that if all a defendant must intend is to carry out the elements of the violation, there is little meaningful difference between willful and non-willful conduct. *See, e.g.*, *Texas v. Am. Blastfax, Inc.*, 164 F. Supp. 2d 892, 899 (W.D. Tex. 2001). These courts reason that Congress would not have intended such a nonsensical meaning of the term—nor would that interpretation comport with the purpose of additional damages: to deter bad faith conduct. These courts require a plaintiff to prove that the defendant actually knew, or

4

should have known, it was violating the statute.

Wurth Louis respectfully submits that this Court should adopt the meaning of willful that comports with the plain meaning of the term: Craftwood must prove that Wurth Louis knew of legal obligations it intentionally declined to follow. At the least, though, Craftwood must prove that Wurth Louis "intend[ed] or kn[e]w that it was performing each of the elements of a TCPA claim (*i.e.* that it was making a call [or here, sending a fax], to a person who did not provide prior express consent . . .". *Haysbert*, 2016 WL 890297, at *10. After all, Congress enacts legislation with a sense of what words mean, and "[a] voluntary act becomes willful, in law, only when it involves conscious wrong or evil purpose on the part of the actor, or at least inexcusable carelessness . . . .The term willful is stronger than voluntary or intentional." *Willful*, Black's Law Dictionary (10th ed. 2014).

### a. Some of Wurth Louis's key evidence opposing this claim

- Documents and testimony from Wurth Louis employees and Craftwood employees or officers demonstrating that Wurth Louis had a good-faith belief that its opt-out language complied with the TCPA, that it only faxed to customers, and that Bay Hardware was a long-standing customer who had used the same fax number for more than two decades. This includes, among other things, evidence that Craftwood/Bay Hardware had voluntarily provided its fax number to and faxed back-and-forth with Wurth Louis, that Wurth Louis believes the opt-out language was vetted by counsel, and that Wurth Louis employees and management at all times had a good faith belief that they were complying with the TCPA and all other applicable laws.

- Documents and testimony from Wurth Louis employees demonstrating that Wurth Louis targeted faxes to Craftwood based on customer preferences and needs.

- Documents and testimony from Wurth Louis employees and Craftwood

employees or officers demonstrating that Wurth Louis's promotions were valuable to customers like Craftwood.

- Documents and testimony from Craftwood employees or officers demonstrating that Craftwood itself admits that business to business faxing relating to product offerings such as at issue in this case does not violate the TCPA.

- Documents and testimony from Wurth Louis employees and Craftwood employees or officers demonstrating that Wurth Louis did not know (and could not reasonably have known) that Craftwood did not expressly consent to those faxes it now claims violated the TCPA. This includes, among other things, evidence that Craftwood consented to faxes through its communications and conduct with Wurth Louis and others.

## V.   Affirmative defenses

### a.  First affirmative defense: No TCPA Standing

Although Craftwood may have had constitutional standing to bring its claim, it has become increasingly clear that Craftwood does not have statutory standing to continue to assert a TCPA claim because, *inter alia*, it affirmatively took steps to manufacture its TCPA claim against Wurth Louis. *See Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) (explaining that "lack of statutory standing requires dismissal for failure to state a claim," while "lack of Article III standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)"); *In re Century Aluminum Co. Sec. Litig., 729* F.3d 1104, 1109 (9th Cir. 2013) ("failure to allege statutory standing results in failure to state a claim on which relief can be granted, not the absence of subject matter jurisdiction.").

A plaintiff cannot bring a claim under the TCPA unless its interests "fall within the zone of interests protected" by this statute. *Lexmark International, Inc. v. Static Control Components, Inc.,* 134 S. Ct. 1377, 1377-87 (2014). "[T]he zone of interest test is a guide for deciding whether, in view of Congress' evident intent to make every

agency action presumptively reviewable, a particular plaintiff should be heard to complain of a particular agency decision." *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 399, 107 S.Ct. 750, 93 L.Ed.2d 757 (1987).

### i.  Some of Wurth Louis's key evidence in support of this defense

- Documents and testimony from Wurth Louis employees and Craftwood employees and officers demonstrating that Craftwood has an established business relationship with Wurth Louis, Craftwood provided its fax number voluntarily, and Craftwood invited faxes by faxing to Wurth Louis.

- Documents and testimony from Wurth Louis employees and Craftwood employees or officers demonstrating that Craftwood fully understood Wurth Louis's opt-out procedure and intentionally failed to avail itself of it.

- Documents and testimony from Wurth Louis employees and Craftwood employees or officers demonstrating that Craftwood intentionally allowed the faxes to be sent to it only to then sue over them.   The Craftwood conduct included, for example, failing to use the opt-out information on the faxes it received, failing to call Wurth Louis to request an opt-out, failing to use the opt-out mechanism on its own fax machine, and, when faxing and calling Wurth Louis to discuss products or promotions, failing to tell Wurth Louis representatives to discontinue faxing.

- Documents and testimony from Craftwood employees or officers that Craftwood employees and officers previously have profited substantially from bringing TCPA cases.

### b.  Second affirmative defense: Violation of Due Process Clause

Statutory penalties violate due process "where the penalty prescribed is so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable." *St. Louis, I.M. & S. Ry. Co. v. Williams*, 251 U.S. 63, 66–67, 40 S.Ct.

71, 64 L.Ed. 139 (1919).

The statutory damages provision of the TCPA, which provides for statutory damages of up to $1500 for each unsolicited facsimile advertisement—would violate the Due Process Clause if Craftwood's positions in this case are accepted by the Court. Awarding thousands of dollars in damages for faxes sent with an opt-out provision that conspicuously explains to the recipient how to stop receiving faxes in the future—where there is essentially no nexus between plaintiff's claimed injury and the harm plaintiff alleges it suffered—would violate Wurth Louis's Due Process Rights under the United States Constitution, which prohibits the imposition of grossly excessive or arbitrary punishment. *See Texas v. Am. Blastfax, Inc.*, 164 F. Supp. 2d 892, 900 (W.D. Tex. 2001) (reducing damages under the TCPA to 7 cents per fax because a larger amount would be unreasonable).

### i. Some of Wurth Louis's key evidence in support of this defense

- Documents and testimony from Wurth Louis employees and Craftwood employees or officers demonstrating that Wurth Louis had a good faith belief that its opt-out language complied with the TCPA. This includes, among other things, evidence that the opt-out language was vetted by counsel, and evidence that Wurth Louis employees and management at all times had a good faith belief that they were complying with the TCPA and all other applicable laws.

- Documents and testimony from Wurth Louis employees and Craftwood employees or officers demonstrating that Craftwood intentionally allowed the faxes from Wurth Louis to be sent to it, including by, for example, failing to use the opt-out information on the faxes it received, failing to call Wurth Louis to request an opt-out, failing to use the opt-out mechanism on its own fax machine, and when faxing and calling Wurth Louis to discuss products or promotions, failing to tell Wurth Louis representatives to discontinue faxing.

- Documents and testimony from Wurth Louis employees and Craftwood employees or officers demonstrating that Craftwood continued its attempts to order products from Wurth Louis even after it brought this lawsuit.

**c. Third affirmative defense: Wurth Louis's opt-out language comported fully with the purpose of the TCPA and followed the obligations thereunder as a matter of fact, consistent with 47 U.S.C. § 227(b)(1)(C)(i)-(iii)**

Consistent with 47 U.S.C. § 227(b)(1)(C)(i)–(iii), Craftwood/Bay Hardware's claim fails because it had an established business relationship with Wurth Louis, because it provided its fax number to Wurth Louis voluntarily in the course of that relationship, and because Wurth Louis's opt-out notice on the faxes comported fully with the purpose of the TCPA and Wurth Louis itself *in practice* fully complied with the opt out requirements. *See Landsman & Funk, P.C. v. Lorman Bus. Ctr., Inc.*, No. 08-CV-481-BBC, 2009 WL 602019, at *1 (W.D. Wis. Mar. 9, 2009) (holding that opt-out notice substantially complied with TCPA despite not using precise words suggested by the statute). Moreover, Craftwood admitted it had *actual knowledge* about how to request exclusion from receipt of future faxes from Wurth Louis had it actually desired to do so.

**i. Some of Wurth Louis's key evidence in support of this defense**

- Documents and testimony from Wurth Louis employees and Craftwood employees and officers demonstrating that Craftwood has an established business relationship with Wurth Louis and that Craftwood provided its fax number voluntarily.
- Documents and testimony from Wurth Louis employees demonstrating that Wurth Louis's opt-out language was clear, conspicuous, and successfully used on a regular basis to opt-out of faxes.

9

- Documents and testimony from Wurth Louis employees indicating that when a request for exclusion was received it was immediately complied with.

- Documents and testimony from Wurth Louis employees and Craftwood employees or officers demonstrating that Craftwood fully understood Wurth Louis's opt-out procedure and intentionally failed to avail itself of it.

- Documents and testimony from Wurth Louis employees and Craftwood employees that faxing back and forth has been a standard practice in the hardware industry, as evidenced in part by Craftwood's affirmative purchase of the fax number of the previous owners of Bay Hardware.

### d. Fourth affirmative defense: Violation of the First Amendment

The Ninth Circuit has not yet considered whether the TCPA provisions at issue in this case withstand First Amendment scrutiny. But the U.S. Supreme Court recently held that "[c]ontent-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218, 2226, 192 L. Ed. 2d 236 (2015). The Court explained that "[g]overnment regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Id*. at 2227. That is so "regardless of the government's benign motive, content-neutral justification, or lack of animus toward the ideas contained in the regulated speech." *Id*. at 2228.

Courts have occasionally upheld the TCPA under intermediate scrutiny—but courts have recently flipped positions and applied the strict scrutiny standard to certain portions of the statute. *See, e.g.*, *Gallion v. Charter Commc'ns Inc.,* 287 F. Supp. 3d 920, 927 (C.D. Cal. 2018). Applying intermediate scrutiny here would require that the TCPA provision at issue serve a "substantial" government interest, that "the regulation

directly and materially advance[] the government interest;" and that the restriction be "no[] more extensive than necessary" to serve the government interest. *Central Hudson Gas & Electric Corp. v. Public Service Comm'n of New York,* 447 U.S. 557, 566, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980).

Courts have only rarely entertained as-applied challenges in this context, which asks whether these standards are unconstitutional as applied to this particular case, which is different than the common facial challenges that have been raised in many cases. *See Connector Castings, Inc. v. Newburg Rd. Lumber Co.,* No. 4:17-CV-01204-ERW, 2017 WL 3621329, at *2 (E.D. Mo. Aug. 23, 2017) (refusing to strike defense of as-applied First Amendment challenge to TCPA). The documentary and testimonial evidence in this case will demonstrate that the TCPA violates the First Amendment as applied to Wurth Louis.

### i.  Some of Wurth Louis's key evidence in support of this defense

- Documents and testimony demonstrating that the government does not have a substantial interest in regulating the close, invited business communications that Craftwood now contends violate the TCPA.

- Documents and testimony demonstrating that as applied to Wurth Louis in this case, the TCPA does not directly and materially advance the government's interest in protecting consumers and others from faxing harms, particularly because Craftwood, a business, not only invited or permitted the faxes here, but also because (as it admits) it intentionally refused to stop them even though it had many opportunities and ways to do so.

- Documents and testimony demonstrating that applying the TCPA to Wurth Louis here is far more extensive regulation than is needed for business communications concerning products with an established customer in an industry in which faxing has been commonplace for years.

//

1       **e. Sixth affirmative defense: Prior Express Consent of Craftwood d/b/a Bay**

2          **Hardware**

3      Craftwood/Bay Hardware's claims are barred because it or persons working for

4  it invited or expressly consented to receiving the faxes it sues over. Faxes are not

5  actionable when the recipient expressly invited or permitted the fax—what courts refer

6  to as consent. *McKesson*, 896 F.3d at 931. Companies like Craftwood may consent to

7  receive faxes (thus making them unsolicited and unactionable under the TCPA) in a

8  "variety" of ways. *Id.* at 931; *see also Martin v. Target Card Servs.*, No. CV 17-5372

9  PA (MRWX), 2018 WL 2723258, at *3 (C.D. Cal. Apr. 24, 2018) (plaintiff consented

10  as a matter of law to be contacted by giving her phone number to defendant on a credit

11  application).

12      In *Van Patten v. Vertical Fitness Grp., LLC*, the Ninth Circuit held that the court

13  should look to the "the transactional context" "in determining the scope of a

14  consumer's consent." 847 F.3d 1037, 1046 (9th Cir. 2017). Thus, in that case, because

15  a customer had given his fax number as part of signing up for a membership, he

16  consented to be contacted—including for promotional reasons—for anything

17  related to that membership. 847 F.3d at 1046.

18      In *McKesson*, the Ninth Circuit confirmed that evidence of consent to fax can

19  take "various forms"—including evidence of close customer "relationships," evidence

20  of general requests for faxes, evidence of one-on-one interactions between the

21  defendant and the plaintiff, and even an "outreach program to update contact

22  information" and customer "communication method preferences"—which is evidence

23  that a plaintiff may have consented during that outreach. *McKesson*, 896 F.3d at 933;

24  *see also Daubert v. NRA Group, LLC,* No. 3:15–CV–718, 189 F. Supp. 3d 442, 2016

25  WL 3027826 (M.D.Pa. May 27, 2016) (reviewing FCC guidance on the TCPA, and

26  noting that the agency has referred to evidence of consent in the form of "purchase

27  agreements, sales slips, and credit applications").

28  *//*

### i. Some of Wurth Louis's key evidence in supporting this defense

- Documents and testimony from Wurth Louis employees demonstrating the many ways that Craftwood may have consented to the faxes it sues over here, including via faxes, oral communications, and submission of credit forms, payments, and product orders.

- Documents and testimony from Wurth Louis employees demonstrating the outreach campaign in which Wurth Louis customers were asked to confirm their consent to receive faxes.

- Documents and testimony from Wurth Louis employees and Craftwood employees and officers demonstrating that Craftwood consented to receive future faxes by providing its fax number in various ways to Wurth Louis.

- Documents and testimony from Wurth Louis employees and Craftwood employees and officers demonstrating that the prior owners of Bay Hardware consented to faxing from Wurth Louis, and that Craftwood took steps to ratify that consent, including by intentionally purchasing the fax number from prior owners of Bay Hardware.

- Documents and testimony from Craftwood employees and officers demonstrating the faxing and oral communications between Craftwood and Wurth Louis constituted express consent that was not properly revoked.

- Documents and testimony demonstrating that faxing was common in this industry and was understood to be a key way in which parties communicated.

### f. Eighth affirmative defense:  Estoppel

"The doctrine of equitable estoppel . . . is founded on concepts of equity and fair dealing. It provides that a person may not deny the existence of a state of facts if he intentionally led another to believe a particular circumstance to be true and to rely

upon such belief to his detriment." *San Francisco Bay Area Rapid Transit Dist. v. Gen. Reinsurance Corp.,* 111 F. Supp. 3d 1055, 1070 (N.D. Cal. 2015), aff'd, 726 F. App'x 562 (9th Cir. 2018) (quotation omitted). Craftwood's affirmative conduct and statements led Wurth Louis to believe that Craftwood has consented to receive faxes or did not consider Wurth Louis's faxes to violate the TCPA.

### i.  Some of Wurth Louis's key evidence supporting this defense

- Documents and testimony demonstrating that Plaintiff can show nothing more than an "informational injury," and admitted it knew how to exclude itself from receipt of future faxes but affirmatively continued to receive faxes knowingly leading Wurth Louis to rely on Craftwood's actions and believe that Craftwood has in fact consented to fax communications.

- Documents and testimony demonstrating that Plaintiff itself violated the TCPA by sending at least one fax to Wurth Louis that failed to comply with, *inter alia*, 47 U.S.C. 227 §(d)(1)(B) and (d)(2).

### g.  Tenth affirmative defense:  Set Off

"[U]nder general and well-established principles of equity, either party to a transaction involving mutual debts and credits can strike a balance, holding [itself] owing or entitled only to the net difference." *Los Angeles Cty. Employees Ret. Ass'n v. Towers, Perrin, Forster & Crosby, Inc.*, No. CV 01-1351DDP(CTX), 2002 WL 32919576, at *7 (C.D. Cal. June 20, 2002).

### i.  Some of Wurth Louis's key evidence supporting this defense

- Documents and testimony demonstrating that Craftwood/Bay Hardware owes Wurth Louis for, *inter alia*, damages resulting from Craftwood's own TCPA violation.

### h.  Fifth, Eleventh and Thirteenth affirmative defenses: Triviality, Unclean Hands, Failure to Mitigate

Where plaintiffs intentionally create their harm and utterly fail to mitigate it,

their claims should not be actionable. *See, e.g.*, *Beyond Sys., Inc. v. Kraft Foods, Inc.*, 777 F.3d 712, 718 (4th Cir. 2015) (finding spam emails unactionable where the plaintiff intentionally took steps to continue receiving spam messages and collected them because "it hoped to increase its eventual recovery under anti-spam statutes"). Courts have recognized that, at some point, "common sense renders [some communications] inactionable under the TCPA." *Ryabyshchuck v. Citibank (S. Dakota) N.A.*, No. 11-CV-1236-IEG WVG, 2012 WL 5379143, at *3 (S.D. Cal. Oct. 30, 2012) (explaining that where plaintiff opted-out and received only one follow-up communication, TCPA claim was simply *de minimis* and inactionable); *see also Henrique v. U.S. Marshal*, 653 F.2d 1317, 1320 (9th Cir. 1981) ("The Court must recognize the common sense practicalities of the situation presented.").

Even under the TCPA, courts should not condone "absurd and unforeseen result[s]." *Id.* To allow plaintiffs to recover for hyper-technical violations that admittedly caused them no harm would "stretch an inflexible interpretation beyond the realm of reason." *See Henrique*, 653 F.2d at 1320.

### i.  Some of Wurth Louis's key evidence in support of its defense

- Documents and testimony from Wurth Louis employees and Craftwood employees demonstrating that Craftwood (d/b/a Bay Hardware and its predecessors) had a long-standing business relationship with Wurth Louis in which both parties communicated business matters via facsimile with no restrictions placed on the particular form of communications.

- Documents and testimony from Wurth Louis employees and Craftwood employees or officers demonstrating that Craftwood intentionally allowed the faxes it sues over to be sent to it, including by, for example, failing to use the opt-out information on the faxes it received, failing to call Wurth Louis to request an opt-out, failing to use the opt-out mechanism on its fax machine, and when faxing and calling Wurth Louis to discuss

products or promotions, failing to tell Wurth Louis representatives to discontinue faxing.

- Documents and testimony from Wurth Louis employees indicating that when a request for exclusion was received it was immediately complied with, and that Wurth Louis's practices, combined with the language in its faxes, caused it to be fully compliant with the TCPA.

- Documents and testimony from Wurth Louis employees and Craftwood employees and officers demonstrating that Craftwood has an established business relationship with Wurth Louis and that Craftwood provided its fax number voluntarily for the express purpose of furthering the parties' commercial relationship.

- Documents and testimony from Wurth Louis employees demonstrating that Wurth Louis's opt out language was clear, conspicuous, and successfully used by recipients on a regular basis to opt-out of faxes.

- Documents and testimony from Wurth Louis employees and Craftwood employees or officers demonstrating that Craftwood fully understood Wurth Louis's opt-out procedure and intentionally failed to avail itself of it.

### i.  Fifteenth affirmative defense: statutory standing

A "statutory cause of action extends only to plaintiffs whose interests 'fall within the zone of interests protected by the law invoked.'" *Lexmark*, 134 S. Ct. at 1387. "[T]he zone of interest test is a guide for deciding whether, in view of Congress' evident intent to make every agency action presumptively reviewable, a particular plaintiff should be heard to complain of a particular agency decision." *Clarke*, 479 U.S. at 399. A court must "determine, using traditional tools of statutory interpretation, whether a legislatively conferred cause of action encompasses a *particular plaintiff's* claim." *Lexmark,* 134 S. Ct. at 1387 (emphasis added).

In one of the only cases concerning a professional plaintiff like Craftwood, a

federal court held that the plaintiff had no statutory standing to sue under the TCPA. *See Stoops v. Wells Fargo Bank, N.A.*, 197 F. Supp. 3d 782, 804 (W.D. Pa. 2016). The court explained that the interests of a plaintiff that lies in wait, in "hope[s] of receiving" communications for the purpose of "collecting statutory damages, are not 'among the sorts of interests the TCPA was specifically designed to protect." *Id.* (quotation omitted). "[I]t is unfathomable that Congress considered a consumer who files TCPA actions as a business when it enacted the TCPA." *Id.*

Although Craftwood's Bay Hardware store indisputably engages in the business of selling hardware expressly of a type that Wurth Louis sells—there is little question that it is separately in the business of TCPA litigation, which brings its interests outside the TCPA's scope.  In addition, Craftwood's claims fall outside the required zone of interest because Craftwood in effect took every step to manufacture a TCPA cause of action – *e.g.*, by creating a reasonable belief in Wurth Louis that it had obtained permission or invitation to send promotional offers to Craftwood, a purchasing customer, for products that Craftwood sells.

### i.  Some of Wurth Louis's key evidence in support of this defense.

- Documents and testimony demonstrating that Craftwood intentionally allowed its fax machine to receive and collect faxes from Wurth Louis—and many other companies—for the sole "purpose of collecting statutory damages."

- Documents and testimony demonstrating that Craftwood knew how to opt-out of faxes from Wurth Louis—and many other companies—but intentionally failed to do so for the sole "purpose of collecting statutory damages."

- Documents and testimony demonstrating that Craftwood invited continued faxing from Wurth Louis—not for any legitimate purpose—but for the sole "purpose of collecting statutory damages."

- Documents and testimony demonstrating that Craftwood set its fax machine to print faxes from Wurth Louis—and many other customers—not for any legitimate business purpose, but for the sole "purpose of collecting statutory damages."

- Documents and testimony demonstrating that Craftwood is a professional TCPA plaintiff who uses its fax machine for the business of collecting faxes to sue companies like Wurth Louis for statutory damages.

### j. Other defenses

Wurth Louis expressly reserves the right to conform its defenses to the proofs as they may develop during the trial.

## VI.  Evidentiary issues

Wurth Louis opposes admission of many exhibits that Craftwood intends to introduce at trial. But Wurth Louis believes that outstanding evidentiary issues are, or will be, set forth in the parties' pre-trial submissions, including motions *in limine*, exhibit-list objections, deposition designations and objections, and any motions to strike witnesses or proposed exhibits under FED. R. CIV. P. 37(c).

## VII.  Issues of law

As set forth in Wurth Louis's prior motion to dismiss and its opposition to plaintiff's motion to certify, there are several outstanding issues of law, which undermine Craftwood's claims here.

*First*, Craftwood has suggested that a defendant willfully violates the TCPA merely by sending a fax to a customer with knowledge that the TCPA exists. But as explained above, not so. A defendant must actually know that it is violating the TCPA to be acting willfully—or at the least, know that it is carrying out each element of the claim, including knowing that it was faxing someone who did not solicit the fax. *See Haysbert*, 2016 WL 890297, at *10. With the proper legal standard in place, Craftwood's willfulness claim dissolves: the undisputed evidence confirms that everyone at Wurth Louis believed it was complying with the TCPA—and regardless

of what Wurth Louis's understanding was about the TCPA's requirements, there is no evidence suggesting that Wurth Louis knew it was faxing Craftwood without its consent, and there is a lot of evidence to the contrary.

*Second*, Craftwood has repeatedly suggested during the course of this litigation that defendants must have some sort of specific record itemizing precisely when and how a plaintiff consented. Craftwood has also suggested that defendants must keep a written record of consent. Neither suggestion is true, as explained most recently in *McKesson*. 896 F.3d at 933 (recognizing that relationships, communications, context, and providing a fax number can all give rise to consent, and clarifying that defendants are not required to keep a written record of consent).

*Third*, Craftwood has taken the position that it has statutory standing under the TCPA so long as it otherwise carries out business as a hardware store (or occasionally uses its fax machine for a legitimate reason). But as explained above, a plaintiff who operates a fax machine in a manner principally designed to entrap defendants and profit from statutory claims is not within the zone of interests protected by the TCPA. *See, e.g., Stoops*, 197 F. Supp. 3d at 804. The principle animating cases like *Stoops* does not require that Craftwood bought its fax machine for the sole purpose of bringing TCPA litigation—only that it was operating the fax machine with the intent to entrap legitimate business partners in TCPA litigation (which does not constitute a legitimate business purpose).

*Fourth*, Craftwood maintains that failure to mitigate is not a proper defense to a TCPA claim. But as courts in this district have held: where a plaintiff has suffered *de minimis* harm and intentionally failed to avoid faxes so as to profit from statutory damages—its claim is not actionable. *See, e.g.*, *Ryabyshchuck,* 2012 WL 5379143, at *3.

*Fifth*, Craftwood argues that the Due Process Clause does not apply to the TCPA claim it brings here. But it ignores the Supreme Court's admonition that grossly unreasonable damages—even statutory ones—may run afoul of the Due

1    Process Clause. *See St. Louis*, 251 U.S. at 66–67. And in the extreme and unusual

2    situation here, where Craftwood intentionally created this harm by inviting the faxes it

3    sues over, an award of even statutory damages of $500 per fax would be grossly

4    unreasonable.

5        *Sixth*, Craftwood has taken the position that substantial compliance is not a

6    defense to a TCPA claim. But courts have held that when a defendant makes a minor

7    technical mistake in its opt-out language—and that the language is otherwise entirely

8    effective to carry out the purposes of the TCPA—that the opt-out complies with the

9    statute. *See, e.g., Landsman & Funk, P.C. v. Lorman Bus. Ctr., Inc.*, No. 08-CV-481-

10   BBC, 2009 WL 602019, at *1 (W.D. Wis. Mar. 9, 2009).  Here, there is an even

11   stronger case to find the EBR defense applies because Wurth Louis's *actual practices*,

12   combined with the opt-out language at the bottom of the faxes, caused it to be 100

13   percent compliant with the TCPA.  Moreover, and as noted above, Craftwood itself

14   violated the TCPA in at least one of the faxes it sent to Wurth Louis.

15       *Finally*, Craftwood contends that the First Amendment does not apply here. But

16   the Ninth Circuit has not yet decided whether the particular TCPA provisions at issue

17   here survive the First Amendment in light of recent Supreme Court case law, which

18   clarified the standard for applying the First Amendment to statutes. *See Reed,* 135 S.

19   Ct. at 2226. Nor has the Ninth Circuit considered an as-applied challenge in a case

20   like this, where the government's interest in regulating Wurth Louis's

21   communications with its purchasing customer is slim to none. This is a unique case:

22   Craftwood attempts to charge a TCPA violation on a company who was

23   communicating with it for legitimate business reasons, even though Craftwood, a

24   regularly-purchasing business customer of Wurth Louis, exists in an industry in which

25   businesses routinely have communicated by fax (as Craftwood well knows, given it

26   expressly purchased the fax number from Bay Hardware's prior owners in issue in this

27   lawsuit, the same fax number that Wurth Louis had had in its files for decades).  These

28   circumstances render this situation distinguishable from the facts addressed in the

existing case law in this area.

**VIII.  Bifurcation of issues**

To be determined.

**IX.      Jury trial**

The parties are having a jury trial.

**X.       Attorney fees**

Craftwood has not asserted any claim for which attorneys' fees can be awarded.

**XI.     Abandonment of issues**

The seventh and ninth affirmative defenses have been mooted by the Court as a result of its denial of class certification and, therefore, Wurth Louis no longer plans to put in evidence relating to those particular affirmative defenses unless it must put forth as rebuttal evidence to Plaintiff's evidentiary record.

DATED:  October 26, 2018

KING & SPALDING LLP

By:   /s/ Livia M. Kiser

Attorneys for Defendant

WURTH LOUIS & COMPANY

## Certificate of Service

On, October 26, 2018, I caused to be filed this document using the Court's CM/ECF system, causing it to be served upon all ECF-registered counsel of record per Rule 5(b)(3) of the Federal Rules of Civil Procedure.


By:   /s/ Livia M. Kiser

Attorneys for Defendant

WURTH LOUIS & COMPANY