1  C. Darryl Cordero, Bar No. 126689
   cdc@paynefears.com
2  Scott O. Luskin, Bar No. 238082
   sol@paynefears.com
3  PAYNE & FEARS LLP
   400 Continental Blvd., Suite 600
4  El Segundo, CA 90245
   Telephone: (310) 689-1750
5  Facsimile: (310) 689-1755

6  Attorneys for Plaintiff Craftwood II, Inc.,
   dba Bay Hardware, individually and as
7  representative of all others similarly situated

8

## UNITED STATES DISTRICT COURT

9

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

10

| | |
|---|---|
| 11  Craftwood II, Inc., *et al.*, | Case No. 8:17-cv-00606 (DOC) (KES) |
| 12            Plaintiff, | Hon. David O. Carter |
| 13       v. | **Plaintiff Craftwood II, Inc.'s Local Rule 16-4 Memorandum of Contentions of Fact and Law** |
| 14  Wurth Louis & Company, *et al.*, | |
| 15            Defendant. | Pre-Trial Conf.:  November 16, 2018 |
| 16 | Time:               7:30 A.M. |
|  | Courtroom:           9D |
| 17 | |
| 18 | Trial Date:        December 4, 2018 |
|  | Time:               8:30 A.M. |
| 19 | Courtroom:           9D |

20

21

22

23

24

25

26

27

28

PAYNE & FEARS LLP
ATTORNEYS AT LAW
400 CONTINENTAL BLVD., SUITE 600
EL SEGUNDO, CALIFORNIA 90245
(310) 689-1750

Pursuant to Local Rule 16-4, Plaintiff Craftwood II, Inc. hereby submits its pretrial Memorandum of Contentions of Fact and Conclusions of Law:

### Summary Statement of Plaintiff's Claims

1.    Defendant Wurth Louis and Company violated the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227.

Required Elements:

The TCPA makes it "unlawful" for any person to send an "unsolicited advertisement" by facsimile transmission. 47 U.S.C. § 227(b)(1)(C). Facsimile advertisements are unsolicited if they are sent without recipients' "prior express invitation or permission." 47 U.S.C. § 227(a)(5). An "advertisement" is subject to the TCPA if it is "any material advertising the commercial availability or quality of any property, goods, or services." 47 U.S.C. § 227(a)(5). Here, to establish its claim, Craftwood must prove:

1.    Wurth (or its agent) used any telephone facsimile machine, computer, or other devices to send, to a telephone facsimile machine;

2.    an advertisement.

*See* 47 U.S.C. § 227(b)(1)(C). Notably, the TCPA is "a strict liability statute." *Lemieux v. Lender Processing Ctr.*, No. 16-CV-01850-BAS-DHB, 2018 WL 637945, at *3 (S.D. Cal. Jan. 31, 2018) citing *Alea London Ltd. v. Am. Home Servs., Inc.*, 638 F.3d 768, 776 (11th Cir. 2011); *Penzer v. Transp. Ins. Co.,* 545 F.3d 1303, 1311 (11th Cir. 2008). The TCPA does not require any intent for

PAYNE & FEARS LLP
ATTORNEYS AT LAW
400 CONTINENTAL BLVD., SUITE 600
EL SEGUNDO, CALIFORNIA 90245
(310) 689-1750

1  liability.  *Alea,* 638 F.3d at 776.

2

3      The Court can also treble damages for willful or knowing violations.  The

4  elements are:

5

6      1.    Did Wurth willfully send the faxes; or

7

8      2.    Did Wurth knowingly send the faxes.

9

10 *See* 47 U.S.C. § 227(b)(1)(C).

11

12     Although neither the TCPA nor the FCC regulations define the terms

13 "willfully or knowingly," courts have generally interpreted willfulness to imply only

14 that an action was intentional.  *Smith v. Wade,* 461 U.S. 30, 41 n. 8 (1983).  While

15 the TCPA does not define willful, the Communications Act of 1934 (47 U.S.C. §

16 151 *et seq.*) of which the TCPA is a part, defines willful as "the conscious or

17 deliberate commission or omission of such act, irrespective of any intent to violate

18 any provision[ ], rule or regulation."  47 U.S.C. § 312 (f)(1).  Thus, the standard to

19 show a "willful or knowing" violation is modest; it "simply requires that the act be

20 intentional or volitional, as opposed to inadvertent, and not that defendant must have

21 known that the conduct would violate the statute."  *Bridgeview Health Care Ctr. v.

22 Clark*, No. 09 C 5601, 2013 WL 1154206, at *7 (N.D. Ill. Mar. 19, 2013); *see also

23 Roylance v. ALG Real Estate Servs., Inc.*, No. 5:14-CV-02445-PSG, 2015 WL

24 1522244, at *11 (N.D. Cal. Mar. 16, 2015), *report and recommendation adopted as

25 modified,* No. 14-CV-02445-BLF, 2015 WL 1544229 (N.D. Cal. Apr. 3, 2015)

26 ("Because Congress chose to employ a low threshold to assess treble damages, by

27 requiring a caller's actions to be 'knowing' or 'willful' it is important to highlight"

28 that the TCPA gives courts discretion to determine whether treble damages are

PAYNE & FEARS LLP
ATTORNEYS AT LAW
400 CONTINENTAL BLVD., SUITE 600
EL SEGUNDO, CALIFORNIA 90245
(310) 689-1750

1  appropriate.").  Indeed, "'a plaintiff need not prove that defendant had knowledge of

2  the TCPA's provisions...'"  *Bridgeview*, 2013 WL 1154206, at *7.  The plaintiff

3  need only show that a defendant willfully or knowingly sent the unsolicited

4  communications which resulted in a violation of the TCPA.  *Stewart v. Regent Asset*

5  *Mgmt. Sols.*, No. 1:10-CV-2552-CC-JFK, 2011 WL 1766018, at *6 (N.D. Ga. May

6  4, 2011); *Sengenberger v. Credit Control Servs., Inc.*, No. 09C2796, 2010 WL

7  1791270, at *6 (N.D. Ill. May 5, 2010), *adhered to on reconsideration,* No. 09 C

8  2796, 2010 WL 6373008 (N.D. Ill. June 17, 2010).

9

10     Evidence in Support of Claim:

11

12     Advertisements:   Faxes Craftwood received from Wurth showing that they

13  were advertisements.  Wurth admitted that many were advertisements in response to

14  requests for admission.  Additional flyers produced by Wurth that were sent to

15  Craftwood that advertise products or services.  Testimony from Wurth employees

16  and former employees that the purpose of the fax program was to sell products.

17  Correspondence by and among Wurth showing that the particular faxes were

18  advertisements.  Westfax invoices showing that the documents were sent en masse

19  as part of an overall marketing program designed to sell products.

20

21     Sent by Wurth's agent Westfax to Craftwood:  Phone records and testimony

22  showing that Craftwood is the subscriber of 562-594-4054.  Faxes kept by

23  Craftwood from Wurth.  Fax lists showing intended recipients for the fax

24  broadcasts.  Wurth correspondence regarding the fax broadcasts, including relevant

25  metadata.  Invoices from Westfax, Inc., Wurth's third-party broadcaster showing the

26  faxes were sent, the date of sending, and the name of the job.  Craftwood's fax

27  journals showing Wurth sent the identified faxes on the identified dates.

28

PAYNE & FEARS LLP
ATTORNEYS AT LAW
400 CONTINENTAL BLVD., SUITE 600
EL SEGUNDO, CALIFORNIA 90245
(310) 689-1750

-4-

To the extent necessary, Craftwood will also present evidence that it has standing under Article III: This would include evidence of Craftwood's ongoing hardware store business serving the local Seal Beach community.  Craftwood will also show the company's extreme dislike of junk faxes, and its prior attempts to stop junk faxing through FCC complaints and other methods.  And Craftwood will present evidence of its actual damages, which Craftwood has calculated to be several dollars per fax.  Craftwood will offer testimony and documents showing Craftwood's costs related to using its fax machine (paper, toner, and fax machine purchases) and time wasted by Craftwood handling junk faxes.

Willfully and knowingly:  Testimony from Wurth employees that the company intentionally sent the faxes through Westfax.  Additional testimony of Wurth's key employees, like its former CEO, that Wurth was aware of the act and its requirements.  Craftwood will also show that Wurth had to agree it complied with the act every time it sent a fax through Westfax's web portal.  Craftwood will demonstrate that Wurth continued sending junk faxes for over a month even after it got sued in this case.  To the extent it is necessary to also defeat Wurth's affirmative defenses of established business relationship and prior express invitation or permission, Craftwood incorporates that evidence here as well.

### Summary Statement of Defendant's Affirmative Defenses

Wurth asserts numerous affirmative defenses in its answer.  During the Rule 16 conference, Wurth was unwilling to agree that any of them are no longer at issue. Several are not affirmative defenses or defenses at all to a TCPA claim.

1.    Craftwood does not have Article III standing

PAYNE & FEARS LLP
ATTORNEYS AT LAW
400 CONTINENTAL BLVD., SUITE 600
EL SEGUNDO, CALIFORNIA 90245
(310) 689-1750

2.    The TCPA is unconstitutional because it violates due process for grossly excessive statutory damages

3.    Wurth asserts the 3-part established business relationship safe harbor

4.    The TCPA is unconstitutional because it violates the First Amendment

5.    Wurth asserts Craftwood is not entitled to any relief because its damages are trivial

6.    Wurth asserts Craftwood gave prior express consent to receive fax advertisements

7.    Wurth asserts Craftwood is estopped from bringing claims because it is a customer

8.    Wurth asserts Craftwood's claim violates the statute of limitations

9.    Wurth asserts that Craftwood's claim must be reduced by amounts owed to Wurth by Craftwood

10.   Wurth asserts that Craftwood's claim must fail because it engaged in unlawful, inequitable, or improper conduct

11.   Wurth asserts that Craftwood must indemnify Wurth for its attorneys' fees and costs if Bay Hardware loses at trial

12.   Wurth asserts that Craftwood failed to mitigate its damages

PAYNE & FEARS LLP
ATTORNEYS AT LAW
400 CONTINENTAL BLVD., SUITE 600
EL SEGUNDO, CALIFORNIA 90245
(310) 689-1750

13.   Wurth asserts that Craftwood does not fall within the statutory zone of interest of the TCPA because it is supposedly a professional plaintiff and failed to opt-out after first receiving a fax from Wurth

**First Affirmative Defense (Craftwood does not have Article III standing):**

Required Elements:

"No standing" is not a permitted affirmative defense.  To the extent there are elements to this issue, Craftwood must have

(1) suffered a concrete injury in fact;

(2) that is fairly traceable to the challenged conduct of the defendant; and

(3) is likely to be redressed by a favorable judicial decision.

*See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), as revised (May 24, 2016).  But standing is conferred merely by asserting a TCPA claim, as explained by the Ninth Circuit's holding that "a violation of the TCPA is a concrete, de facto injury." *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1042-43 (9th Cir. 2017).  The Ninth Circuit explained that "Congress identified unsolicited contact as a concrete harm, and gave consumers a means to redress this harm." *Van Patten*, 847 F.3d at 1043.  The court, therefore, held that "[a] plaintiff alleging a violation under the TCPA 'need not allege any additional harm beyond the one Congress has identified.'" *Id*. at 1042-43 (quoting *Spokeo*, 136 S. Ct. at 1549).  The reason is that TCPA claims are just the type that Congress sought to protect consumers from— "the unwanted intrusion and nuisance of unsolicited telemarketing phone calls and

PAYNE & FEARS LLP
ATTORNEYS AT LAW
400 CONTINENTAL BLVD., SUITE 600
EL SEGUNDO, CALIFORNIA 90245
(310) 689-1750

fax advertisements." *Id*. at 1042-43. (citing Pub. L. 102–243, § 2, ¶ 12).   This Court agreed in denying the motion to dismiss.  (Dkt. 49.)

Evidence in Opposition:

Concrete injury:  Testimony and documents showing Craftwood's actual damages of several dollars per junk fax, like Craftwood's costs related to using its fax machine (paper, toner, and fax machine purchases) and time wasted by Craftwood handling junk faxes.  Testimony regarding the invasion of Craftwood's privacy and seclusion.

Fairly traceable:  Testimony and documents showing that Wurth caused the faxes to be sent.

Redressed by a favorable judicial decision:  Statutory damages are available, so there's no evidence required for this element.

**Second Affirmative Defense (The TCPA is unconstitutional because it violates due process for grossly excessive statutory damages)**

Required Elements:

The TCPA provides that a person or entity that brings suit for TCPA violations may "recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater."  47 U.S.C. § 227(b)(3)(B).  For a defendant's knowing or willful TCPA violations, the TCPA further provides that "the court may, in its discretion, increase the amount of the award to an amount equal to not more than three times the amount" otherwise

PAYNE & FEARS LLP
ATTORNEYS AT LAW
400 CONTINENTAL BLVD., SUITE 600
EL SEGUNDO, CALIFORNIA 90245
(310) 689-1750

-8-

1    available, or $1,500.  *Id.*  Wurth argues that the TCPA's provision for monetary

2    damages violates the Due Process Clause of the Fifth Amendment.

3

4        Numerous courts have rejected challenges to the statutory damages provision

5    in the TCPA under the Due Process Clause and have held it constitutional on its

6    face.  *See Pasco v. Protus IP Sol., Inc.*, 826 F. Supp. 2d 825, 835 (D. Md. 2011)*;

7    Green v. Anthony Clark Int'l Brokers, Ltd.*, No. 09 C 1541, 2010 WL 431673 at *5-

8    6 (N.D. Ill. Feb. 1, 2010); *Krakauer v. Dish Network, LLC*, No. 1:14-CV-333, 2017

9    WL 2455095 at *13-14 (M.D. N.C. Jun. 6, 2017); *Arcilla v. Adidas Promotional

10   Retail Operations, Inc.*, 488 F. Supp. 2d 965, 972 (C.D. Cal. 2007); *Accounting

11   Outsourcing, LLC v. Verizon Wireless Pers. Commc'n*, 329 F. Supp. 2d 789, 808-10

12   (M.D. La. 2004); *Texas v. Am. Blastfax, Inc.*, 121 F. Supp. 2d 1085, 1090-91 (W.D.

13   Tex. 2000); *Kenroe, Inc. v. Fax Daily, Inc.*, 962 F. Supp. 1162, 1164-67 (S.D. Ind.

14   1997).

15

16       Courts routinely cite to *St. Louis, I. M. & S. Ry. Co. v. Williams*, 251 U.S. 63,

17   66-67 (1919), for the standard that statutory penalties violate due process "only

18   where the penalty prescribed is so severe and oppressive as to be wholly

19   disproportioned to the offense and obviously unreasonable."  Courts are hesitant to

20   declare a statutory damages provision unconstitutional, because Congress possesses

21   "a wide latitude of discretion to prescribe penalties for violations of [its] laws, and

22   those penalties, which often serve a deterrent effect, are to be considered with due

23   regard for the interests of the public, the numberless opportunities for committing

24   the offense, and the need for securing uniform adherence."  *Pasco*, 826 F. Supp. 2d

25   at 835 (citing *Williams*, 251 U.S. at 66-67).  Specifically in relation to the TCPA, the

26   $500 per violation damages provision is meant to address harms that are otherwise

27   unquantifiable such as invasions of privacy, unwanted disruptions, tied-up phone

28   lines, and wasted time spent responding to unwanted ads.  *See Krakauer*, 2017 WL

PAYNE & FEARS LLP
ATTORNEYS AT LAW
400 CONTINENTAL BLVD., SUITE 600
EL SEGUNDO, CALIFORNIA 90245
(310) 689-1750

1   24455095 at *6.

3   Evidence in Opposition:

5   This appears to be a legal issue.

7   **Third Affirmative Defense (Wurth asserts the 3-part established business**
8   **relationship safe harbor):**

10   Required Elements:

12   An exception to the prohibition against unsolicited fax advertisements may
13   exist if the advertiser has an "established business relationship" ("EBR") with the
14   recipient and includes "clear and conspicuous" opt-out disclosures on the first page
15   of each ad.  47 U.S.C. § 227(a)(5), (b)(1)(C)(i)-(iii).  The required elements are that:

17   1.      Craftwood and Wurth had a business relationship;

19   2.      Wurth obtained the number of the telephone facsimile machine through
20           (a) the voluntary communication of such number, within the context of
21           such established business relationship, or (b) a directory, advertisement,
22           or site on the Internet to which the recipient voluntarily agreed to make
23           available its facsimile number for public distribution; and

25   3.      Wurth's faxes contain a notice meeting the following requirements:

27           a.      the notice is clear and conspicuous and on the first page of the
28                   unsolicited advertisement;

PAYNE & FEARS LLP
ATTORNEYS AT LAW
400 CONTINENTAL BLVD., SUITE 600
EL SEGUNDO, CALIFORNIA 90245
(310) 689-1750

-10-

b.     the notice states the recipient has a legal right to stop future faxes;

c.     the notice states that the recipient may make a request to the sender of the unsolicited advertisement not to send any future unsolicited advertisements to any telephone facsimile machine or machines (not just the one to which the ad was sent) and that failure to comply, within 30 days, with such a request is unlawful;

d.     the notice sets forth the requirements for a valid opt-out request, including the explanation that: a request not to send future unsolicited advertisements to a telephone facsimile machine complies with the requirements under this subparagraph only if—(A) The request identifies the telephone number or numbers of the telephone facsimile machine or machines to which the request relates; (B) The request is made to the telephone number, facsimile number, Web site address or email address identified in the sender's facsimile advertisement; and (C) The person making the request has not, subsequent to such request, provided express invitation or permission to the sender, in writing or otherwise, to send such advertisements to such person at such telephone facsimile machine;

e.     the notice includes a domestic contact telephone and facsimile machine number for the recipient to transmit such a request to the sender;

PAYNE & FEARS LLP
ATTORNEYS AT LAW
400 CONTINENTAL BLVD., SUITE 600
EL SEGUNDO, CALIFORNIA 90245
(310) 689-1750

-11-

PAYNE & FEARS LLP
ATTORNEYS AT LAW
400 CONTINENTAL BLVD., SUITE 600
EL SEGUNDO, CALIFORNIA 90245
(310) 689-1750

1        f.     the telephone and facsimile machine numbers and the cost-free

2              mechanism to permit an individual or business to make such a

3              request at any time on any day of the week; and

5        g.     the opt-out disclosure must be separate from any other

6              disclosures.

*See* Dkt. 49 (*citing* 47 U.S.C. § 227(b)(1)(C); 47 C.F.R. § 64.1200(a)(4)); In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991 Junk Fax Prevention Act of 2005, 21 F.C.C. Rcd. 3787, 3801 (2006).  The FCC has already found substantial compliance is not enough.  *See* Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 29 F.C.C. Rcd. 13998, 14012, ¶ 33 (2014); *see also Career Counseling, Inc. v. Amsterdam Printing & Litho, Inc.*, No. 3:15-CV-05061-JMC, 2018 WL 3037106, at *9 (D.S.C. June 19, 2018) (the defendant's admission that it failed to include language that "[its] failure to respond to an opt-out request within thirty (30) days is unlawful," was an admission that the faxes' opt-out notices are insufficient as a matter of law."); *Drug Reform Coordination Network, Inc. v. Grey House Publ'g, Inc.*, 106 F. Supp. 3d 9, 16 (D.D.C. 2015) ("even if [the defendant] could demonstrate that it had an 'existing business relationship' with [the plaintiff], its noncompliance with the TCPA's strict notice requirements disqualifies it from the safe harbor.").

Evidence in Opposition:

Wurth's notice does not meet the required standard:  Craftwood will show several deficiencies by examining the disclosure on each fax sent to Craftwood.

**Fourth Affirmative Defense (The TCPA is unconstitutional because it violates the First Amendment):**

Required Elements:

This is not really an affirmative defense.  Regardless, since 1991 the TCPA has repeatedly withstood challenges as to its constitutionally based on the First Amendment.  *See, e.g., Accounting Outsourcing, LLC v. Verizon Wireless Pers. Commc'ns, L.P.*, 329 F. Supp. 2d 789, 802-05 (M.D. La. 2004); *Covington & Burling v. International Mktg. & Research, Inc.,* No. CIV.A. 01-0004360, 2003 WL 21384825 at *4 (D.C. Super. Apr. 16, 2003); *Kaufman v. ACS Sys., Inc.*, 110 Cal. App. 4th 886, 921-922 (2003); *Texas v. American Blastfax, Inc.,* 121 F. Supp. 2d 1085, 1090-91 (W.D. Tex. 2000); *Kenro, Inc. v. Fax Daily, Inc.,* 962 F. Supp. 1162, 1166-67 (S.D. Ind. 1997); *Destination Ventures, Ltd. v. FCC*, 46 F.3d 54, 55-57 (9th Cir. 1995); *Missouri ex rel. Nixon v. American Blast Fax, Inc*., 323 F.3d 649, 660 (8th Cir.), *reh. den., reh. en banc den*., 2003 U.S. App. LEXIS 13540 (8th Cir. 2003), *cert. den*., 540 U.S. 1104 (2004).

Evidence in Opposition:

This is a legal issue.  To the extent necessary, Craftwood will show the commercial nature of the faxes sent.

**Fifth Affirmative Defense (Wurth asserts Craftwood is not entitled to any relief because its damages are trivial):**

This defense appears to repeat Wurth's claim that the TCPA's provision for monetary damages violates the Due Process Clause of the Fifth Amendment, and

-13-

PAYNE & FEARS LLP
ATTORNEYS AT LAW
400 CONTINENTAL BLVD., SUITE 600
EL SEGUNDO, CALIFORNIA 90245
(310) 689-1750

1   Craftwood therefore incorporates its response to that here.

2

3   **Sixth Affirmative Defense (Wurth asserts Craftwood gave prior express**

4   **consent to receive fax advertisements):**

5

6   Required Elements:

7

8   An exception to the prohibition against unsolicited fax advertisements may

9   exist if the advertiser has the "prior express invitation or permission" ("PEP") of the

10  recipient.  47 U.S.C. § 227(b)(1)(A), (B).  But it is not enough for a recipient to have

11  agreed to communicate by fax generally.  Rather, "[e]xpress permission to receive a

12  faxed ad requires that the consumer understand that by providing a fax number, he

13  or she is agreeing to receive faxed advertisements."  In Re Rules & Regulations

14  Implementing the Tel. Consumer Prot. Act of 1991, 18 F.C.C. Rcd. 14014, 14129, ¶

15  193 (2003) ("2003 FCC Order"); *Jemiola v. XYZ Corp.*, 802 N.E.2d 745, 749 (Ohio

16  C.P. 2003).

17

18  The elements include:

19

20  1.      Craftwood gave Wurth it's fax number;

21

22  2.      Craftwood expressly invited or gave permission to Wurth to send faxed

23          advertisements to that fax number; and

24

25  3.      Invitation and permission were provided before the faxes were sent.

26

27  *Id*.  Implied "consent" is not a defense.  *See, e.g., Physicians Healthsource, Inc. v.*

28  *Allscripts Health Solutions, Inc.*, 254 F. Supp. 3d 1007, 1034 (N.D. Ill. 2017).

PAYNE & FEARS LLP
ATTORNEYS AT LAW
400 CONTINENTAL BLVD., SUITE 600
EL SEGUNDO, CALIFORNIA 90245
(310) 689-1750

-14-

1    Evidence in Opposition:

2

3    The key evidence relates to element 2:  Craftwood will provide testimony

4    from Craftwood employees that the company did not invite Wurth or give Wurth

5    permission to send faxed ads.  Craftwood will also introduce testimony from Wurth

6    employees confirming the same.  Indeed, Wurth's chief executive officer testified

7    that Wurth's practice for years has been to fax ads to customers unless and until they

8    tell Wurth to stop.  Finally, the lack of any documentation showing permission from

9    Craftwood will also evidence this issue.

10

11   **Seventh Affirmative Defense (Wurth asserts Craftwood is estopped from**

12   **bringing claims because it is a customer):**

13

14   This defense appears to repeat Wurth's claim that it may avail itself of the

15   PEP defense and the EBR defense discussed above.  Craftwood incorporates its

16   responses to those defenses here.

17

18   **Eighth Affirmative Defense (Wurth asserts Craftwood's claim violates**

19   **the statute of limitations):**

20

21   Required Elements:

22

23   The defense requires Wurth to prove that Craftwood's claims occurred before

24   the 4-year statutory limit.  *Giovanniello v. ALM Media, LLC*, 726 F.3d 106, 115 (2d

25   Cir. 2013) (citing to 4-year limit in 28 U.S.C. § 1658(a)) *accord Stern v. Docircle,*

26   *Inc.*, No. SACV122005AGJPRX, 2014 WL 12558847, at *2 (C.D. Cal. May 19,

27   2014) (Guilford, J.).

28

PAYNE & FEARS LLP
ATTORNEYS AT LAW
400 CONTINENTAL BLVD., SUITE 600
EL SEGUNDO, CALIFORNIA 90245
(310) 689-1750

Evidence in Opposition:

Craftwood will present evidence only for facsimiles sent on or after March 8, 2014, four years preceding the filing of the complaint.  Craftwood's earliest fax at issue is March 10, 2015, well within the statute of limitation.

**Ninth Affirmative Defense (Wurth asserts that Craftwood's claim must be reduced by amounts owed to Wurth by Craftwood):**

Required Elements:

Defensive set-off is not a defense to the TCPA.  *See Vecchia v. Ally Fin.*, Inc., No. 8:17-CV-2977-T-23AAS, 2018 WL 907045, at *1 (M.D. Fla. Feb. 15, 2018) (no jurisdiction for setoffs); *Riazi v. Ally Fin., Inc.*, No. 4:17CV1705JCH, 2017 WL 4260847, at *6 (E.D. Mo. Sept. 26, 2017) ("A valid set-off, however, is 'not enough to overcome the public policy reasons behind declining jurisdiction,' including protecting consumers "regardless of the validity of the underlying debt.") (citing *Campos v. Western Dental Services, Inc.*, 404 F. Supp. 2d 1164, 1170 (N.D. Cal. 2005).)

To the extent that the Court applies it, the elements of a set off are:

1.    Wurth owes Craftwood monetary damages;

2.    At some point during the time of the claims between March 10, 2015, and February 21, 2017, Craftwood owed Wurth money;

3.    The money owed by Craftwood to Wurth did not arise from a wholly

PAYNE & FEARS LLP
ATTORNEYS AT LAW
400 CONTINENTAL BLVD., SUITE 600
EL SEGUNDO, CALIFORNIA 90245
(310) 689-1750

-16-

separate and unrelated transaction to the claims here;

4.      Craftwood did not pay the money owed to Wurth; and

5.      Wurth can request a reduction in damages up to the amount owed, but not to exceed the damages.

*R. M. Sherman Co. v. W. R. Thomason, Inc.*, 191 Cal. App. 3d 559, 568 (1987).

Evidence in Opposition:

Wurth has not offered any evidence that Craftwood owes it anything.

**Tenth Affirmative Defense (Wurth asserts that Craftwood's claim must fail because it engaged in unlawful, inequitable, or improper conduct):**

Required Elements:

This is not a permitted affirmative defense, as unclean hands is irrelevant to the TCPA. *Bruce v. Ocwen Loan Servicing, LLC*, No. 8:12-CV-1561-T-24 MA, 2012 WL 4867224, at *2 (M.D. Fla. Oct. 15, 2012).

To the extent that the Court applies it, the elements of unclean hands are:

1.      Craftwood's conduct was unfair and with fraud or deceit;

2.      Craftwood's conduct was directly related to the subject matter of its claims; and

PAYNE & FEARS LLP
ATTORNEYS AT LAW
400 CONTINENTAL BLVD., SUITE 600
EL SEGUNDO, CALIFORNIA 90245
(310) 689-1750

3.      Wurth has clean hands, or in other words, Wurth's conduct was in good faith.

*Levi Strauss & Co. v. Shilon*, 121 F.3d 1309, 1313 (9th Cir. 1997).  For the doctrine to apply, "there must be a direct relationship between the misconduct and the claimed injuries so that it would be inequitable to grant the requested relief." *Horowitz v. GC Servs. Ltd. P'ship*, No. 14CV2512-MMA RBB, 2016 WL 7188238, at *16 (S.D. Cal. Dec. 12, 2016) (citing *Kendall-Jackson Winery, Ltd. v. Superior Court*, 76 Cal. App. 4th 970, 979 (1999), *as modified on denial of reh'g* (Jan. 3, 2000).)

Evidence in Opposition:

Craftwood did not act unfairly or with fraud or deceit:  Craftwood will present evidence that the company does not like junk faxes.  Craftwood's manager will testify that she previously attempted to stop advertisers from sending junk faxes by requesting not to be faxed further and filing approximately 80 complaints with the FCC.  This did not stop the junk faxing.  Craftwood's manager will also explain that she sued Wurth for sending junk faxes.  As discussed above, Craftwood will introduce testimony from Craftwood and Wurth that Craftwood did not give Wurth express permission to send the faxes and was not required under the law to opt-out.

Wurth does not have clean hands:  Craftwood will present testimony from Wurth that Wurth did not act in good faith because it knew about the law, but failed to follow the requirements.

PAYNE & FEARS LLP
ATTORNEYS AT LAW
400 CONTINENTAL BLVD., SUITE 600
EL SEGUNDO, CALIFORNIA 90245
(310) 689-1750

PAYNE & FEARS LLP
ATTORNEYS AT LAW
400 CONTINENTAL BLVD., SUITE 600
EL SEGUNDO, CALIFORNIA 90245
(310) 689-1750

**Eleventh Affirmative Defense (Wurth asserts that Craftwood must indemnify Wurth for its attorneys' fees and costs if Bay Hardware loses at trial):**

This is not a permitted affirmative defense.  Wurth's answer does not assert that this "affirmative defense" will affect any claims.  (Dkt. 50 at 8.)  Instead Wurth has claimed that it will sue Craftwood in another case if Wurth somehow prevails at trial.  Indeed, Wurth brought indemnity as a counterclaim, but dropped it when Craftwood stated its intention to file an anti-SLAPP motion.  There are no applicable elements to analyze or evidence to propose.

**Twelfth Affirmative Defense (Wurth asserts that Craftwood failed to mitigate its damages):**

Required Elements:

This is not a defense under the TCPA.  *Swinter Grp., Inc. v. Nationwide Truckers' Ins. Agency*, No. 4:17-CV-2310-SPM, 2018 WL 306024, at *3 (E.D. Mo. Jan. 5, 2018) (striking affirmative defense of failure to mitigate damages); s*ee Ira Holtzman C.P.A. & Assocs. Ltd. v. Turza*, No. 08 C 2014, 2010 WL 3076258, at *5 (N.D. Ill. Oct. 29, 2010); *Fillichio v. M.R.S Assoc., Inc.*, No. 09–612629–CIV, 2010 WL 4261442, at *5 (S.D. Fla. Oct. 19, 2010).  There is no requirement that anyone opt-out to have a viable TCPA claim. "Plaintiff was not required to mitigate its damages by calling Defendant and asking that the faxes be stopped." *Onsite Computer Consulting Servs., Inc. v. Dartek Computer Supply Corp.*, No. 05AC-000108 I CV, 2006 WL 2771640, at *4 (Mo. Cir. Ct. May 17, 2006); *see also Fillichio*, 2010 WL 4261442, at *5 (collecting cases).

1    Evidence in Opposition:

2

3        To the extent necessary, Craftwood will present evidence, identified on each

4    fax flyer, that Wurth failed to include the required disclosures on all the faxes sent to

5    Craftwood.  This includes the disclosure of what is required for a proper opt-out

6    request.  Craftwood will present evidence that it's manager does not know all the

7    technical requirements for a proper opt-out.  Finally, Craftwood will also present

8    evidence that in the past it has attempted to opt-out from other companies, which

9    has only increased the junk faxing.

10

11       **Thirteenth Affirmative Defense (Wurth asserts that Craftwood does not**

12   **fall within the statutory zone of interest of the TCPA because it is**

13   **supposedly a professional plaintiff and failed to opt-out after first**

14   **receiving a fax from Wurth):**

15

16   Required Elements:

17

18       There are no elements to this defense since Courts in this circuit have made

19   clear that there is no such defense:

20       [A] lot of observers take a very cynical view of class action lawsuits
         and the plaintiffs and lawyers behind them—but it has nothing to do
21       with the merits of class certification. The fact is that Congress passed
         the TCPA and created a claim, and while many recipients of the texts
22       at issue in this case would never think to avail themselves of it and
         bring a federal lawsuit, [plaintiff] is perfectly entitled to. Moreover,
23       he's entitled to bring other lawsuits, too.

24   *Van Patten v. Vertical Fitness Grp., LLC*, No. 12CV1614-LAB (MDD), 2013 WL

25   12069031, at *9 (S.D. Cal. Nov. 8, 2013).  That Craftwood has been a plaintiff

26   before also does not prevent it from bringing additional claims and has no impact on

27   its standing.  *Cunningham v. Rapid Response Monitoring Servs., Inc.*, No. 3:15-CV-

28   00846, 2017 WL 1489052, at *4 (M.D. Tenn. Apr. 26, 2017).  Rather, courts have

PAYNE & FEARS LLP
ATTORNEYS AT LAW
400 CONTINENTAL BLVD., SUITE 600
EL SEGUNDO, CALIFORNIA 90245
(310) 689-1750

-20-

rejected arguments that a "professional plaintiff" suffered no real injury because he welcomed telemarketing calls that violated the TCPA and knew the law.  *Id.*

"Defendants have not cited any authority for the proposition that a professional plaintiff is outside of the TCPA's statutory zone of interest."  *Fitzhenry v. ADT Corp.*, No. 14-80180, 2014 WL 6663379, at *5 (S.D. Fla. Nov. 3, 2014); *see, e.g., Cunningham*, 251 F. Supp. 3d at 1197[1]; *Martin v. Bureau of Collection Recovery*, No. 10 C 7725, 2011 WL 2311869, at *4 (N.D. Ill. June 13, 2011); *Martin v. Comcast Corp.*, No. 12 C 6421, 2013 WL 6229934, at *2 (N.D. Ill. Nov. 26, 2013) ("nor can we dismiss [plaintiff's] claims merely because he files lots of these cases"); *Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459, 461 (6th Cir. 2010) ("[Plaintiff] has not been shy in taking on the role of a private attorney general under the [TCPA]. Since 1998, he has filed claims against at least twelve defendants in at least thirteen lawsuits under the Act"); *cf. Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 954 (7th Cir. 2006) ("What the district judge did not explain, though, is why 'professional [plaintiff]' is a dirty word. It implies experience, if not expertise. The district judge did not cite a single decision supporting the proposition that someone whose rights have been violated by 50 different persons may sue only a subset of the offenders.").

---

[1]    The *Cunningham* court further explained that "The RRMS Defendants' zone-of-interests argument echoes their argument on constitutional standing: they suggest that Cunningham is a professional plaintiff, and that the TCPA only contemplates causes of action arising out of calls to ordinary consumers, a class from which they consider him to be excluded. That argument is flatly refuted by the structure of the TCPA itself. The TCPA does not merely contemplate self-interested plaintiffs—it encourages them. See 47 U.S.C. § 227(b)(3), (c)(5) (providing for recovery of $1500 per violation in case brought by consumer). The Court cannot read the TCPA and imagine that Congress intended to exclude plaintiffs such as Cunningham. If anything, it intended to recruit them, incentivizing them by offering them such sizable rewards. Cunningham's injuries are well within the zone of interests contemplated by the TCPA, and any interpretation of the TCPA that excluded him would actively frustrate the purpose of the statute." *Id.*

PAYNE & FEARS LLP
ATTORNEYS AT LAW
400 CONTINENTAL BLVD., SUITE 600
EL SEGUNDO, CALIFORNIA 90245
(310) 689-1750

There is also no duty to opt-out or one free junk fax rule.  *See Ira Holtzman C.P.A. & Assocs. Ltd. v. Turza*, No. 08 C 2014, 2010 WL 3076258, at *5 (N.D. Ill. Oct. 29, 2010); *Fillichio v. M.R.S Assoc., Inc.*, No. 09–612629–CIV, 2010 WL 4261442, at *5 (S.D. Fla. Oct. 19, 2010). There is no requirement that anyone opt-out to have a viable TCPA claim. "Plaintiff was not required to mitigate its damages by calling Defendant and asking that the faxes be stopped." *Onsite Computer Consulting Servs., Inc. v. Dartek Computer Supply Corp.*, No. 05AC-000108 I CV, 2006 WL 2771640, at *4 (Mo. Cir. Ct. May 17, 2006); *see also Fillichio*, 2010 WL 4261442, at *5 (collecting cases).

Evidence in Opposition:

To the extent necessary, Craftwood will present evidence that it has standing under Article III.  Craftwood will introduce testimony that it is a working hardware store business serving the local Seal Beach community.  Craftwood's manager will also testify about the company's extreme dislike of junk faxes, and its prior attempts to stop junk faxing through FCC complaints and other methods.  And Craftwood will present evidence of its actual damages, which Craftwood has calculated to be several dollars per fax.  Craftwood will offer testimony and documents showing Craftwood's costs related to using its fax machine (paper, toner, and fax machine purchases) and time wasted by Craftwood handling junk faxes.

To the extent necessary, Craftwood will present evidence, identified on each fax flyer, that Wurth failed to include the required disclosures on all the faxes sent to Craftwood.  This includes the disclosure of what is required for a proper opt-out request.  Craftwood will present evidence that it does not know all the technical requirements for a proper opt-out.  Finally, Craftwood will also present evidence that in the past it has attempted to opt-out from other companies, which has only

PAYNE & FEARS LLP
ATTORNEYS AT LAW
400 CONTINENTAL BLVD., SUITE 600
EL SEGUNDO, CALIFORNIA 90245
(310) 689-1750

increased the junk faxing.

## Evidentiary Issues

Any evidentiary issues will be set forth in the Final Pretrial Conference Order, which is due to be filed after this document.  Regardless, presentation of metadata from Wurth's production appears to be one evidentiary issue relating to Craftwood's claim.

Additional evidentiary issues relate to several defenses Wurth seeks to assert that require Court determination.  To the extent evidence is required for those issue, it is different from the evidence for the individual claims.  The evidence may also be prejudicial to the jury.  As discussed below, these issues should be bifurcated from the jury's fact-finding.

## Bifurcation of Issues

To the extent the parties proceed with a jury trial of the merits, the Court must decide whether to treble damages.  47 U.S.C. § 227(b)(3).  "If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available."  47 U.S.C. § 227.  The Court should bifurcate the proceedings accordingly.

The Court should also bifurcate any proceedings regarding Wurth's legal defenses of standing, due process, First Amendment, trivial damages, and zone of interest.  These defenses are not jury questions, most have to do with whether the

PAYNE & FEARS LLP
ATTORNEYS AT LAW
400 CONTINENTAL BLVD., SUITE 600
EL SEGUNDO, CALIFORNIA 90245
(310) 689-1750

Court has subject matter jurisdiction.  Evidence related to these questions is basically irrelevant to the jury questions, and may be prejudicial to the extent it is.

## Jury Trial

Craftwood initially demanded a jury trial.  Craftwood filed a withdrawal October 22.  Wurth, however, wants a jury trial.  Wurth asserts that it relied on Craftwood's demand.  As discussed above, to the extent necessary, the Court must decide whether to treble damages.  47 U.S.C. § 227(b)(3).  The Court should also decide constitutional and jurisdiction questions.

## Attorneys' Fees

The TCPA is not a fee-shifting statute.

## Abandonment of Issues

Craftwood has determined to pursue only its first cause of action.  Craftwood will not pursue its second claim.  Craftwood continues to reserve its right to bring this matter as a class action upon reconsideration of the order denying certification (Dkt. 141) or reversal by the Ninth Circuit.  Wurth dismissed its counterclaim against Craftwood.  (Dkt. 53.)

PAYNE & FEARS LLP
ATTORNEYS AT LAW
400 CONTINENTAL BLVD., SUITE 600
EL SEGUNDO, CALIFORNIA 90245
(310) 689-1750

1  DATED:  October 26, 2018          PAYNE & FEARS LLP

2

3                                     By:     /s/ Scott O. Luskin

4                                             C. DARRYL CORDERO
                                              SCOTT O. LUSKIN

5                                     Attorneys for Plaintiff Craftwood II, Inc.,
6                                     dba Bay Hardware, individually and as
                                      representative of all others similarly
7                                     situated

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S LOCAL RULE 16-4 MEMORANDUM OF CONTENTIONS OF FACT AND LAW

**Certificate of Service**

I hereby certify that at the time of service, I was over 18 years of age and **not
a party to this action**.  I am employed in the County of Los Angeles, State of
California.  My business address is 400 Continental Blvd., Suite 600, El Segundo,
CA  90245.

On this 26th day of October, 2018, I served true copy of **Plaintiff Craftwood
II, Inc.'s Local Rule 16-4 Memorandum of Contentions of Fact and Law** on the
interested parties in this action via the United States District Court CM/ECF system
on all parties or persons requiring notice.

/s/ Scott O. Luskin

Scott O. Luskin

4853-2155-5065.8

PAYNE & FEARS LLP
ATTORNEYS AT LAW
400 CONTINENTAL BLVD., SUITE 600
EL SEGUNDO, CALIFORNIA 90245
(310) 689-1750